IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JON MUSE, | **NO. CV04-00154 DAE/BMK** |
| Plaintiff, | DEFENDANT HOME DEPOT USA, INC.'S FIRST AMENDED MEMORANDUM IN OPPOSITION TO PLAINTIFF'S THIRD MOTION TO COMPEL DISCOVERY AND IN SUPPORT OF DEFENDANT'S COUNTER MOTION; DECLARATION OF JEFFREY S. HARRIS; CERTIFICATE OF SERVICE |
| v. | |
| HOME DEPOT USA, INC., | |
| Defendant. | |

Date:    January 24, 2006
Time:    9:00 A.M.
Judge:   Hon. Barry M. Kurren
Trial:   May 2, 2006

**DEFENDANT HOME DEPOT USA, INC.'S FIRST AMENDED
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
THIRD MOTION TO COMPEL DISCOVERY AND
IN SUPPORT OF DEFENDANT'S COUNTER MOTION**

## I.    INTRODUCTION

Plaintiff's Third Motion to Compel Discovery is completely lacking in merit

for several reasons.

First, with regard to Plaintiff's claim that that Defendant's Counsel

inappropriately instructed Debra Peterson not to respond to certain questions

during her deposition on January 7, 2006, the deposition transcript clearly shows

that the only time Ms. Peterson was instructed not to answer questions was when

Plaintiff's counsel repeatedly asked harassing and argumentative questions, or sought information protected by attorney-client privilege.

With regard to Plaintiff's allegation that Defendant destroyed Ms. Peterson's personal notes and surveillance tapes alleged to exist, Plaintiff has failed to show that Defendant had knowledge or control over Ms. Peterson's notes, or that the surveillance tapes actually existed, were relevant, and were not destroyed within the ordinary course of business.

With regard to Plaintiff's claim that Defendant's opposition to Plaintiff's overbroad request to depose a corporate representative under Federal Rule of Civil Procedure 30(b)(6) is unreasonable, Plaintiff has failed to designate a witness with reasonable particularity the matters upon which examination is requested in accordance with the Rule's requirements.

With regard to Plaintiff's suggestion that a conflict of interest may exist as a result of the representation of Ms. Peterson at her deposition by defense counsel, and argument that the record demonstrates that she may have a possible cause of action against Defendant for wrongful termination, such characterization of the record is inaccurate.  Instead of demonstrating that a conflict of interest exists, or that Ms. Peterson may have a claim against Defendant for wrongful termination, the deposition record shows that Plaintiff's counsel repeatedly inquired into the reasons underlying Ms. Peterson's termination from Home Depot, and attempted to

encourage Ms. Peterson to raise a claim against the company for wrongful termination. Further attempts of this nature were made off the record as well. Such misconduct on the part of Plaintiff's counsel is highly inappropriate and should not be condoned by this Court.

In light of these shortcomings, Plaintiff's Third Motion to Compel Discovery should be denied in its entirety. If the deposition of Ms. Peterson is resumed, an order should be issued to ensure that this misconduct does not continue.

## II. QUESTIONS POSED BY PLAINTIFF'S COUNSEL AT DEBRA PETERSON'S JANUARY 7, 2006 DEPOSITION WERE ARGUMENTATIVE, HARASSING AND/OR PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE

Plaintiff alleges that Defendant's counsel improperly instructed Ms. Peterson not to answer properly posed deposition questions. Such allegations are made in general terms, with minimal reference to Ms. Peterson's deposition testimony. Indeed, any citations Plaintiff provides to the deposition testimony refer generally to a deposition video as opposed to the actual testimony transcript.[1] As such, it is very difficult to respond to Plaintiff's claim that Ms. Peterson was improperly

---

[1] It should be noted that Defendant's counsel requested an expedited copy of the January 7, 2006 deposition transcript, and learned on January 17, 2006 that the transcript was not prepared after Plaintiff's counsel informed Jessica Perry of Ralph Rosenberg Court Reporters that an expedited copy of Ms. Peterson's deposition transcript was not required. A copy of the deposition transcript was provided to Defendant on January 18, 2006, and was attached as Exhibit "A" to Defendant's Memorandum in Opposition to Plaintiff's Third Motion to Compel Discovery.

instructed not to answer deposition questions.  Despite this shortcoming, it is clear that Plaintiff has asserted that Ms. Peterson was instructed not to answer questions identified by defense counsel as being argumentative, harassing, or where they broached areas covered by attorney-client privilege.

## A.    <u>Argumentative or Harassing Questions</u>

Ms. Peterson was instructed not to answer questions that were argumentative or harassing only after they had been asked numerous times, and, in many instances, where she had already provided an answer.  Plaintiff argues that this instruction was improper in five instances:  (a) between 9:08 and 9:09 a.m., Peterson Depo. at p. 10:04-10; (b) between 9:30 and 9:34 a.m., Peterson Depo. at pp. 25:09-28:18; (c) at 9:54 a.m., Peterson Depo. at p. 43:06-22; (d) at 9:55 a.m., Peterson Depo. at pp. 43:23-44:08; and (e) at 11:24 a.m., Peterson Depo. at pp. 93:23-94:15.  A copy of the deposition transcript for Ms. Peterson's deposition was attached as Exhibit "A" to Defendant's Memorandum in Opposition to Plaintiff's Third Motion for Discovery, filed on January 18, 2006.

A comparison of the aforementioned deposition video times and the deposition trial transcript shows that Peterson was instructed not to answer a question because it was asked and answered and therefore harassing only three of the foregoing five examples cited by Plaintiff.  This is because the time listed in part (a) above involves an objection and instruction not to answer due to attorney-

client privilege, Peterson Depo. at p. 10:04-10, and the time listed in part (b) above presented no objections whatsoever by defense counsel. Peterson Depo. at pp. 25:09-28:18.

With regard to the remaining instances, the deposition transcript shows that Ms. Peterson was only instructed not to answer questions where Plaintiff's counsel had asked argumentative questions or repeatedly badgered her with the same question she had already answered. See Peterson Depo. at pp. 43:06 - 44:08; 93:23 - 94:15. For example, Plaintiff's counsel badgered Ms. Peterson with questions regarding her reaction to Plaintiff's alleged disability and use of the term "cunt" during the November 3, 2003 incident, despite her clear testimony that such language was highly offensive and the fact that she had already answered the question posed by Plaintiff's counsel:

> Q.    (SHERMAN) So assuming that Mr. Muse has a verbal tic that forces him to use the word cunt and fucking and he has no control over that, you were still offended by the fact that he uses that language in that context?
>
> (HARRIS) Objection, foundation, speculation, lay opinion, argumentative.
>
> Q.    Okay, go ahead. You can answer.
>
> A.    (PETERSON) Yes.

Q.    So are there any other disabilities that offend

you?

(HARRIS) Objection, argumentative.  Instruct the witness not to

answer.  Harassing.  Don't answer.

Q.    Are there some disabilities that offend you?

(HARRIS) Same objection, same instruction.  Irrelevant, harassing.

Q.    Why were you offended at that time in November?

A.    As a woman, any woman would be offended being

called a C word.

Q.    But did he actually say, you're a cunt, at that

time in November?

A.    He addressed me as, eh, C.  Can you help me return,

C, this wheelbarrow, C?

Q.  Let me ask you that question again.

(HARRIS) Objection, asked and answered, argumentative.  Instruct the

witness not to answer.

Peterson Depo. at pp. 43:06-06.

The deposition record is replete with examples of Plaintiff's counsel's

continued harassment of Ms. Peterson, which took the form of repeatedly asking

questions that she had already answered.  This conduct continued even up to a

point just before her deposition was terminated:

Q.     (SHERMAN)  So you think Mr. Muse is faking his condition; is
       that correct?

A.     (PETERSON)  At that time, yes.  I don't know that he has Tourette's,
       and to this day I don't know if he has Tourette's.  I didn't see any
       medical statement that he has Tourette's.

Q.     Well, if he had a medical statement and gave it to
       you, would that make a difference?

(HARRIS) Objection, foundation, speculation, assumes facts not in
evidence, irrelevant.

Q.     You can answer.

A.     I don't know.  I felt offended when he addressed me
       as a C.

Q.     But if he had a statement saying that he has no control over this, he
       doesn't intend to use the word, he can't help it, it's a disease --

(HARRIS)  Objection.

Q.     -- would you --

(SHERMAN) I've got to finish the question.

(HARRIS) Okay, you stopped.

(SHERMAN) I just paused for a second.  I know you want to get it out.

Q.     -- would you still not believe that?

(HARRIS) Objection, argumentative, asked and answered.  Instruct the
witness not to answer.  And compound.

Peterson Depo at pp. 93:10-94:10.

Plaintiff's counsel has offered no justification for the necessity of such argumentative and harassing questioning, especially where the questions have already been asked and answered. As a result, defense counsel's instruction that Ms. Peterson should not answer questions that were argumentative or harassing was appropriate. See In re Folding Carton Antitrust Litigation, 83 F.R.D. 132 (N.D. Ill. 1979) (citing Hampton v. Pennsylvania Railroad Co., 30 F.R.D. 70, 71 (E.D. Pa. 1962).

Plaintiff's counsel makes much of the notion that defense counsel did not adjourn the deposition to obtain a hearing under Federal Rule of Civil Procedure 30(d)(4). Such an adjournment would have been a waste of time under these circumstances, as defense counsel's instructions not to answer had no impact on the information that Ms. Peterson provided. This is because relevant questions that were objected to had already been asked numerous times, and Ms. Peterson had already provided answers. See e.g. Peterson Depo. at pp. 43:22-44:06; 93:10-94:10. Indeed, Plaintiff has made no showing that the instruction not to answer questions that were argumentative and harassing resulted in a failure to obtain any particular piece of information that was requested. In light of this, defense counsel's instructions not to answer were valid and appropriate, as they were only

aimed at preventing the harassment of the deponent, and expediting the deposition by preventing the needless repetition of testimony.

The instructions not to answer were also appropriate under Section 7 of the Guidelines of Professional Courtesy and Civility, which are applicable to attorneys practicing in federal court under Local Rule 83.3 of the United States District Court for the District of Hawaii. With regard to depositions, Section 7 establishes:

> a.    As to Depositions, a lawyer who manifests professional courtesy and civility:
>
> *          *          *
>
> (6)    Avoids repetitive or argumentative questions or those asked solely for purposes of harassment.
>
> *          *          *
>
> (8)    Does not direct deponent to refuse to answer a question unless the question seeks privileged information or is calculated to harass.
>
> *          *          *
>
> (10)   Does not engage in any conduct during a deposition which is likely to offend others necessarily present and which would violate prevalent standards of behavior in judicial proceedings.

Guidelines of Professional Courtesy and Civility Section 7(a). Plaintiff's questions were unnecessarily repetitive, argumentative and harassing in violation of Sections

7(a)(6) and 7(a)(10), and defense counsel was authorized to instruct Ms. Peterson not to answer these questions as a result under Section 7(a)(8).

Since Plaintiff has failed to show that defense counsel's instruction not to answer repetitive questions was inappropriate or resulted in the loss of information, his Third Motion to Compel Discovery should be denied with regard to this issue.

**B.**    **<u>Questions that Violated Attorney-Client Privilege</u>**

During the course of her deposition, Ms. Peterson was also instructed not to answer questions that violated the attorney-client privilege.  Plaintiff argues that this instruction was improper in three instances:  (a) at 9:09 a.m., Peterson Depo. at p. 10:04-10; (b) between 9:30 and 9:34 a.m., Peterson Depo. at pp. 25:09-28:18; (c) at 9:54 a.m., Peterson Depo. at p. 43:06-22.  A comparison of the aforementioned deposition video times and the deposition trial transcript shows that the only instance involving attorney-client privilege cited in Plaintiff's Memorandum in Support of Motion is part (a) above.  <u>See</u> Peterson Depo. at pp. 10:04-10; 25:09-28:18; 43:06-22.

With regard to defense counsel's instruction not to answer a question soliciting information protected by attorney-client privilege at 9:09 a.m., the relevant deposition testimony states:

Q.    (SHERMAN)  Did you meet with Mr. Harris today before this deposition to prepare?

(HARRIS)  Objection, attorney-client privilege.  Instruct the witness not to answer with respect to communications between her and I.

(SHERMAN)  I understand, but we can certainly ask the question did she meet with you.

(HARRIS)  Sure, sure.

Q.    Did you meet with Mr. Harris to prepare?

A.    Yes.

Q.    And that was this morning?

A.    Yes.

Q.    At his office?

A.    Yes.

Q.    And who was present then?

A.    Mr. Harris and Ms. Jan and myself.

Q.    When you say Ms. Jan, you mean Jan Boivin?

A.    Yes.

Q.    Is that the attorney sitting next to Mr. Harris?

A.    Yes.

Q.    How long did you meet with them?

(HARRIS)  Objection.  Instruct the witness not to answer.  Attorney-  client privilege.

Peterson Depo. at pp. 9:09-10:10.

Plaintiff argues that it was inappropriate for Ms. Peterson to be instructed not to answer questions regarding whom she met with at defense counsel's office and when she met with the foregoing individuals. As the foregoing deposition transcript excerpt indicates, these issues were not the basis of defense counsel's instruction not to answer Plaintiff's counsel's question at 9:09 a.m. Instead, the instruction was given when Ms. Peterson was questioned regarding the duration of the meeting that she had with Mr. Harris and Ms. Boivin.

Plaintiff has failed to establish that this question was asked for any substantive purpose other than the acquisition of privileged information regarding defense strategy, including defense counsel's determination of Ms. Peterson's importance as a witness. For example, if Plaintiff's counsel were to learn that Ms. Peterson spent a great deal of time meeting with attorneys to prepare for her deposition, such knowledge could create an inference that her testimony may be viewed by defense counsel as being significant to the defense. Plaintiff's counsel is not entitled to such information regarding Defendant's strategy and the impressions of defense counsel. See Indiana Manufactured Housing Ass'n v. Pierce, Cause No. S86-698, 1987 U.S. Dist. LEXIS 15230 (N.D. Indiana, June 19, 1987) (holding that while attorney client privilege was inapplicable regarding when meetings were held and whether persons who were not part of the government's staff were present, it did preclude the disclosure of the identity of

persons present at meeting, the location where meetings were held, the subject on which advice was sought, and the content of communications during the meetings).

There is a distinct difference between seeking information regarding when a meeting was held and seeking information regarding the duration of the meeting, or the number of times Ms. Peterson met with defense counsel. The former states nothing more than the time at which a meeting began, while the latter may have implications with regard to case strategy and the weight counsel has given to the testimony of a particular individual, or the detail of information that passed between them. For this reason, defense counsel's instructions not to answer questions on the basis of attorney-client privilege at 9:09 a.m. and at other periods during Ms. Peterson's deposition, see Peterson Depo. at pp. 34:06-35:05; 35:11-36:11, were appropriate, and Plaintiff's Third Motion to Compel Discovery fails with regard to this issue.

**III.    PLAINTIFF HAS FAILED TO DEMONSTRATE THAT DEFENDANT'S CONDUCT WITH REGARD TO DEBRA PETERSON'S PERSONAL NOTES AND STORE SURVEILLANCE TAPES ALLEGED TO EXIST CONSTITUTES SPOLIATION**

To be successful in his claim of spoliation, assuming it is proper to raise such a claim here, Plaintiff must show that Defendant had "some notice that the documents were potentially relevant to the litigation before they were destroyed." United States v. Kitsap Physicians Serv., 314 F.3d 995, 1001 (9th Cir. 2002) (citation omitted). Plaintiff must also demonstrate that Defendant destroyed

evidence intentionally. Idaho Potato Comm'n v. G&T Terminal Packaging, Inc., 425 F.3d 708, 720 (9th Cir. 2005). Since Plaintiff cannot show that Defendant was aware of the existence of Ms. Peterson's notes, or that the surveillance tapes existed and were destroyed in bad faith, as opposed to in the ordinary course of business, his claim of spoliation necessarily fails.

### A.    Ms. Peterson's Personal Notes

Without making any argument or citing any authority, Plaintiff alleges that Ms. Peterson's decision to discard her personal notes constitutes spoliation attributable to Defendant. This argument is ridiculous, as Ms. Peterson is not an employee of Defendant, and the notes were created of her own accord after Plaintiff's visit to the store where she worked in November 3, 2003. Peterson Depo at p. 27:08-11; 29:23-30:18. The notes were written on a note sheet as opposed to company letterhead, and Ms. Peterson stored them in her locker on company premises after completing them. Peterson Depo at p. 27:08-11. On February 20, 2004, Ms. Peterson wrote an employee statement on company letterhead regarding what she witnessed of Plaintiff's inappropriate conduct on November 3, 2003. Peterson Depo at pp. 27:12-24; 30:11-18. Of her own volition, Ms. Peterson retrieved her 2003 notes, copied the contents thereof verbatim onto her incident report, and discarded the original notes. Peterson Depo at p. 27:08-24. Defendant was unaware of the existence of the foregoing personal

notes at any time prior to Ms. Peterson's decision to discard them, and gave her no instruction with regard to maintaining or discarding them at any point.

To prove a claim of spoliation, "the cases require at a minimum that the party must have tampered with the evidence in some way while on notice that the evidence "might be necessary" to some party's claim." Anderson v. Nat'l R.R. Passenger Corp., 866 F. Supp. 937, 946 (D. Va. 1994). Since Defendant lacked both knowledge of the existence of Ms. Peterson's notes, and control over those notes at any time prior to Ms. Peterson's decision to discard them, Plaintiff's claim of spoliation with regard to the notes necessarily fails.

### B.    Alleged Video Surveillance Tapes

Plaintiff also claims that Defendant intentionally destroyed surveillance videotapes that would have been useful to his case. This argument is unsubstantiated and without merit for several reasons. First, Plaintiff has both failed to request the production of surveillance tapes, and to demonstrate that such videotapes actually existed. He bases his contention on an inaccurate supposition presented by Ms. Peterson when she testified, over objection, that video cameras are on at Home Depot all the time, and that they would have recorded the incidents involving Plaintiff. Peterson Depo at p. 20:06-23; 23:08-24:14.

Harold Han works as the District Loss Prevention Manager for Home Depot. Han Decl. at ¶ 1 (attached hereto as Exhibit "B"). His responsibilities include

overseeing the operation of surveillance technology associated with loss prevention in area stores. Han Decl. at ¶ 2. In early 2002, surveillance technology in place at Home Depo's Alakawa store included video cameras. Han Decl. at ¶ 3. The video cameras began to malfunction, and no cameras were in operation during the November 3, 2003 incident involving Plaintiff. Han Decl. at ¶ 4. As such, no videotape ever existed with regard to that incident, id., and Plaintiff's claim that Defendant destroyed it in bad faith necessarily fails. Otero v. Wood, 316 F. Supp. 2d 612 (S. D. Ohio 2004) (Plaintiff's claim of spoliation failed where she failed "to prove that the video ever existed, [and] fail[ed] to establish the relevance of the video…"); Pastorello v. City of New York, 95 Civ. 470 (CSH), 2003 U.S. Dist. Lexis 16017 (D. N.Y. Sept. 11, 2003) (Plaintiff's claim of spoliation failed because "the doctrine of spoliation, or destruction of evidence, has no office to perform with respect to evidence that should have existed but never did").

The installation of new surveillance equipment began in November or December of 2003. Han Decl. at ¶ 5. The installation process took upwards of thirty days, and the new surveillance equipment was not functional until early 2004. Han Decl. at ¶ 6. The new equipment did not consist of video cameras that produced tapes, but instead was a computer hard drive programmed to retain surveillance records for ninety days before they were automatically destroyed in the ordinary course of business. Han Decl. at ¶ 6. Backup records are not made in

the ordinary course, but are instead made upon request after an assault or battery has occurred on store premises. Han Decl. at ¶ 7. This means that there is no record of the April 25, 2004 incident involving Plaintiff. Han Decl. at ¶ 8.

Aside from failing to prove that surveillance tapes actually existed, Plaintiff has also failed to show that any alleged destruction of them did not occur within the ordinary course of business. Indeed, if such records ever did exist, they would have been destroyed in the ordinary course of business, Han Decl. at ¶ 6, and as such, Plaintiff's claim of spoliation fails. Idaho Potato Comm'n v. G&T Terminal Packaging, Inc., 425 F.3d 708, 720 (9th Cir. 2005) (defendant did not engage in spoliation of evidence, where records were not intentionally destroyed with knowledge of their relevance to impending litigation); United States v. Kitsap Physicians Serv., 314 F.3d 995, 1001 (9th Cir. 2002) (defendants did not engage in spoliation of evidence when records were intentionally destroyed in accordance with a document retention policy and state regulations before litigation commenced); see also Epstein v. Toys-R-Us Delaware, Inc., 277 F. Supp. 2d 1266, 1277 (S. D. Fla. 2003) (Plaintiff's claim of spoliation failed where "Plaintiff has wholly failed to point to any record evidence which would support its claim that a video tape of the incident ever existed, or that any such video was destroyed by Toys-R-Us."); Filanowski v. Wal-Mart Stores, Inc., Civil No. 99-147-B-H, 2000 U.S. Dist. Lexis 8006 (D. Maine, April 6, 2000) (Plaintiffs' claim of spoliation

failed where they provided no evidence that video tapes and notes were potentially relevant to their claims, and tapes and notes were routinely discarded in the ordinary course of business); Doe v. Mobile Video Tapes, Inc., 43 S.W.3d 40, 55 (Tex. App. 2001) (Video tapes recorded over in the normal course of business and before notice of claim provided no basis for exclusion of evidence based on spoliation); Aguirre v. S. Tex. Blood & Tissue Ctr., 2 S.W.3d 454, 457 (Tex. App. 1999) (Destruction of records in the regular course of business and without notice of their relevance to future litigation did not raise spoliation presumption).

In addition to failing to show that the alleged surveillance tapes actually existed and were not subsequently destroyed in the ordinary course of business, Plaintiff has failed to demonstrate that such records are relevant to his claims. The incidents underlying this lawsuit are predicated on verbal interactions between Plaintiff, employees, and other customers. Any surveillance tapes that Plaintiff erroneously believes to exist would be completely useless to him, and irrelevant to this case, as the surveillance system at the Alakawa store is not equipped to record sound. Decl. of Han at ¶ 9. At most, even if the cameras were directed to the relevant location at the time of the incidents, which has not been established, all the tapes would show is Plaintiff standing near Ms. Peterson and other employees or customers, seeming to engage in a conversation that cannot be discerned. Not

only is this entirely irrelevant to Plaintiff's claims, it is utterly useless to either party in this suit.

Plaintiff's claim of spoliation is based on a non-party's unilateral decision to discard personal notes, the existence of which Defendant was unaware at any time prior to Ms. Peterson's decision to discard them, and an unsubstantiated claim that irrelevant videotapes existed and were destroyed by Defendant outside the ordinary course of business. This is hardly sufficient to justify Plaintiff's allegation of bad faith on the part of Defendant.

## IV.    PLAINTIFF HAS FAILED TO DESCRIBE WITH REASONABLE PARTICULARITY THE MATTERS UPON WHICH EXAMINATION IS REQUESTED UNDER FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)

Plaintiff issued a Notice of Taking Rule 30(b)(6) Oral Deposition ("Notice") on December 20, 2005, Exhibit "B", that he subsequently withdrew on January 10, 2006. The Notice described deponent as follows:

### DEPONENT

**Person(s) most knowledgeable for the Deposition 30(b)(6) about the following:**

1) the corporate policy regarding the proper method of handling or accommodating a customer with a disability both generally and at the store specified in Plaintiff's complaint;

2) what training and preparation the corporation provides its employees to enable the handling of accommodations for disabled customers; and

3) the Americans with Disabilities Act.

Exh. "B".

Rule 30(b)(6) requires a named organization to designate a representative to testify when a notice of deposition describes with reasonable particularity the topic of examination:

> (6)    A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe **with reasonable particularity** the matters on which examination is requested. **In that event**, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. A subpoena shall advise a non-party organization of its duty to make such a designation.

FRCP 30(b)(6) (emphasis added).  The language "in that event" clearly indicates that an organization's obligation to make available a representative is triggered when the "reasonable particularity" requirement is met. *See id.* Upon designation, the person so designated "shall testify as to matters known or reasonably available to the organization." *Id.*

A "generic Rule 30(b)(6) notice . . . does not meet this standard." Kalis v. Colgate-Palmolive Co., 231 F.3d 1049, 1058 (7th Cir. 2000) (citing Alexander v. Fed. Bureau of Investigation, 188 F.R.D. 111, 114 (D.D.C. 1998) (rejecting notice to depose on "any matters relevant to this case" as not meeting the "reasonable

particularity" requirement) and <u>Prokosch v. Catalina Lighting, Inc.</u>, 193 F.R.D.
633, 638 (D. Minn. 2000) ("requesting party must take care to designate, with
painstaking specificity, the particular subject areas that are intended to be
questioned, and that are relevant to the issues in dispute")).

    Plaintiff's Notice is generic and inadequate.  First, Plaintiff asks Home
Depot to designate someone who can testify about the "proper method of handling
or accommodating a customer with a disability both generally and at the store
specified in Plaintiff's complaint".  Even if Home Depot could designate someone
knowledgeable about a "proper method", a phrase incorrectly implying that a
"proper method" exists, Home Depot cannot select individuals capable of
testifying pursuant to Rule 30(b)(6), that is, capable of testifying "as to matters
known or reasonably available to the organization".[2]  Such testimony would
require individuals to testify with respect to any disability encountered at any store
across the nation.

    The same inadequacies apply to Plaintiff's request pertaining to individuals
capable of testifying with regard to training and preparation provided to employees
for "the handling of accommodations for disabled customers".  Again, Home
Depot would have to designate individuals to testify with respect to training and

---

[2]    During a teleconference on the instant motion, Plaintiff's counsel defined the term
"generally" to mean in Home Depot stores "across the nation".  Decl. of Jeffrey S. Harris,
attached to Defendant's Memorandum in Opposition to Plaintiff's Third Motion for Discovery,
at ¶ 4.

"preparation" with respect to any disability encountered at any store across the nation.

Finally, Plaintiff's Notice asks Home Depot to designate someone who can testify about "the Americans with Disabilities Act", without connecting the ADA to his claim in this matter. This request is vague and overbroad. In asking Home Depot to designate a representative capable of testifying about the "Americans with Disabilities Act", Plaintiff disregards the fact that, pursuant to Rule 602 of the Federal Rules of Evidence, such a representative must have personal knowledge of the ADA. It is unreasonable to assume that Home Depot can designate an employee who is a lawyer or legislator personally familiar with the entire legislative history to date and the substance and nuances of the ADA—a feat Plaintiff's counsel themselves would be hard-pressed to address.

Moreover, it is also unreasonable to require Home Depot to designate a lay individual who can provide opinions that a normal person would form on the basis of observed facts, as such opinion testimony would be inadmissible under Rule 701 of the Federal Rules of Evidence. Wilson v. Pope, No. 96 C 5815, 1997 U.S. Dist. Lexis 10228, at *25 (N.D. Ill. July 14, 1997) ("Defendants next argue that the statement contains impermissible lay opinions in the form of legal conclusions about conspiracy and harm to the Wilson's business. Indeed, Jenkins is not a lawyer [and] Target has not provided any evidence that Jenkins is qualified to give

an opinion on Target's losses or whether defendants' actions constituted a conspiracy."); Indus. Hard Chrome, Ltd. v. Hetran, Inc., 92 F. Supp. 2d 786, 791 (N.D. Ill. 2000) ("the court will not allow [a party] to back-door expert testimony from a lay witness . . . where, in order to express an opinion, the witness must possess some experience or expertise beyond that of the average, randomly selected adult, it is a Rule 702 [expert] opinion and not a rule 701 lay opinion") (internal quotation marks omitted).

Because Plaintiff does not specify, with the required painstaking specificity, a particular disability that is protected by the ADA, the connection of that disability with this case, and the times, places, people, objects or events to be covered, Plaintiff's Notice fails the reasonable particularity requirement of Rule 30(b)(6).

## V.    IF THE DEPOSITION OF MS. PETERSON IS RESUMED, PLAINTIFF'S COUNSEL SHOULD BE PRECLUDED FROM INQUIRY REGARDING MS. PETERSON'S TERMINATION AND SUGGESTION THAT SHE  SHOULD SUE DEFENDANT FOR WRONGFUL TERMINATION

Debra Peterson is not a party in this matter, and is not a client of defense counsel.  Instead, defense counsel received permission to serve the limited role of defending Ms. Peterson during her deposition.  Decl. of Jeffrey S. Harris at ¶ 2.

During the course of the deposition, Plaintiff's counsel asked questions and made statements, both on and off the record, suggesting or implying that Ms.

Peterson may have a cause of action for wrongful termination against Defendant, and that she should sue the company. Peterson Depo. at 11:07-17:03; Decl. of Jeffrey S. Harris at ¶ 3. For example, Plaintiff's counsel asked the following questions near the beginning of Ms. Peterson's deposition:

Q.     (SHERMAN)  Do you think you should have been fired?

A.     (PETERSON)  No.

Q.     Why do you think they fired you?

(HARRIS)  Objection, speculation, lay opinion, irrelevant, harassing.

Q.     Go ahead.

A.     I don't know.

Q.     Okay.  When did they first bring to your attention the problem about the returns.

A.     The day I was terminated.

Q.     So is it your testimony, then, that they just terminated you and then they did an investigation?

A.     Yes.

Q.     And you had no idea that this was coming when they terminated you in August of 2004?

A.     No.

Q.     That must have been very upsetting.

(HARRIS)  Objection, speculation, harassing.

A.    Yes.

Q.    Doesn't seem very fair, does it?

A.    No.

Q.    Were you ever put on any kind of paid leave --

A.    No.

Q.    -- pending this?

A.    No.

Q.    Did you apply for unemployment insurance?

A.    No.

Q.    Did you just not want to or did you know you couldn't?

A.    Just didn't want to.

Q.    Has this affected you -- your ability to get any other work?

A.    Yes.

Q.    How so?

A.    I was devastated.  I couldn't get out of bed, couldn't eat.  I was -- I

didn't know what was going on.  I was just following procedures.  Just

following procedures.

Q.    You don't think there was any justification for them terminating you,

do you?

(HARRIS)  Objection, foundation, speculation, lay opinion.

Q.    You can answer.

A.    Repeat.

Q.    You don't think there's any good reason for them terminating you,

then?

A.    No.

Peterson Depo. at pp: 15-04:17-03; <u>see also</u> Peterson Depo. at pp. 21:21-22:15.

**A.    <u>Inquiry Regarding the Circumstances Surrounding Ms.
Peterson's Termination and Suggestion that Ms. Peterson Should
Sue Defendant for Wrongful Termination is Irrelevant to
Plaintiff's Claims and Harassing To Defendant</u>**

Defendant would suffer annoyance, oppression, and undue burden if

Plaintiff's counsel continues inquiring as to the circumstances surrounding Ms.

Peterson's termination and suggesting that she should sue Defendant.  Such inquiry

and suggestion is entirely irrelevant to Plaintiff's claims, and serves no purpose

other than harassment.

Federal Rule of Civil Procedure 26(b) defines the scope of discovery as

follows:

> (1).  In General.  Parties may obtain discovery regarding
> any matter, not privileged, that is relevant to the claim or
> defense of any party, including the existence, description,
> nature, custody, condition, and location of any books,
> documents, or other tangible things and the identity and
> location of persons having knowledge of any discoverable
> matter.  For good cause, the court may order discovery of

> any matter relevant to the subject matter involved in the
> action. Relevant information need not be admissible at
> the trial if the discovery appears reasonably calculated to
> lead to the discovery of admissible evidence.

Fed. R. Civ. Pro. 26(b)(1). Where, as in this case, a party seeks information that is

neither directly relevant nor reasonably calculated to lead to the discovery of

admissible evidence, the scope of discovery can be limited to preclude such

information. See Hennessey v. Genesis Health Ventures, Inc., Civil Action No.

99-2762, 2000 U.S. Dist. Lexis 4932 (D. Pa. Apr. 11, 2000); Canal Authority of

Florida v. Froehlke, 81 F.R.D. 609, 611 (D. Fla. 1979) (citing Hickman v. Taylor,

329 U.S. 495, 507-08, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947)).

Plaintiff's claims against Defendant involve two incidents that occurred at

one of Defendant's branch stores. Plaintiff has claimed that Defendant

discriminated against him due to his alleged disability as a result of his interaction

with employees on two occasions. The issue of Ms. Peterson's termination from

the company is completely irrelevant to Plaintiff's claims. No argument can be

raised that inquiries and suggestions regarding the circumstances of her

termination appear "reasonably calculated to lead to the discovery of admissible

evidence." See Fed. R. Civ. Pro. 26(b)(1). As a result, it is appropriate for

Plaintiff's counsel to be restrained from pursuing this line of questioning any

further, both on and off the record, if Ms. Peterson's deposition is resumed.

**B.**    **Plaintiff Counsel's Inquiries and Suggestions that Ms. Peterson Should Sue Defendant for Wrongful Termination Violates the Guidelines of Professional Courtesy and Civility**

Section 7 of the Guidelines of Professional Courtesy and Civility, which is applicable to attorneys practicing in federal court under Local Rule 83.3 of the United States District Court for the District of Hawaii, establishes:

> a.    As to Depositions, a lawyer who manifests professional courtesy and civility:
>
> (10)    Does not engage in any conduct during a deposition which is likely to offend others necessarily present and which would violate prevalent standards of behavior in judicial proceedings.

Guidelines of Professional Courtesy and Civility § 7(a).  Plaintiff counsel's repeated inquiries and suggestions that Ms. Peterson may have a claim for wrongful termination against Defendant, both on and off the record, were highly inappropriate and violate appropriate standards of behavior in any proceeding.  See Tuttle v. Combined Ins. Co., 222 F.R.D. 424, 430 (D. Cal. 2004) (employer's attorneys wrongfully influenced an employee witness in bad faith when they had a private meeting with her before she was scheduled to testify on behalf of the opposing party and told her that her testimony would be unfair to the company); Harlan v. Lewis, 982 F.2d 1255, 1259-60 (8th Cir. 1993), substituted opinion at, in part, rehearing denied by, Harlan v. Lewis, No. 92-1428, No. 92-1489, 1993 U.S. App. Lexis 3403 (8th Cir. Feb. 26, 1993) (defense attorney's interview with

plaintiff's physician was unethical because defense attorney asked the doctor not to give testimony or other relevant information to plaintiff).

Plaintiff has no substantive purpose for pursuing this line of questioning. The sole purpose for such an inquiry is the harassment of Ms. Peterson and Defendant. An order is therefore essential to ensure that Plaintiff's counsel meets his obligations if Ms. Peterson's deposition is resumed.

## VI. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court deny Plaintiff's Third Motion to Compel Discovery. If the deposition of Ms. Peterson is resumed, Defendant requests that this Court grant its Counter Motion.

DATED: Honolulu, Hawaii, January 19, 2006.

TORKILDSON, KATZ, FONSECA,
MOORE & HETHERINGTON,
Attorneys at Law, A Law Corporation

_Heather M. Rickenbrode_

JEFFREY S. HARRIS
JAN MURANAKA BOIVIN
HEATHER M. RICKENBRODE
Attorneys for Defendant
HOME DEPOT USA, INC.