```
 1                IN THE UNITED STATES DISTRICT COURT

 2                     FOR THE DISTRICT OF HAWAII

 3   JON MUSE,                     )
                                   )
 4                 Plaintiff,      )
                                   )
 5         vs.                     ) Civil No. CV04-00154 DAE/BMK
                                   )
 6   HOME DEPOT USA, INC.,         )
                                   )
 7                 Defendants.     )
     _____)

 8

 9

10

11

12

13

14

15

16

17

18             DEPOSITION OF DEBRA PETERSON

19        Taken on behalf of the Plaintiff at the offices of

20   Davis Levin Livingston Grande, 851 Fort Street, 500 Davis

21   Levin Livingston Grande Place, Honolulu, Hawaii, commencing

22   at 9:01 a.m. on January 7, 2006, pursuant to Notice.

23

24   BEFORE:      JESSICA R. PERRY, CSR NO. 404

25               Certified Shorthand Reporter
```

Ralph Rosenberg Court Reporters
OFC:  (808) 524-2090       FAX:  (808) 524-2596

EXHIBIT A

```
 1      A.   Yes.
 2      Q.   Who was that?
 3      A.   I don't recall.
 4      Q.   Would it have been Mike Dolan?
 5      A.   I don't recall.
 6      Q.   How many times -- how many times have you met with
 7 Mr. Harris?
 8           MR. HARRIS:  Objection, attorney-client
 9 privilege.  Instruct the witness -- instruct the witness not
10 to answer.
11           MR. SHERMAN:  Actually, what communication is
12 being violated there?
13           MR. HARRIS:  I'm not arguing with you.  You
14 can take that question and go talk to the magistrate.  I'm
15 objecting.  I'm instructing the witness not to answer.
16      Q.   Are you going to follow Mr. Harris's instruction in
17 this regard, knowing that we may have to go to court on this?
18      A.   Yes.
19      Q.   How many times have you been to Mr. Harris's
20 office?
21           MR. HARRIS:  Same objection, same instruction.
22      Q.   Has Mr. Harris ever come out to Home Depot to talk
23 to you?
24           MR. HARRIS:  Same objection, same instruction.
25      Q.   Have you met with employees at Mr. Harris's law
```

```
 1  firm regarding this matter?
 2              MR. HARRIS:  Same objection, same instruction.
 3      Q.  Have they helped you prepare for this deposition in
 4  any form or fashion?
 5              MR. HARRIS:  Same objection, same instruction.
 6      Q.  Did you -- let me ask you one more time, what
 7  documents did you review for this deposition?
 8              MR. HARRIS:  Asked and answered.
 9      Q.  You can answer that question.
10      A.  My declaration and my written statements.
11      Q.  Now, your declaration, did you prepare that
12  yourself?
13      A.  No.
14      Q.  Was it prepared for you?
15      A.  Yes.
16      Q.  And you went somewhere to sign it; is that correct?
17      A.  No.
18      Q.  Was it sent to you in the mail?
19      A.  No.
20      Q.  How did you get it physically to sign it?
21      A.  It was dropped off at my work of employment.
22      Q.  Was it picked up from your work of employment as
23  well?
24      A.  Yes.
25      Q.  Do you know who picked it up?
```

```
 1      A.   Yes.
 2      Q.   Okay, who was that?
 3      A.   Ms. Jan.
 4      Q.   That was Jan Boivin?
 5      A.   Yes.
 6      Q.   Did she drop it off as well?
 7      A.   Yes.
 8      Q.   Without getting into your -- exactly what was said,
 9 she spoke to you when she dropped it off; is that correct?
10           MR. HARRIS:  Objection, attorney-client
11 privilege.  Instruct the witness not to answer.
12           MR. SHERMAN:  Again, I don't understand that,
13 because I'm not asking the content.
14           MR. HARRIS:  Just stop arguing.  Just keep
15 going.
16           MR. SHERMAN:  Jeff, for the record, I don't
17 have to take instruction from you.  We can certainly make our
18 points for the record, all right?  There's no reason for
19 either me to be condescending to you or you to be
20 condescending to me.  We're not going to spend a lot of time
21 on this.  I want to make sure it's very clear, you know, if
22 and when we take this to Judge Kurren.  All right?
23           MR. HARRIS:  Sure.
24           MR. SHERMAN:  And it will just go faster if we
25 just stop going along this route.  Obviously, you know, you
```


```
 1  year, 2002.  Instead of 2004 I wrote 2002.
 2      Q.   Now, have you -- did you ever -- have you ever met
 3  Mr. Muse since this incident in November?
 4      A.   No.
 5      Q.   Did you ever meet him prior to the incident in
 6  November of 2004?
 7      A.   No.
 8      Q.   Didn't you meet him in April 25th, 2004?
 9           MR. HARRIS:  Objection, vague as to the term
10  meet.
11      Q.   You can answer the question, if you can.
12      A.   Yes.
13      Q.   So you have met him after the November incident?
14      A.   Yes.
15      Q.   And would that have been April 25th, 2004?
16      A.   Yes.
17      Q.   Now, since your termination from Home Depot, have
18  you spoken to anyone other than Mr. Harris about this
19  incident?
20           MR. HARRIS:  Objection as to communications
21  with anyone in my office covered by the attorney-client
22  privilege and with respect to -- such as Jan Boivin, and
23  instruct the witness not to answer with respect to
24  communications with anyone in my office.
25      Q.   Have you spoken with anyone about this incident?
```

```
 1  grammatical question, that's all.
 2          MR. HARRIS:  It's hard for both of us
 3  sometimes.
 4          MR. SHERMAN:  I understand.  We're getting to
 5  that age.
 6      Q.  So assuming that Mr. Muse has a verbal tic that
 7  forces him to use the word cunt and fucking and he has no
 8  control over that, you were still offended by the fact that
 9  he uses that language in that context?
10          MR. HARRIS:  Objection, foundation,
11  speculation, lay opinion, argumentative.
12      Q.  Okay, go ahead.  You can answer.
13      A.  Yes.
14      Q.  So are there any other disabilities that offend
15  you?
16          MR. HARRIS:  Objection, argumentative.
17  Instruct the witness not to answer.  Harassing.  Don't
18  answer.
19      Q.  Are there some disabilities that offend you?
20          MR. HARRIS:  Same objection, same instruction.
21  Irrelevant, harassing.
22      Q.  Why were you offended at that time in November?
23      A.  As a woman, any woman would be offended being
24  called a C word.
25      Q.  But did he actually say, you're a cunt, at that
```

```
 1  time in November?
 2      A.  He addressed me as, eh, C.  Can you help me return,
 3  C, this wheelbarrow, C?
 4      Q.  Let me ask you that question again.
 5          MR. HARRIS:  Objection, asked and answered,
 6  argumentative.  Instruct the witness not to answer.
 7      Q.  What made you think that he was directing that to
 8  you personally at that time?
 9      A.  He was asking -- directing to me, asking me for
10  help and looking at me straight in the eyes and saying the C
11  word.  He addressed me as, eh, C.
12      Q.  He actually said a --
13      A.  Eh, as in E-H, eh.
14      Q.  Isn't it possible he was simply asking you for help
15  in this transaction?
16          MR. HARRIS:  Objection, foundation,
17  speculation.
18      Q.  You can answer that.
19      A.  He was asking me for help, but he still addressed
20  me as, eh, C.
21      Q.  So that's -- that was your feeling at that time,
22  that he was calling you a cunt; is that correct?
23      A.  Yes.
24      Q.  And is that still your feeling?
25      A.  Yes.
```

1  white Sunday. They're either going to church or -- they're
2  going to church or they're going home from church. It's
3  white Sunday. I have a Samoan nephew. I know about white
4  Sundays. It's a family day. The kids -- put out plays and
5  stuff for the kids and they have baptisms.
6       I was helping the Samoan lady with her little
7  daughter and Mr. Muse came around and started saying, C, can
8  you help me return this, C, sprayer? And the Samoan lady, in
9  embarrassment, put her head down and shaked her head. So I
10 had to talk to her louder to not let the little girl hear
11 what was going on. So I said, okay, Mr. Muse. Go to the
12 garden center, look for the same sprayer, and come back. So
13 during that time I rushed with the lady and got her and the
14 little girl out of there.
15          (Exhibit No. 2 marked.)
16   Q.   Now, I've given you what's been marked as Exhibit
17 2.
18       Yeah, write it on there.
19       But before we get to that, I just wanted to ask
20 you, so you have been -- which date did this occur, to the
21 best of your recollection, 2004, 2003?
22   A.   The first one? The first time was 2003, Sunday --
23 no, excuse me, November 3rd, 2003.
24   Q.   Okay, so you're changing your testimony from
25 earlier today; is that correct?

```
 1        A.   No, it's just the date.
 2        Q.   Okay.  You testified earlier --
 3             MR. HARRIS:  I object.  Instruct the witness
 4   not to answer.  You're harassing.
 5             MR. SHERMAN:  I'm not harassing her.  I'm
 6   pinning down as to her ability to recollect, and apparently
 7   it's not so good.
 8             MR. HARRIS:  I'm not going to argue.
 9             MR. SHERMAN:  Are you instructing her not to
10   answer?
11             MR. HARRIS:  Go ahead and ask the question.
12             MR. SHERMAN:  Okay.
13        Q.   Earlier today you testified that this occurred in
14   2004; is that correct?
15             MR. HARRIS:  Objection, vague, argumentative,
16   asked and answered.
17        Q.   You can answer the question.
18        A.   Yes.
19        Q.   And what's written here in Exhibit 1 is 2002; is
20   that correct?
21        A.   Yes.
22        Q.   And that's your handwriting?
23        A.   Yes.
24        Q.   And that's what you copied verbatim from the
25   earlier written declaration that you destroyed; is that
```

1    A.    Yes.

2    Q.    So that original written statement that was written
3 at or about the time of the incident is gone forever; is that
4 correct?

5    A.    Yes.

6    Q.    Did you ever tell anyone else you had done this,
7 torn this up -- this statement up?

8    A.    No.

9    Q.    Did anyone instruct you to tear it up?

10   A.    No.

11   Q.    Do you know if that's a policy of Home Depot, for
12 you to destroy evidence like that?

13         MR. HARRIS:  Objection, speculation,
14 argumentative.

15         THE WITNESS:  I already had the same thing
16 written on another paper, so it was exact, the same wording.

17   Q.    What do you mean another paper?

18   A.    On this paper.  I'd already rewritten it on the
19 employee statement.

20   Q.    Okay.  So you can understand that we're a little
21 confused about the dates, based on your testimony earlier
22 today.

23         MR. HARRIS:  Objection, argumentative.
24 Instruct the witness not to answer.

25   Q.    Which date --

```
1            MR. HARRIS:  And hearsay.
2      Q.   -- did this occur on?
3      A.   November 3rd, 2003.
4      Q.   So this statement is wrong; is that correct?
5      A.   The statement is not wrong.  It's the date is
6  wrong, the year is wrong.  I wasn't employed at Home Depot on
7  November 3rd, 2002 yet.  It was just a human error with the
8  year.
9      Q.   But it was an incorrect statement on your part; is
10 that correct?
11           MR. HARRIS:  Objection, harassment, instruct
12 the witness not to answer.
13           MR. SHERMAN:  If your witness wants to
14 persist, and all you have to do is say I made a mistake, and
15 it's obvious.
16           MR. HARRIS:  It's asked and answered.  I'm not
17 going to argue.
18           MR. SHERMAN:  But her --
19           MR. HARRIS:  I'm not going to argue with you,
20 Counsel.  Don't address me.  You state something for the
21 record and then keep going.
22           MR. SHERMAN:  Her ability to recollect is
23 always at issue, any witness's is, and it's apparent here
24 that her dates are all over the place.  It also brings into
25 question what else might have occurred and whether her
```

1  recollection is accurate.
2          MR. HARRIS: Objection, attorney testifying.
3  Move to strike.
4          MR. SHERMAN: I'm just stating my basis for
5  the reason.
6      Q.  You understand that we may have to take your
7  deposition again if we go to the judge and Mr. Harris is
8  found not to be correct in the basis for some of his
9  objections? You appreciate that?
10         MR. HARRIS: Objection. Objection,
11 argumentative. Attorney testifying. Move to strike.
12 Instruct the witness not to answer.
13     Q.  Okay, are you going to follow Mr. Harris's
14 instructions with regard to that particular question?
15     A.  Yes.
16     Q.  Okay, now, going down to Exhibit 1 at the bottom, I
17 want you to read the last two sentences, starting with, I
18 told Mike.
19     A.  I told Mike C. Mike asked the young man, please
20 stop saying that or I need you to leave. He told Mike Dolan,
21 C, I have Tourette's, C.
22     Q.  So Mike Dolan asked Jon Muse to leave; is that
23 correct?
24     A.  He asked him to leave if you're going to be -- from
25 my recollection, would you please leave, if you're going to

Q. Oh, okay. But you didn't write anything in here about he followed you in an angry fashion, did you?

A. No, I didn't.

Q. And you didn't say anything ever before today that you were afraid of that, did you?

A. No.

Q. And yet you've had a number of occasions to explain what happened that day, haven't you?

MR. HARRIS: Objection, foundation, argumentative, and attorney-client privilege.

Q. You didn't tell anyone else at Home Depot the same thing that you are testifying today, did you?

MR. HARRIS: Objection, assumes facts --

MR. SHERMAN: Why don't you just do a standing objection, okay, and it will go faster?

MR. HARRIS: Why don't you just do a standing question, okay? You ask a question, I object, and then she gives you answers or I instruct her not to answer. You have a question pending.

MR. SHERMAN: I don't know that you've instructed her. I didn't hear you instruct her.

MR. HARRIS: I'm not done with my objection. You interrupted my objection, okay?

MR. SHERMAN: Okay.

MR. HARRIS: Objection, foundation,

1  all the time, questions like that.
2      Q.   Now, on November 3rd did anyone tell you go write
3  down this down, exactly what happened?
4      A.   I can't recall that, but I did write it down.
5      Q.   You don't recall if Mike Dolan told you to?
6      A.   No, I don't recall.
7      Q.   Did you talk to any other supervisors that day
8  about what happened?
9      A.   Dar Kuhia.
10     Q.   Do you recall if she told you to go write down
11 exactly what happened?
12     A.   It could have been.
13     Q.   Now, getting back to Exhibit 2 and 2A, what did the
14 Samoan woman buy or return?
15     A.   I don't remember.
16     Q.   Well, this was a pretty important situation for
17 you, witness this again, wasn't it?
18     A.   Yes.
19     Q.   What did she return?
20         MR. HARRIS:  Objection, asked and answered,
21 harassment.  Instruct the witness not to answer.
22     Q.   Okay, you understand that we may take your
23 deposition again with respect to these questions that he's
24 instructing you not to answer?
25         MR. HARRIS:  Objection, harassment.  Move to

```
 1  strike.  Instruct the witness not to answer.
 2       Q.   So you have no recollection of what she returned
 3  that day?
 4       A.   We take in all day long a lot of broken stuff,
 5  junk, returns.  I don't remember.  I couldn't tell you what
 6  somebody brought in last week, a person, to return.  We
 7  have -- it's all day long.  It's constant returns.  You
 8  don't -- you know.  I remember Jon Muse's one.
 9       Q.   Did you receive any instructions after April 25th,
10  2004 regarding Jon Muse if he were to return to Home Depot?
11       A.   No.
12       Q.   No one ever said anything to you?
13       A.   No.
14       Q.   Did you ever receive a memo?
15       A.   No.
16       Q.   What if he had returned, what would you have done?
17            MR. HARRIS:  Objection, foundation,
18  speculation, assumes facts not in evidence.
19       Q.   You can answer.
20       A.   I would have helped him.  I would have helped
21  Mr. Muse, but I would also have a supervisor, probably call a
22  supervisor over.
23       Q.   So no one ever told you that Mr. Muse couldn't come
24  to the store anymore?
25       A.   No.
```

```
 1      Q.   Do you think he's faking it, the condition?
 2           MR. HARRIS:  Objection, foundation, vague as
 3  to faking.
 4      Q.   Do you understand what I mean by the word faking?
 5      A.   Yes.
 6      Q.   Okay, please answer the question, then.
 7      A.   Yes.
 8           MR. HARRIS:  Objection, foundation, vague as
 9  to the use of the word faking as not connected to anything.
10      Q.   So you think Mr. Muse is faking his condition; is
11  that correct?
12      A.   At that time, yes.  I don't know that he has
13  Tourette's, and to this day I don't know if he has
14  Tourette's.  I didn't see any medical statement that he has
15  Tourette's.
16      Q.   Well, if he had a medical statement and gave it to
17  you, would that make a difference?
18           MR. HARRIS:  Objection, foundation,
19  speculation, assumes facts not in evidence, irrelevant.
20      Q.   You can answer.
21      A.   I don't know.  I felt offended when he addressed me
22  as a C.
23      Q.   But if he had a statement saying that he has no
24  control over this, he doesn't intend to use the word, he
25  can't help it, it's a disease --
```

```
 1               MR. HARRIS:  Objection.
 2       Q.   -- would you --
 3               MR. SHERMAN:  I've got to finish the question.
 4               MR. HARRIS:  Okay, you stopped.
 5               MR. SHERMAN:  I just paused for a second.  I
 6   know you want to get it out.
 7       Q.   -- would you still not believe that?
 8               MR. HARRIS:  Objection, argumentative, asked
 9   and answered.  Instruct the witness not to answer.  And
10   compound.
11       Q.   So let me get this straight.  It wouldn't have made
12   any difference what Mr. Muse told you about his condition
13   that day for you, would it?
14               MR. HARRIS:  Objection, foundation,
15   speculation, irrelevant lay opinion.
16       Q.   You can answer.
17       A.   I don't know.
18       Q.   Well, if he had given you a sign or a medical
19   statement, would that have made a difference to you?
20               MR. HARRIS:  Objection, foundation,
21   speculation, asked and answered, harassment.
22               THE WITNESS:  I understand that I did my job.
23   I helped Mr. Muse no matter what name he was saying, and I
24   would have helped him anyway, like I would have helped any
25   other person that needed help.  And I think he had control,
```