# EXHIBIT "11"

LEXSEE 2006 U.S.DIST. LEXIS 57173

**JOHN MANNICK, Plaintiff, v. KAISER FOUNDATION HEALTH PLAN, INC., et al., Defendants.**

**No. C 03–5905 PJH**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*2006 U.S. Dist. LEXIS 57173*

**July 31, 2006, Decided**
**July 31, 2006, Filed**

**PRIOR HISTORY:** *Mannick v. Kaiser Found. Health Plan, Inc., 2006 U.S. Dist. LEXIS 38430 (N.D. Cal., June 9, 2006)*

**COUNSEL:** [*1] For John Mannick, Plaintiff: Paul L. Rein, Julie McLean, Patricia Barbosa, Law Offices of Paul L. Rein, Oakland, CA; J. Gary Gwilliam, Gwilliam Ivary Chiosso Cavali & Brewer, Oakland, CA; Kari Erickson Levine, Seyfarth Shaw LLP, San Francisco, CA; Kerri Ann Jaffe Oakland, CA.

For Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, Defendants: Janine Simerly, Francis J Torrence, Jennifer Svanfeldt, Kari Erickson Levine, Seyfarth Shaw LLP, San Francisco, CA.

**JUDGES:** PHYLLIS J. HAMILTON, United States District Judge.

**OPINION BY:** PHYLLIS J. HAMILTON

**OPINION:**

**ORDER DENYING MOTION FOR RECONSIDERATION, GRANTING DEFENDANTS' MOTION IN LIMINE NO. 1, AND OVERRULING OBJECTIONS TO RULING ON RULE 37(c) MOTION**

Before the court are plaintiff's motion for reconsideration of the June 9, 2006, order granting defendants' motion for summary judgment, defendant's motion in limine No. 1 (as to which the court previously reserved its ruling), and plaintiff's objections to Magistrate Judge Spero's June 23, 2006, ruling on defendants' *Federal Rule of Civil Procedure 37(c)* motion to exclude evidence at trial. Having read the parties' papers and carefully considered [*2] their arguments, and good cause appearing,

the court hereby GRANTS the request for leave to file the motion for reconsideration, DENIES the motion for reconsideration, GRANTS defendants' motion in limine No. 1, and OVERRULES the objections.

**BACKGROUND**

Plaintiff John Mannick suffers from advanced-stage multiple sclerosis, and requires the use of a wheelchair for locomotion. His left arm and both legs are immobile. In January 2003 he developed a viral infection that threatened to cause him to lose the use of his right arm — his last functioning limb. He was hospitalized in the medical-surgical ward at Kaiser Oakland Hospital ("Kaiser Oakland") from January 2, 2003, through January 8, 2003.

On January 2, 2003, plaintiff requested the installation of a Hoyer lift and sling in his patient room, so that he could be transferred from his wheelchair to his bed and back to his wheelchair. A lift was brought into his room, but it was not equipped with a sling, and plaintiff could not use it. On January 4, 2006, plaintiff's family brought in a sling for use with the lift.

Also on January 4, 2003, plaintiff's catheter (which he uses 24 hours a day) failed. He wanted to take a shower [*3] to clean off, but was unable to because the doorway in his patient bathroom was too narrow to accommodate his wheelchair and because the bathroom was not equipped with a roll-in shower. The nurses offered to give him a bed bath, but he insisted on a shower. He was advised by hospital employees that Kaiser Oakland had no patient bathroom equipped with a roll-in shower.

On January 7, 2003, hospital employees told plaintiff that there was an accessible shower on the 4th floor maternity ward (not in use as a maternity ward at that time). Hospital aides took him to the 4th floor, where they helped him shower. Plaintiff alleges, however, that the shower was not sufficiently accessible, as it was excessively small and was not properly configured for wheelchair users.

EXHIBIT *11*

Plaintiff filed this action on December 31, 2003, against defendants Kaiser Foundation Health Plan, Inc., and Kaiser Foundation Hospitals ("Kaiser" or "defendants"), asserting violations of state and federal law. The complaint alleges two causes of action. In the first cause of action, plaintiff asserts denial of access to public facilities, in violation of *California Health & Safety Code §§ 19955* [*4] *, et seq.*, and *California Civil Code § 54.1*. Plaintiff alleges that the patient drop–off parking area was inadequately configured, located, and supervised; that there was inadequate disabled van-accessible parking in the hospital parking structure; and that his patient room was inaccessible, with regard to the transfer of disabled persons from their wheelchairs into their beds and back into their wheelchairs, and also with regard to the lack of accessible toilets and showers, the lack of usable door hardware, and the width of the bathroom doors. Plaintiff alleges further that defendants were required to comply with the specifications of Title 24, California Code of Regulations, because Kaiser has carried out alterations or modifications to the hospital and the parking structures during the time Title 24 has been in effect. The complaint seeks injunctive relief pursuant to Civil Code *§ 55* and Health & Safety Code *§ 19953*; treble damages pursuant to Civil Code *§ 54.3*; and costs and fees pursuant to Health & Safety Code *§ 19953*, Civil Code *§§ 54.3* and *55*, and Code of Civil Procedure § 1021.5.

The second cause of action, which begins at P 24 of the complaint [*5] and continues through P 33, pleads discrimination in violation of Title III of the Americans With Disabilities Act ("ADA"), *42 U.S.C. § 12181, et seq.* There are no factual allegations in the second cause of action. Instead, in P 24, plaintiff incorporates by reference all previous allegations–including the facts alleged as part of the first cause of action. In P 25, plaintiff describes the 1990 Congressional findings regarding disabled persons, which appear in the ADA at *42 U.S.C. § 12101*. In P 26, plaintiff repeats the portion of *§ 12101* in which Congress describes the overall purpose of the ADA. In P 27, plaintiff describes Title III, and states that Title III defines "public accommodation" in *§ 12181* as including "professional office of a health care provider, hospital, or other service establishment." In P 28, plaintiff states that *§ 12182(a)* prohibits discrimination in the provisions of goods, services, facilities, privileges, advantages, or accommodations, on the basis of disability, in places of public accommodation.

In P 29, plaintiff states that the specific prohibitions against discrimination that appear in *§ 12182(b)(2)(A)* [*6] include the following provisions, set forth in *subsections (ii), (iii), (iv),* and *(v)*:

[Discrimination includes] a failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;

*42 U.S.C. § 12182(b)(2)(A)(ii).*

[Discrimination includes] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals, because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden;

*42 U.S.C. § 12182(b)(2)(A)(iii).*

[Discrimination includes] [*7] a failure to remove architectural barriers and communication barriers that are structural in nature, in existing facilities . . . where such removal is readily achievable; and

*42 U.S.C. § 12182(b)(2)(A)(iv).*

Where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, [discrimination includes] a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable.

*42 U.S.C. § 12182(b)(2)(A)(v).*

Plaintiff then alleges that "[t]he acts and omissions of [d]efendants set forth herein were in violation of [p]laintiff's rights under the ADA, Public Law 101–336, and the regulations promulgated thereunder, 28 C.F.R. Part 36, [et seq.]."

In P 30, plaintiff alleges that "the removal of each of the barriers complained of by [p]laintiff as hereinabove alleged, [was] at all times herein mentioned 'read-

2006 U.S. Dist. LEXIS 57173, *7

ily achievable' under the standards of the Americans With Disabilities Act;" that removal of each of the barriers was required under California law; and that alterations, [*8] structural repairs, or additions since January 26, 1993, also triggered independent requirements for removal of barriers under the ADA and under § 19959 of the Health & Safety Code.

In P 31, plaintiff alleges that defendants have denied and continue to deny "full and equal access to [p]laintiff and to other disabled persons, including wheelchair users . . . which discriminated against [p]laintiff on the basis of his disability, thus wrongfully denying to [p]laintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations, in violation of . . . 42 U.S.C. § 12182."

In PP 32–33, plaintiff alleges that he is entitled to the remedies set forth in the Civil Rights Act of 1964, 42 U.S.C. § 2000(a)–3(a), as he has been subjected to discrimination on the basis of disability in violation of Article III of the ADA, and that he is entitled to injunctive relief under 42 U.S.C. § 12188.

In September 2005, following a series of six settlement conferences, the parties submitted a proposed consent decree to the court. The proposed consent decree [*9] resolved only the claims for injunctive relief, not any issue regarding liability, damages, or attorney's fees. The court signed the consent decree on September 20, 2005. Pursuant to the consent decree, Kaiser agreed to perform extensive construction and restructuring to provide accessible patient bathrooms on each of Kaiser Oakland's five patient floors, and to provide accessible parking and paths of travel. Kaiser also agreed to give disabled patients the option of transferring to another Kaiser facility for the term of their hospitalization, pending construction of the accessible rooms.

The consent decree provided that "the parties . . . agree to entry of this Order to resolve all claims regarding the injunctive relief raised in the [c]omplaint;" that "[t]his Order shall be a full, complete, and final disposition and settlement of [p]laintiff's claims against [d]efendants for injunctive relief that have arisen out of the subject [c]omplaint;" that [t]he parties agree that there has been no admission or finding of liability or violation of the ADA and/or California civil rights laws, and this [c]onsent [d]ecree should not be construed as such;" and that "this [c]onsent [*10] [d]ecree cannot be used as evidence by [p]laintiff to prove the damages portion of his case."

On April 26, 2006, the parties filed cross-motions for summary judgment. On June 9, 2006, the court issued an order granting defendants' motion and denying plaintiff's motion.

## DISCUSSION

### A. Discrimination Claims under Title III of the ADA

Title III of the ADA generally requires an operator of a public accommodation, including a "professional office of a health care provider, hospital, or other service establishment," 42 U.S.C. § 12181(7)(F), to make its services accessible to disabled persons. See 42 U.S.C. § 12182(a). Title III provides several definitions of "discrimination." See 42 U.S.C. §§ 12182(b)(2)(A), 12183(a). These statutory provisions set forth two systems relating to building accessibility — one applying to facilities designed and constructed for occupancy before January 26, 1993, see 42 U.S.C. § 12182(b)(2)(A)(iv), (v), and one applying to newly constructed or altered facilities, see 42 U.S.C. § 12183(a)(1) [*11] .

As indicated above, the complaint in this action alleges discrimination under subsections (ii), (iii), (iv), and (v) of 42 U.S.C. § 12182(b)(2)(A). n1 Subsections (ii) and (iii) define "discrimination" as, respectively, a failure to make reasonable modifications in polices, practices, or procedures in order to afford goods, services, facilities, privileges, advantages, or accommodations to persons with disabilities; and a failure to take steps necessary to ensure that no disabled individual is excluded or denied services because of the absence of auxiliary aids or services — except where the defendant "can demonstrate" that making such modifications or taking such steps "would fundamentally alter the nature of" such goods, services, facilities, privileges, advantages, or accommodations.

> n1 The complaint does not mention 42 U.S.C. § 12183, the provision governing newly constructed or altered buildings, but plaintiff does allege in the second cause of action that alterations or structural repairs since January 26, 1993, triggered independent requirements for removal of barriers under the ADA.

[*12]

Subsection (iv) defines "discrimination" as a failure to remove architectural barriers, where such barrier removal is "readily achievable." The term "readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). The factors relevant to a determination whether barrier removal is "readily achievable" are set forth at § 12181(9)(A)–(D). Subsection (v) defines "discrimination" as a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through "alternative methods," where the defendant "can demon-

2006 U.S. Dist. LEXIS 57173, *12

strate" that the removal of a barrier under *subsection (iv)* is not readily achievable, and where such "alternative methods" are readily achievable.

In *Johnson v. Gambrinus Co./Spoetzl Brewery, 116 F.3d 1052 (5th Cir. 1997)*, the Fifth Circuit held that under a subsection (ii) reasonable modification claim, the plaintiff bears the burden of proving, first, that a modification was requested, and second, that the requested modification was reasonable. Once the plaintiff has met that burden, the defendant must make the requested [*13] accommodation unless the defendant pleads and meets its burden of "proving that the requested modification would fundamentally alter the nature of the public accommodation." *Id. at 1059*. In *Lentini v. Calif. Ctr. for the Arts, 370 F.3d 837 (9th Cir. 2004)*, the Ninth Circuit held that whether an accommodation fundamentally alters the service or facility is an affirmative defense under the ADA. *Id. at 845* (citing *Johnson, 116 F.3d at 1059*); see also *PGA Tour, Inc. v. Martin, 532 U.S. 661, 683 n.38, 121 S. Ct. 1879, 149 L. Ed. 2d 904 (2001)*.

In *Colorado Cross Disability Coal. v. Hermanson Family Ltd. P'ship, 264 F.3d 999 (10th Cir. 2001)*, a subsection (iv) barrier removal case, the Tenth Circuit held that the plaintiff "bears the initial burden of production to present evidence that a suggested method of barrier removal is readily achievable, i.e., can be accomplished easily and without much difficulty or expense." *Id. at 1005-06*. If the plaintiff satisfies this burden, "the [d]efendant then has the opportunity to rebut the showing. Defendant bears the ultimate burden of persuasion regarding its affirmative [*14] defense that a suggested method of barrier removal is not readily achievable." *Id. at 1006*. n2

> n2 Citing *Johnson*, the Tenth Circuit also recognized that "fundamental alteration" is an affirmative defense in subsection (ii) cases, and noted that a number of district courts had adopted Johnson's allocation of the burden of proof in subsection (ii) cases. *Id. at 1004*.

In addition to looking at the language of the statute, the Tenth Circuit also considered the opinions of several district courts that had allocated the burdens in a similar manner. For example, the court cited *Pascuiti v. New York Yankees, 1999 U.S. Dist. LEXIS 18736, 1999 WL 1102748 (S.D.N.Y., Dec. 6, 1999)*, where district court held that "[t]he plaintiffs bear the initial burden of suggesting a method of barrier removal and proffering evidence that their suggested method meets the statutory definition of 'readily achievable;'" that the plaintiffs must consider the factors identified in *§ 12181(9)* and proffer evidence, [*15] including expert testimony, as to the ease and inex-

pensiveness of their proposed method of barrier removal; and that if the plaintiffs satisfy their burden of proffering evidence that a suggested method of barrier removal can be accomplished easily and without much difficulty or expense, the burden then shifts to the defendants to rebut that showing and prove that the suggested method is not readily achievable. *Colorado Cross, 264 F.3d at 1004-05* (citing *Pascuiti, 1999 U.S. Dist. LEXIS 18736, 1999 WL 1102748 at *4-5*). The Tenth Circuit noted that the District of Hawai'i had employed a similar approach in *Parr v. L & L Drive-Inn Rest., 96 F.Supp. 2d 1065, 1085 (D. Haw. 2000)*.

The Tenth Circuit found further that *subsections (iv)* and *(v)*, read together, place the burden on the defendant to prove the affirmative defense that barrier removal is not readily achievable. *Colorado Cross, 264 F.3d at 1002*. The court concluded that this shifting of burdens comports with the overall operation of the ADA, noting that in Title I cases, the employer bears the burden of persuasion on whether a proposed accommodation would impose an undue hardship, and that [*16] in Title II cases, a public entity is not required to take any action (to accommodate the disabled) that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity, or in undue financial burdens. *Id. at 1006-07*.

The Eleventh Circuit has also adopted the burden of proof established in Colorado Cross. See *Gathright-Dietrich v. Atlanta Landmarks, Inc., — F.3d—, 435 F. Supp. 2d 1217, 2005 U.S. Dist. LEXIS 42657, WL 1716751 (11th Cir., June 23, 2006)*. The court stated that

> [u]nder the standard enunciated in Colorado Cross, a plaintiff must present sufficient evidence so that a defendant can evaluate the proposed solution to a barrier, the difficulty of accomplishing it, the cost implementation, and the economic operation of the facility. Without evidence on these issues, a defendant cannot determine if it can meet its subsequent burden of persuasion.

*2005 U.S. Dist. LEXIS 42657, [WL] at *4*. The court cited the Pascuiti decision, along with cases from other districts that have adopted the Colorado Cross standard. n3

> n3 This court notes that courts in both the Eastern and Central Districts of California have adopted the Colorado Cross standard with regard to Title III claims alleging architectural barriers. See, e.g., *Doran v. Del Taco, 2005 U.S. Dist. LEXIS 40083, 2005 WL 3478136 (C.D. Cal., Sept. 16, 2005)*; *White v. Cinemark USA, Inc., 2005 U.S.*

*Dist. LEXIS 42134, 2005 WL 1865495 (E.D. Cal., Aug. 3, 2005); Eckert v. Donahue Schriber Co., 2003 U.S. Dist. LEXIS 27023, 2003 WL 24273566 (E.D. Cal., Oct. 14, 2003).*

[*17]

Based on the sound reasoning and analysis in Colorado Cross, and the fact that the Ninth Circuit has adopted the rule from Johnson, also cited in Colorado Cross, that "fundamental alteration" is an affirmative defense in subsection (ii) cases, it seems likely that the Ninth Circuit would follow the Tenth and Eleventh Circuits in allocating the burden of production and burden of persuasion as set forth above with regard to subsection (iv)–(v) cases. This court also agrees that *subsections (iv) and (v)* must be read together, in that *subsection (v)* can come into play only if the plaintiff has first met his burden under *subsection (iv)* of providing evidence that the barrier removal is readily achievable, and the defendant has then met its burden under *subsection (iv)* of establishing as an affirmative defense that the suggested method is not readily achievable.

B. The Cross-Motions for Summary Judgment

1. Defendants' Motion

The issue presented by defendants' motion was "whether, in 2003, Kaiser had a legal obligation to provide [p]laintiff with an accessible bathroom and shower in his patient room at Kaiser's Oakland Hospital." Defs' Motion at 1. According [*18] to defendants, resolution of this question

> involves an analysis of (1) whether there was any "trigger," (i.e., any construction in the Oakland Hospital) prior to [p]laintiff's hospital stay in January 2003 that, under the Americans with Disability [sic] Act and California disability access laws, obligated Kaiser to make bathrooms and showers in its Oakland Hospital patient rooms wheelchair accessible; and (2) whether the barrier removal required to provide [p]laintiff with these accessible facilities was "readily achievable."

Id. Defendants left "the remaining alleged violations to be determined at trial," noting that plaintiff had asserted that he had been subjected to additional architectural barriers, including lack of accessible parking, lack of accessible drop-off or pick-up zone, lack of van-accessible parking spaces, and lack of a lift to transfer him from his wheelchair to his bed. Id.

As explained more fully below in the section discussing the June 9, 2006, order, defendants provided evidence showing that Kaiser Oakland was a pre-existing public facility; and that Kaiser had not made any alterations, structural repairs, or additions to patient [*19] rooms that triggered "new construction" standards under federal or state law. Defendants argued that plaintiff could therefore prevail in his Title III claim only if he could establish that the construction of an accessible patient bathroom with accessible toilet and shower was "readily achievable," which defendants asserted plaintiff could not do. n4

> n4 Although defendants referred generally to "Title III of the ADA," this is plainly an argument with reference to plaintiff's subsection (iv) barrier removal claim, and is limited to that portion of the claim regarding the accessible patient bathroom.

Applying the factors set forth in *42 U.S.C. § 12181(9)(A)–(D)*, n5 defendants provided evidence showing that extensive (and expensive) construction would be required to create accessible toilet and shower facilities in the patient rooms; and that any such construction would have a major impact on hospital operations (loss of patient beds during the construction phase, along with a permanent [*20] loss of some patient beds) and attendant patient services. Defendants also argued that spending millions of dollars to enlarge bathrooms/showers in patient rooms would not be an efficient allocation of Kaiser's financial resources, in view of the fact that Kaiser Oakland Hospital is slated to be torn down in 2012 because it does not meet state seismic safety standards.

> n5 These factors are
>
> > (A) the nature and cost of the action needed under this chapter;
> >
> > (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility;
> >
> > (C) the overall financial resources of the covered entity; the overall size of the business of the covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
> >
> > (D) the type of operation or oper-

2006 U.S. Dist. LEXIS 57173, *20

ations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

*42 U.S.C. § 12181(9).*

[*21]

Defendants then asserted that they had provided "alternate facilitation" as required by the ADA, citing *subsection (v) of 42 U.S.C. § 12182(b)(2)(A)*, as well as *28 C.F.R. § 36.305(a)*. n6 Defendants argued that Kaiser provided bed baths and bedside commodes to their immobile patients as "alternative methods."

n6 "Where a public accommodation can demonstrate that barrier removal is not readily achievable, the public accommodation shall not fail to make its goods, services, facilities, privileges, advantages, or accommodations available through alternative methods, if those methods are readily achievable." *28 C.F.R. § 36.305*. The regulation also provides examples of "alternative methods," including "providing curb service or home delivery," retrieving merchandise from inaccessible shelves or racks," and "relocating activities to accessible locations." Id.

In opposition, plaintiff argued that defendants had admitted that Kaiser had [*22] spent millions of dollars renovating Kaiser Oakland, and that these renovations triggered the requirement to provide accessible patient bathrooms. Specifically, plaintiff asserted that renovations in the 4th and 5th floor maternity ward in 1993 triggered the requirement to provide an accessible toilet and roll-in shower. Plaintiff also argued that requiring disabled patients in wheelchairs to take bed baths and use portable bedside commodes was discriminatory because it was based solely on those patients' disabilities. Plaintiff asserted that defendants had demonstrated "conclusively" that barrier removal was "readily achievable" by entering into a consent decree agreeing to remove barriers in three patient rooms and to construct fully accessible bathrooms in three patient rooms. Plaintiff also asserted that the removal of barriers in the patient rooms "has always been 'readily achievable' based on cost" (referring to Kaiser's overall financial resources), and criticized defendants' claim that construction of the accessible bathrooms would have a major impact on hospital operations.

In reply, defendants reiterated that the evidence showed that no construction had taken place on the [*23] medical–surgical floors which would have "triggered" Kaiser's obligation to construct a bathroom with an accessible toilet and roll-in shower in plaintiffs room or in any patient room on the medical–surgical floors of Kaiser Oakland. Defendants argued that the consent decree cannot be used to establish liability; that plaintiff had provided no evidence to refute defendants' showing that the ADA does not require "extensive restructuring" of existing facilities; that plaintiff had trivialized the loss of patient rooms, the impact on hospital operations, and the extensive costs of restructuring; and that plaintiff had not established that Kaiser's alternative facilitation was discriminatory and had misstated the facts when he asserted that Kaiser characterized every disabled patient as "confined to bed."

2. Plaintiff's Motion

Plaintiff moved for "summary adjudication on liability," requesting that

the [c]ourt find, as a matter of law, that defendants violated Title III of the Americans with Disabilities Act of 1990's ("ADA") prohibition against discrimination based on disability, and discriminated against plaintiff under *California Civil Code §§ 54* and [*24] *54.1*, by depriving [p]laintiff of 'full and equal' access to defendants' facilities at the Kaiser Permanente Oakland Hospital in the City of Oakland, on the basis that plaintiff is, and was, a person with a physical disability and could not use defendants' inaccessible facilities.

Pltf's Motion at 1. Plaintiff noted in a footnote that he had already obtained injunctive relief with regard to barriers. Based on the above, the court reasonably concluded that plaintiff was seeking summary judgment on liability as to all remaining claims. Plaintiff did not state, as defendants did in their motion, that he was moving for summary judgment only as to certain specified issues, and that the remaining claims would be left for trial. Nor did plaintiff make clear in the complaint exactly what claims he was asserting and what facts underlay those claims.

Plaintiff asserted that his motion for "summary adjudication on liability" should be granted based on "overwhelming evidence" that

defendants discriminated against plaintiff by: 1) not complying with the requirements of the ADA to remove barriers that were "read-

ily achievable" for Kaiser to remove; 2) failing to reasonably modify [*25] their policies for disabled patients as necessary to serve plaintiff's needs; [and] 3) repeatedly and willfully refusing to comply with ADA and California access regulations that require paths of travel upgrades following millions of dollars of construction and alterations to the hospital and related facilities prior to plaintiff's visit in January 2003.

Pltf's Motion at 2.

Thus, plaintiff sought summary judgment as to three "liability" issues — a) the ADA barrier claim — the claim that defendants had failed to remove barriers that were "readily achievable" for Kaiser to remove; b) the ADA reasonable modification claim — the claim that defendants had failed to reasonably modify their policies for disabled patients as necessary to serve plaintiff's needs; and c) the ADA and California paths-of-travel claims — the claims that defendants had failed to comply with ADA and California access regulations that require paths-of-travel upgrades following millions of dollars' worth of construction and alterations to the hospital and related facilities.

*(a) ADA barrier claim*

In support of the subsection (iv) claim, plaintiff argued that removal of barriers was readily achievable [*26] because defendants have total assets valued at $25 billion, and a net income of $1 billion. Plaintiff discussed barrier removal mostly in generalities — referring (a) to a category of "presumptively 'readily achievable' barrier removal," as including installing ramps, making curb cuts in sidewalks and entrances, widening doors, and creating designated accessible parking spaces; (b) to the defendants' asserted obligation to provide at least one accessible patient room with accessible toilet and roll-in shower; n7 and (c) to the defendants' asserted obligation to provide at least one van-accessible parking space in one of the patient parking lots, one accessible path of travel from the parking lots to the hospital, and one van-accessible parking space and path of travel from the patient discharge area to the hospital entrance.

> n7 Plaintiff mentioned the lack of a sling for the Hoyer lift in the statement of facts in his opening brief, but did not mention it in the legal argument portion of his papers (where he focused on the accessible toilet and shower, and on the parking and paths-of-travel issues). Plaintiff did not mention door hardware in the patient room in his opening brief, although he did in his declaration and in his

reply brief.

[*27]

Plaintiff refers three times in his opening memorandum of points and authorities to "presumptively readily achievable" barrier removal. However, he cites to no provision of the ADA or the implementing regulations that states that removal of certain types of barriers is "presumptively readily achievable" — in the sense that a plaintiff is relieved from the burden of providing evidence showing that removal of the barrier was readily achievable.

The only source cited by plaintiff in support of this assertion is the Department of Justice Technical Assistance Manual III, P 4.4200. The DOJ Technical Assistance Manual provides guidelines to assist public accommodations in making their facilities disabled accessible, and includes a list of 21 "modifications" that "may be readily achievable." This list simply repeats, verbatim, the list of examples of "steps to remove barriers" that appears in *28 C.F.R. § 36.304*.

There is no clear support in the text of the ADA or in the implementing regulations for a claim that a particular type of barrier removal is "presumptively readily achievable." It is true that the commentary to the regulations states that certain types [*28] of barrier removal may be considered "modest" — in the sense that they are not expensive or complicated–suggesting that a plaintiff could probably establish that removing those categories of barriers would be readily achievable. However, there is no support in the statute or the regulations for a claim that removal of certain types of barriers is per se readily achievable.

Plaintiff acknowledged in his moving papers that the burden of demonstrating that barrier removal is not readily achievable is an affirmative defense. However, as in his opposition to defendants' motion, he failed in his own motion to meet the burden of providing evidence that the proposed barrier removal is readily achievable, with regard to the factors set forth at *42 U.S.C. § 12181(9)(A)–(D)*.

As defendants pointed out in their opposition, the only factor plaintiff considered was the overall financial resources of the defendants. For this reason, the June 9, 2006, order found that summary judgment should be granted for defendants on the subsection (iv) claim with regard to the accessible patient bathroom, because plaintiff had not met his burden of providing evidence as to the factors [*29] required to show that creation of an accessible patient bathroom was readily achievable.

In his reply, plaintiff argued that the consent decree

established that the barrier removal was "feasible," and suggested that the fact that the defendants agreed as part of the settlement of the claims for injunctive relief to provide a certain number of accessible patient rooms weakened defendants' argument that creation of an accessible patient room prior to January 2003 would have seriously impacted hospital operations. He also cited to a recent decision from the Eastern District of California, *Wilson v. Pier I Imports (US), Inc., 2006 U.S. Dist. LEXIS 21216, 2006 WL 947709 (E.D. Cal., Apr. 12, 2006)*, in which the district court found that because the defendant in that case had already removed the barriers as of the time the court was considering the matter, the barrier removal was "readily achievable."

The Wilson case is distinguishable. Unlike the present case, there is no indication in Wilson that the barrier removal was undertaken pursuant to a consent decree providing that the fact that the defendant had agreed to remove the barriers could not be used as evidence of liability.

In their [*30] opposition to plaintiff's motion, defendants also raised the subsection (v) requirement, noting that where a public accommodation demonstrates that barrier removal is not "readily achievable" (by definition, this must occur in connection with a subsection (iv) barrier removal claim) a place of public accommodation must make its goods, services, facilities, privileges, advantages, or accommodations available through alternative methods, if those are readily achievable. Defendants provided evidence showing that Kaiser had provided alternatives to the creation of accessible bathrooms in the patient rooms — bed baths and portable commodes. Defendants also asserted that patients are not entitled to the alternative facilitation of their choice, and that transfer to another hospital is not a readily achievable alternative measure because of the legal, medical, and patient care implications involved in finding another hospital and doctor capable of meeting a particular patient's medical needs.

In reply to these arguments, plaintiff again argued that defendants' "alternative method" of classifying all disabled patients as "bed-bound" or "confined to bed" — and thus providing them with a [*31] bed pan and a bed bath instead of a usable toilet and shower–is "the very definition of disability–based discrimination.n8 In support of the argument that Kaiser classifies all disabled patients as "bed–bound," plaintiff cited to PP 21 and 22 in the declaration of Bettie Coles in support of defendants' motion for summary judgment. In P 21, Coles stated that she questioned the wisdom of incurring costs of roughly $611,000 per accessible patient bathroom to create such accessible bathrooms, in light of the fact that Kaiser Oakland is scheduled to be closed by 2012. In P 22, Coles stated as

follows:

n8 Plaintiff asserts that "forcing plaintiff to use a bed pan, commode or bed bath" is not an "alternative method" of providing access, but is itself disability–based discrimination.

Plaintiffs complaint is the first complaint I am aware of with reference to the lack of accessible patient rooms and bathrooms and showers for those rooms for wheelchair patients. I am informed and believe that there have been no [*32] others. Until this case, the personal hygiene needs of wheelchair patients were satisfied through a variety of alternative options that have been used in the care of bed–bound patients for many years, namely bed baths, and the use of bedside commodes and/or bedpans. Pursuant to the Consent Decree in this case, since December 9, 2005, all wheelchair bound patients have been assessed with the understanding that we will transfer them to another Kaiser facility, if the lack of an accessible patient room is problematic for them.

Coles Decl. in Support of Defs' Motion for Summary Judgment, at P 22. Thus, rather than speaking about an "alternative method" of "classifying patients," Coles simply stated that the needs of all wheelchair patients at Kaiser Oakland are assessed individually.

Plaintiff then argued that while Coles claimed "bed baths are a standard medical means of washing numerous patients," she made no claim that there was any medical evaluation of plaintiff Mannick's medical needs to determine whether he should be one of the numerous patients confined to bed. In support, plaintiff cited to an excerpt from the Coles deposition supposedly attached as Exhibit B to the Levine [*33] declaration in opposition to plaintiff's motion. There is an excerpt from the Coles deposition that is Exhibit C to the Levine declaration, but the cited pages are not included in that excerpt. In short, plaintiff provided no evidence to support the claim that defendants' "alternative methods" constitute a "discriminatory policy."

*(b) ADA reasonable modification claim*

In support of his ADA "reasonable modification" claim, plaintiff argued that defendants discriminated against him by failing to institute a policy of transferring patients to a different hospital with an accessible patient

room when they were unable to provide an accessible patient room at Kaiser Oakland. He asserted that defendants had a policy of transferring Ob/Gyn and pediatric patients to nearby hospitals because Kaiser did not have appropriate facilities for those categories of patients in 2003, and argued that this "policy" demonstrated that defendants' failure to transfer plaintiff to an accessible hospital was a violation of the ADA. Plaintiff also asserted that transferring disabled patients to accessible hospital facilities was a "reasonable modification" as a matter of law and should have been offered [*34] to plaintiff when he complained about the lack of access in his patient room. He claimed that failing to modify policies for disabled patients, while transferring other categories of patients, demonstrated that defendants discriminated against him because of his disability.

In opposition, defendants provided evidence that Kaiser had no policy of "transferring" Ob/Gyn patients or pediatric patients in 2003, and that the movement of the services for these categories of patients to other facilities was part of Kaiser's preparation for the closure of the Kaiser Oakland Hospital. Defendants also noted that no patient, including plaintiff, had ever requested a transfer to another hospital, and provided evidence that transfer to another hospital was not a "reasonable modification," based on the practical difficulties of, e.g., locating a hospital with available patient beds as well as the ability to provide the particular medical treatment and care needed by the individual patient, and obtaining the consent of the proposed transferee hospital to move the patient to that hospital.

Although defendants did not specifically refer to this argument as involving a subsection (ii) "reasonable [*35] modification claim," and did not argue the affirmative defense (that the proposed modification would fundamentally alter the nature of the goods, services, etc.), they did, in essence, point out that plaintiff had not provided the evidence required to support a subsection (ii) claim because he did not show that he ever requested the proposed modification (transfer) or that the proposed modification was reasonable. They also provided evidence showing that the proposed modification (transfer) was in fact not reasonable.

In his reply, plaintiff made two arguments. First, he asserted that defendants had failed to provide admissible evidence that transferring plaintiff to an accessible facility would have "fundamentally altered" the nature of Kaiser's hospital services in January 2003. He cited the Ninth Circuit's decision in Lentini, for the proposition that whether an accommodation fundamentally alters the nature of a service or facility is an affirmative defense that defendants must raise and prove with admissible evidence," Lentini, 370 F.3d at 845; and cited Colorado Cross for the proposition that "[o]nce the plaintiff meets the burden of showing that an [*36] accommodation is reasonable in the general sense, the court held that the defendant must make the requested accommodation unless defendant pleads and meets its burden of proving that the requested accommodation would fundamentally alter the nature of the public accommodation," Colorado Cross, 264 F.3d at 1003.

It is true that Lentini states on the cited page that "[w]hether an accommodation fundamentally alters a service or facility is an affirmative defense." In making this statement, Lentini cites to Johnson and Colorado Cross. However, it is misleading to say that Colorado Cross holds that a plaintiff has only to meet the burden of showing that an accommodation is reasonable "in the general sense" in order to shift the burden of persuasion to the defendant to show "fundamental alteration."

Colorado Cross first states that § 12182(b)(2)(A)(ii) and (iii) "provide an affirmative defense for an entity to demonstrate that compliance would fundamentally alter the nature of the goods and services provided," and that the defendant "[c]onsequently . . . bears the burden of persuasion regarding fundamental alteration and undue burden." Colorado Cross, 264 F.3d at 1003. [*37] Colorado Cross cites Johnson, 116 F.3d at 1059, in support of that proposition, and also cites Johnson during the remainder of the discussion:

> [Johnson] held that the plaintiff bears the burden of proving that a modification was requested and that the requested modification was reasonable. Once the plaintiff meets the burden of showing that a modification is reasonable in the general sense, [Johnson] held the defendant must make the requested modification unless the defendant pleads and meets its burden of proving that the requested accommodation would fundamentally alter the nature of the public accommodation. The plaintiff bears the ultimate burden of proof on the issue of reasonableness, while the defendant bears the burden of proving the requested accommodation would fundamentally alter the nature of the public accommodation.

Colorado Cross, 264 F.3d at 1004 (citing Johnson, 116 F.3d at 1059) (emphasis added). In turn, Johnson explains "evidence that the requested modification is reasonable in the general sense" as meaning "evidence that the requested modification is reasonable in [*38] the run of cases." Johnson, 116 F.3d at 1059.

2006 U.S. Dist. LEXIS 57173, *38

Plaintiff did not meet his burden because he did not show that he requested a transfer as a reasonable modification, and also because he did not provide evidence showing that a transfer was a reasonable modification. Moreover, while defendants did not provide evidence showing that modifying hospital policies or procedures to allow transfer of disabled patients would "fundamentally alter" the nature of the goods or services provided, they were not required to do so, because plaintiff had not met his burden and the burden of persuasion on fundamental alteration had therefore not shifted to the defendants. n9 Moreover, defendants provided evidence suggesting that transferring patients is not a reasonable modification.

> n9 Defendants did plead, as the seventh affirmative defense, that the complaint "seeks accommodations and modifications of the facility that are excused by law because they are not readily achievable, would fundamentally alter the nature of the goods and services offered and/or would impose an undue hardship." Answer at 7. They also pled, as the fourteenth affirmative defense, that the complaint "fails as a matter of law because [p]laintiff failed to give [d]efendants notice of the need for accommodation or assistance." Answer at 8.

[*39]

Plaintiff's second argument in the reply is (as with the barrier removal claim) that the consent decree provides evidence that offering disabled patients the option of transferring to an accessible hospital was a "feasible" modification of policies and practices. However, apart from the fact that the consent decree cannot be used as evidence of liability, it is irrelevant whether transferring patients was "feasible" if plaintiff cannot show that he ever requested a transfer to another facility. Moreover, a "feasible" modification is not necessarily "reasonable."

*(c) paths-of-travel claim*

In support of his paths-of-travel claim, plaintiff argued that he was denied full and equal access because defendants made millions of dollars' worth of alterations to Kaiser Oakland and its parking structures, but failed to provide accessible parking, entrances, and paths of travel.

In opposition, defendants argued that the alterations were not sufficiently extensive and were not in a location that triggered the obligation to make external paths of travel fully accessible.

In reply, plaintiff reiterated that defendants violated the ADA and Title 24 by altering the hospital and related facilities [*40] without making paths-of-travel upgrades. Specifically, he asserted that Kaiser had renovated the maternity ward in 1993, which required the installation of a fully accessible roll-in shower, but had failed to provide such a shower. Plaintiff also claimed that defendants violated the ADA and Title 24 standards for paths-of-travel alterations following alterations at the hospital and parking lots.

C. The Order on the Cross-Motions for Summary Judgment

The order on the parties' cross-motions for summary judgment, filed June 9, 2006, states, with regard to plaintiffs motion,

> Plaintiff seeks summary judgment on his claim that Kaiser discriminated against him by failing to provide him with an accessible patient room, by offering him a bed bath and a portable commode instead of a fully accessible bathroom, and by failing to transfer him to another facility; and his claim that Kaiser violated the ADA and state law by failing to provide at least one fully accessible patient room. This motion is DENIED, because the defendants' motion on the same issues has been granted.

> Plaintiff also contends that Kaiser violated the ADA and state law by failing to provide an accessible roll-in [*41] shower in the remodeled bathroom on the 4th floor maternity ward, and by failing to remove architectural barriers, in connection with parking, building entrances, and paths of travel. Plaintiff claims that Kaiser made millions of dollars' worth of renovations and alterations to Kaiser Oakland between 1992 and 2002, but failed to provide accessible parking, entrances, or paths of travel. . . .

> The court finds that plaintiff's motion with regard to the 4th floor shower and with regard to barrier removal in parking areas and paths of travel must be DENIED.

Order at 19, 22.

With regard to defendants' motion, the court granted summary judgment on the barrier removal claim, solely with regard to the issue of the accessible shower and toilet, based on plaintiffs failure to meet his burden of providing evidence that the construction of an accessible patient bathroom was readily achievable, and also noting that defendants had provided evidence that the construction of an accessible patient room was not readily achievable.

Order at 16–17. The court specifically noted that plaintiff discussed only the factor of Kaiser's overall financial resources, but failed to provide evidence [*42] with regard to any of the other relevant factors — such as the expense and difficulty of removing the barriers, and the impact of barrier removal on Kaiser's ability to provide medical care to its patients. Order at 17. The court cited Colorado Cross for the proposition that in view of plaintiff's failure to meet his burden of coming forward with evidence to show that creating an accessible patient room was readily achievable, defendants were under no obligation to prove the affirmative defense that barrier removal was not readily achievable. Order at 18.

The court also found that Kaiser had provided an "alternative method" (bedbath and portable commode), and that plaintiff had not established that this alternative was discriminatory. The court noted that defendants had provided evidence showing that all patients were treated equally, in that each patient was evaluated based on his or her mobility, and that plaintiff had been categorized a "total assist" patient with respect to hygiene needs and a "high injury risk" because of his limited mobility. Order at 18.

Finally, the court found that Kaiser's failure to transfer plaintiff to another facility was not discriminatory, because [*43] there was no evidence that plaintiff had requested a transfer or that Kaiser had a "policy" of transferring any other group of patients, but not disabled patients; and because defendants had provided evidence showing that such transfers, in general, are difficult. Order at 18. While the order does not specifically refer to plaintiff's subsection (ii) claim of failure to make reasonable modification, the order discusses the parties' arguments; describes the claim as a claim of "discrimination" (as it is defined in the statute); and addresses the required elements (a showing that the plaintiff requested the modification, and a showing that the requested modification was reasonable).

Thus, to the extent that the June 9, 2006, order was not clear, the court granted summary judgment on plaintiff's subsection (ii) and (v) claims to the extent that they relate to the lack of an accessible patient bathroom.

D. Motion for Reconsideration

1. Legal Standard

"A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling [*44] law." *Sissoko v. Rocha, 440 F.3d 1145, 1153–54 (9th Cir. 2006).* A party seeking reconsid-

eration must must show that the evidence was discovered after the dispositive order, that the evidence could not be discovered earlier through due diligence, and that the newly discovered evidence is of such a magnitude that had the court known of it earlier, the outcome would likely have been different. See *Dixon v. Wallowa County, 336 F.3d 1013, 1022 (9th Cir. 2003).*

Under Civil *Local Rule 7–9,* "[n]o party may notice a motion for reconsideration without first obtaining leave of Court to file the motion." Civ. L.R. 7–9(a).

A party seeking leave to file a motion for reconsideration must specifically show:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law [*45] occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civ. L.R. 7–9(b).

In addition, "[n]o motion for leave to file a motion for reconsideration may repeat any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered." Civ. L.R. 7–9(c).

2. Plaintiff's Motion

Plaintiff seeks, pursuant to *Federal Rule of Civil Procedure 54(b)* n10 and Civil *Local Rule 7-9,* reconsideration of the June 9, 2006, order granting defendants' motion for summary judgment. The request for leave to file the motion is GRANTED, and the court has considered all the arguments raised by plaintiff. n11 For the reasons stated below, the court DENIES the motion.

> n10 Plaintiff's reason for citing to *Rule 54(b)* is not clear. A district court may reconsider its grant of summary judgment under either *Federal Rule of Civil Procedure 59(e)* (motion to alter or amend a

judgment) or *Rule 60(b)* (relief from judgment), as appropriate. *School Dist. No. 1J, Multnomah County, Or. v. AC&S, Inc., 5 F.3d 1255, 1262 (9th Cir. 1993).*

[*46]

n11 However, the court has not considered any argument appearing in the footnotes to plaintiff's briefs, as the footnotes are in a font that is less than standard 12-point type and therefore in violation of this court's local rules. See Civil Local Rule 3-4(c)(2). All such footnotes are stricken.

Plaintiff argues that the court should reconsider its ruling, based on the following seven grounds.

*(a) summary "judgment" vs. summary "adjudication"*

First, plaintiff argues that the court improperly granted summary judgment in favor of defendants, when in fact the order merely summarily adjudicated the two issues upon which defendants moved. This argument is without merit. As the court noted at the July 13, 2006, pretrial conference, the Federal Rules of Civil Procedure (unlike the California Code of Civil Procedure) do not make a distinction between "summary judgment" and "summary adjudication." Indeed, *Federal Rule of Civil Procedure 56* provides that "[a] party . . . may move . . . for a summary judgment in the party's favor upon all [claims] or [*47] any part thereof." *Fed. R. Civ. P. 56(a), (b).* Both defendants' motion and the June 9, 2006, order plainly indicated that defendants were not seeking summary judgment on all claims in the case.

In addition, it is not true, as plaintiff asserts, that the only state law claim as to which defendants sought summary judgment was whether Kaiser per se violated state law when it violated the ADA. As noted above, defendants clearly stated in their moving papers that the question whether Kaiser had a legal obligation to provide plaintiff with an accessible bathroom and shower in his patient room in Kaiser Oakland

involves an analysis of (1) whether there was any "trigger" (i.e., any construction in the Oakland Hospital) prior to [p]laintiff's hospital stay in January 2003 that, under the [ADA] and California disability access laws, obligated Kaiser to make bathrooms and showers in its Oakland Hospital patient rooms wheelchair accessible: and (2) whether the barrier removal required to provide [p]laintiff with those accessible facilities was "readily achievable."

Defendants' Motion at 1.

*(b) application of legal standard*

Second, [*48] plaintiff contends that the court applied an incorrect legal standard in requiring plaintiff to show, first, that there was a "triggering alteration," and second, that renovation was readily achievable. Plaintiff contends that the ADA requires either a showing that the proposed construction is readily achievable (citing *42 U.S.C. § 12182(b)(2)(A)(iv)*) n12 or that there was a triggering alteration requiring compliance as though it were new construction (citing *28 C.F.R. § 36.402*). Plaintiff claims that the court improperly required plaintiff to meet both standards in a "two-step analysis."

n12 It appears that the intended reference is to *§ 12182(b)(2)(A)(iv).*

In the complaint, plaintiff alleged discrimination under the ADA, and also asserted claims under the California Disabled Persons Act ("CDPA"), *California Civil Code § 54, et seq.* In 1994, the CDPA was amended to provide that a violation of the ADA constitutes a violation of their provisions. [*49] *Cal. Civ. Code § 54.1(d).* Thus, a plaintiff whose rights are violated under the ADA may now seek damages under the California statutes. See *Hankins v. El Torito Restaurants, Inc., 63 Cal. App. 4th 510, 74 Cal. Rptr. 2d 684 (1998).*

Under the CDPA, a plaintiff can show either that the ADA was violated, or that the facility in question does not comply with the California Building Code requirements for disabled access ("Title 24"). *Cal. Civ. Code § 54*; Cal. Health & Safety Code *§ 19955*; Cal. Code Regs Title 24 § 1134B.1, .2 Title 24 requires compliance with the disabled access standards only if a public accommodation is newly constructed or structurally altered. Buildings existing at the time of Title 24's enactment in 1982 are exempt from compliance unless "alterations, structural repairs or additions are made to such buildings or facilities." Cal. Code Regs Title 24 § 1134B.1, 2.

The ADA imposes an affirmative duty on all existing facilities to remove architectural barriers if their removal is readily achievable, *42 U.S.C § 12182(b)(2)(A)(iv)*, and also requires that newly constructed [*50] buildings and buildings that are "altered . . . in a manner that affects or could affect the usability of the facility or a part thereof," to be made accessible "to the maximum extent feasible," *42 U.S.C. § 12183(a).* The regulations applicable to "newly constructed" and "altered" are at 28 C.F.R. part 36, subpart D. *Section 36.402* contains regulations applicable to "alterations."

2006 U.S. Dist. LEXIS 57173, *50

As described in detail above, plaintiff argued in his motion that removal of some barriers was "presumptively readily achievable," and defendants were liable as a matter of law for failing to remove those barriers. Plaintiff asserted further, based on defendants' overall financial resources and net income, that the construction of at least one accessible patient bathroom was "readily achievable," and that defendants' failure to construct at least one such accessible bathroom was a violation of Title III as a matter of law. Plaintiff also argued that defendants violated the ADA by failing to modify their policies and procedures to provide plaintiff with accessible services by transferring him to another hospital. Finally, plaintiff argued that defendants made "millions of dollars of [*51] renovations, alterations, and additions" to Kaiser Oakland between 1992 and 2002, which triggered the requirement of accessible paths of travel.

Defendants, by contrast, argued in their motion that Kaiser Oakland is a preexisting public accommodation, that the patient rooms on the medical-surgical floors have never been altered, and that the "new construction" requirements of the ADA and Title 24 have therefore never been triggered with regard to the patient rooms. Defendants also noted that plaintiff bears the burden of showing that barrier removal is readily achievable under the ADA, and asserted that the evidence showed that it was not readily achievable to create accessible toilets and showers in the patient rooms. While defendants did not provide evidence as to every factor mentioned in *42 U.S.C. § 12181(9)(A)–(D)*, they did provide evidence showing the cost to construct one accessible patient bathroom, the extensive reconstruction required to construct such accessible bathrooms, and the effect of such construction upon hospital operations and patient services, and also asserted that spending millions of dollars to construct accessible bathrooms in a facility [*52] that was slated to be torn down in six years would not provide Kaiser's patient community with the most beneficial use of resources.

Based both on the parties' arguments and on the evidence presented in support of those arguments, the court found that there had been no construction in or alteration of any patient room that would trigger the requirement to construct an accessible patient bathroom. The court also found that plaintiff had not met his burden of showing that construction of accessible patient bathrooms in the existing Kaiser Oakland facility was "readily achievable." This is not a "two-step analysis."

*(c) evidence of cost of constructing accessible bathroom*

Third, plaintiff asserts that the court improperly found that the cost of constructing one accessible patient room was in excess of $600,000, and consequently not readily

achievable. Plaintiff claims that the court failed to consider conflicting evidence provided by defendants that the cost of renovating a patient room to make it accessible was less than $5,000; failed to consider the analysis of plaintiff's expert Robert Johnson which utilized a 2004 cost estimate of $235,000; and failed to weigh the estimated [*53] cost of constructing one accessible patient room against the 1990–2002 financial resources of the parent company. Plaintiff argues that the presence of the conflicting evidence creates a triable issue of fact.

The short answer to this argument is that the $600,000 figure was the actual cost of constructing an accessible patient bathroom in 2005–2006, while the $5,000 figure and the $235,000 figures were estimates only, for 1993 and 2004, respectively. Based in part on this evidence of what it actually cost defendants to construct an accessible bathroom pursuant to the consent decree, the court determined that the construction was not readily achievable.

Moreover, the court has reviewed plaintiff's memoranda of points and authorities in opposition to defendants' motion and in support of his own motion, and finds no reference to the $5,000 per patient room estimate, which appears in the Kaiser's 1993 Favro Survey of ADA barriers, n13 nor any reference to the $235,000 estimate by plaintiff's own expert. n14

n13 This is the "Title III Public Accommodation Survey Report" prepared for Kaiser by Favro/McLaughlin/HKS in 1993. A portion of the Favro Study was attached as an exhibit to the declaration of Judy Rowe in support of defendants' motion.

[*54]

n14 The $235,000 cost estimate is referenced in P 4 of the Johnson declaration, which attached (as Exhibit 3) a 2004 cost estimate to "build an ADA-compliant patient toilet room," with no mention whatsoever of a roll-in shower. There is no showing that the 2004 estimate covered the same work subsequently performed in the 2005–2006 remodel. Moreover, Johnson is not qualified as a construction expert, and is not competent to provide a cost estimate for the construction of an accessible patient bathroom. (According to Johnson's declaration, the 2004 cost estimate was provided to plaintiff's counsel by defendants.) In any event, plaintiffs papers in support of his motion for summary judgment and in opposition to defendants' motion do not cite to P 4 of the Johnson declaration, or to Exhibit 3 thereto.

On a motion for summary judgment, "the adverse party's response, by affidavits or otherwise . . ., must set forth specific facts showing that there is a genuine issue for trial. *Fed. R. Civ. P. 56(e)*. The motion must be granted if the materials "on file . . . [*55] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. Taken together, these provisions mean that "whatever establishes a genuine issue of fact must both be in the district court file and set forth in the response." See *Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1029 (9th Cir. 2001)*. When a nonmoving party fails to present an adequate opposition to a summary judgment motion, the court is not required to "search and sift" the entire factual record for evidence that demonstrates the existence of a genuine issue of fact. *Id. at 1029-31*; see also *Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996)* (court need not "scour the record in search of a genuine issue of triable fact," but rather must "rely on the non-moving party to identify with reasonable particularity the evidence that precludes summary judgment").

Each side in this case filed a mountain of paper in support of its own motion and in opposition to the other side's motion, including numerous declarations. The exhibits to [*56] those declarations included discovery responses and deposition transcripts, many with no indication as to their significance to the arguments; architectural drawings and diagrams, including some with print so fine as to be illegible to an ordinary person; and charts and other summations of hundreds of construction projects, replete with obscure references and often lacking any comprehensible explanation of their relevance to the claims in the case. The court did not consider, and is not required to consider, evidence that is buried in a two-foot-tall stack of paper, where the parties do not specifically direct the court's attention to the exact page where the evidence is to be found and do not explain the significance of the evidence in their memoranda of points and authorities.

Finally, it appears that plaintiff is attempting to use this motion for reconsideration to re-argue his opposition to defendants' motion for summary judgment. Civil *Local Rule 7-9* provides that "[n]o motion for reconsideration may repeat any oral or written argument made by the applying party in support of or in opposition to the interlocutory order under which the party now seeks to have reconsidered." *Civ. L. R. 7-9(c)* [*57] . The fact that plaintiff now cites to different evidence in support of that argument does not make it a new argument.

*(d) evidence of defendants' financial resources*

Fourth, plaintiff contends that the court erred in finding that plaintiff had provided evidence of defendants' gross income, when in fact plaintiff provided evidence of net income; and erred in its analysis of the effect of defendants' overall financial resources. In particular, plaintiff asserts that the court failed to properly evaluate the evidence presented by plaintiff's expert Robert Johnson.

The court found that plaintiff had failed to meet his burden of showing that the creation of an accessible patient room was "readily achievable" because he had addressed only one of the factors set forth at *42 U.S.C. § 12181(9)*–the overall financial resources of the entity — and had failed to provide any evidence as to any other factors. Referring specifically to the "revenue" figures cited by Johnson, and repeatedly cited by plaintiff in his memoranda of points and authorities, the court stated, "Moreover, the revenue figure cited by plaintiff is not relevant for an analysis under the [*58] 'readily achievable' standard because it is a total gross figure and does not account for expenses such as employee salaries, capital expenditures, and hospital costs." Order at 17. It is true that plaintiff cited figures for "net income," based on Johnson's analysis. But it is also true that plaintiff cited the irrelevant gross "revenue" as a basis for arguing that construction of an accessible patient bathroom was "readily achievable."

Plaintiff also argues that defendants did not provide evidence sufficient for the court to determine that the construction of an accessible patient bathroom was not "readily achievable." The initial burden is on plaintiff, however, and defendants in their motion for summary judgment were required only to point out the lack of evidence supporting plaintiff's case. However, as the order makes clear, defendants provided evidence showing that removing architectural barriers by constructing an accessible patient bathroom was not "readily achievable" because it was not, as a practical matter, easily accomplished; because it could not be achieved without significant cost and economic impact; and because it could not be carried out without significantly [*59] affecting hospital operations and patient services.

*(e) testimony of Marcus Hibser*

Fifth, plaintiff argues that newly discovered evidence (testimony of defendants' expert Marcus Hibser, whom plaintiff deposed after the hearing on the cross-motions for summary judgment) shows that certain alternations in Kaiser Oakland may have triggered Kaiser's obligation to provide a patient room with an accessible toilet and shower. Plaintiff asserts that this new evidence creates a disputed material fact that must be submitted to the jury.

Defendants originally designated Hibser as an expert regarding whether various construction projects at Kaiser Oakland "triggered" a requirement to construct accessible facilities. Hibser reviewed approximately 155 projects,

2006 U.S. Dist. LEXIS 57173, *59

and stated in his Rule 26 expert report that "[t]here were no projects completed in the past which would have triggered ADA or Title 24 upgrades to toilets or showers in the licensed med–surg patient rooms (floors 6–10)." In his deposition, Hibser was questioned regarding certain construction documents apparently relating to seismic work performed at Kaiser Oakland — on floors 6–10 and in the ICU, among other locations.

In the [*60] deposition excerpt provided by plaintiff, Hibser testified regarding seismic anchorage of existing wall–mounted light fixtures in patient rooms, which he stated likely involved "removal of the fixture and installation, and reinstallation of that same fixture with larger anchors." He said it was "unknown" whether seismic upgrades on such a small scale would have triggered a requirement to construct fully accessible patient bathrooms, and also noted that there was no specific area of alteration because the work was spread throughout the hospital.

With the motion for reconsideration, plaintiff submits a declaration from his expert Peter Margen, in which Margen asserts that he "was not aware of the seismic work at the Oakland Hospital" prior to Hibser's deposition, and that he "would have wanted information on these projects in order to evaluate whether any of them triggered an accessibility upgrade requirements for the hospital, including accessible toilets and showers in the patient rooms." Decl. of Peter Margen, P 4. Margen also attaches a copy of a 1995 opinion by the Attorney General of California, stating that seismic strengthening of an unreinforced masonry building required by [*61] local ordinance constitutes a "building alteration, structural repair or addition" for purposes of providing access to the building for disabled persons. n15 In the new declaration, Margen asserts that in his opinion, "the seismic work identified by Hibser would trigger accessibility upgrade requirements, including accessible toilets and showers in patient rooms." Margen Decl. P 5.

> n15 Attached to the opinion is a copy of a policy issued by the California Division of the State Architect, which states that the policy is applicable only to projects under the Division of the State Architect (state funded buildings and publicly–funded schools and community colleges). Plaintiff does not explain the relevance of either an opinion regarding seismic strengthening of unreinforced masonry buildings, or a policy that applies only to state–and publicly–funded buildings.

Plaintiff contends that the information regarding the seismic projects was not available and was not identified by Kaiser until after the hearing on the [*62] motions for

summary judgment, and that Margen was therefore not able to evaluate the projects before the hearing. Plaintiff also argues that because none of defendants' declarants, including Judy Rowe, Henry Scott, and Herb Clore, testified as to the seismic work, and because all of them stated that there had been no renovations or alterations to any patient room, the court should reconsider its ruling and should find that this "new evidence" creates a disputed issue of fact regarding whether the seismic work triggered accessibility upgrades.

In opposition, defendants argue that while it is true that the Hibser deposition was not taken until after the hearing on the motion, all the construction plans and documents upon which Hibser relied were produced in early April, almost three weeks before the cross–motions for summary judgment were filed, and were identified by specific Bates numbers in Hibser's Rule 26 report which was delivered to plaintiff on May 19, 2006. Defendants assert further that the timing of the receipt of the plans is irrelevant, in view of the court's ruling that Margen is not qualified to testify regarding whether any construction work at Kaiser Oakland triggered [*63] a requirement to comply with federal or state accessibility requirements.

Defendants also take issue with plaintiff's characterization of Hibser's testimony, arguing that while Hibser stated that the seismic work throughout the hospital would have triggered some paths–of–travel upgrades, he did not testify that it would have triggered a requirement to construct a patient bathroom with an accessible toilet and shower. Defendants contend that only alteration to the entire space occupied by a patient room would have obligated Kaiser to comply with "new construction" standards and bring the room up to full compliance with accessible toilet and shower facilities, and that there is no reference in the Hibser testimony to construction that would trigger patient bathroom modifications.

In reply, plaintiff argues that Hibser did not solely rely on construction documents in reaching his conclusions. He testified that he reviewed various projects and spoke with Kaiser personnel if he needed a clarification regarding a particular project in reaching his final conclusion as to whether it triggered accessibility requirements. Plaintiff claims that Hibser's reliance on other witnesses is what was [*64] not available to plaintiff and is what makes this testimony "new evidence."

Plaintiff also contends that seismic work inside any patient room would trigger obligations from the parking spaces through the patient room, which includes the bathroom. Plaintiff argues that Hibser's testimony establishes that there was work performed at Kaiser Oakland that may have triggered access obligations, and that based on the information provided to Margen, there is at a minimum

a question of fact as to whether this work triggered any accessibility requirements.

The court finds that the Hibser testimony does not constitute "newly discovered evidence" that with due diligence could not have been discovered prior to the hearing on the cross-motions for summary judgment. Plaintiff does not dispute that defendants had produced the plans and construction documents relating to the seismic projects before the parties filed their motions, and that Hibser had produced his expert report identifying specific documents by Bates numbers well before the hearing. Apparently conceding that the plans and construction documents cannot be considered "newly discovered," plaintiff raises a new argument in the reply — [*65] that it was Hibser's testimony regarding conversations he had with Kaiser employees that constituted the "newly discovered evidence."

In addition, plaintiff has not established that the asserted "new evidence" is of such a magnitude that the court would have ruled otherwise if it had been presented with the evidence. The only deposition testimony provided by plaintiff with regard to seismic upgrades in the patient rooms is an excerpt containing Hibser's responses to questions regarding the seismic anchorage of the mounted wall light fixtures. Plaintiff has not pointed to any specific evidence of a structural seismic upgrade in a patient room that would have triggered the obligation to construct an entire new bathroom with accessible toilet and shower.

*(f) testimony and declaration of Judy Rowe*

Sixth, plaintiff contends that the declaration of Judy Rowe, upon which the court relied in part for its conclusion that no "triggering alterations" occurred in Kaiser Oakland, is hearsay, based on deposition testimony by Rowe (after the hearing on the cross motions) that she did not make an independent determination as to whether any particular project triggered accessibility upgrades. [*66] Plaintiff asserts that because Rowe was not disclosed as an expert witness, she is not qualified to render an opinion as to whether any particular project triggered a further obligation on the part of Kaiser. Plaintiff also complains that defendants "unilaterally" moved Rowe's deposition to a date after the hearing on the cross-motions.

In opposition, defendants argue that Rowe's lack of expert qualifications does not constitute "newly discovered evidence" justifying reconsideration. Defendants also contend that Rowe did not reach any expert conclusions in her declaration — that Rowe, who is a licensed architect, simply stated that she had performed a review of plans to determine the location, not the legal effect, of construction projects within Kaiser Oakland, and that she explained that part of her job involves oversight of

project managers who monitor construction projects to determine whether the scope and location of the work triggers an obligation to modify a patient room. She did not state that she herself makes such determinations.

In reply, plaintiff asserts that he was limited in his ability to question Rowe by defendants, who have refused to produce her on issues other [*67] than the ones they think are relevant. Plaintiff also repeats his argument that Rowe's declaration should be discounted because she subsequently testified that she had not independently determined whether any project triggered Kaiser's obligation to provide an accessible toilet and shower in a patient room.

Plaintiff's argument is without merit. In the order, the court cited Rowe's statement that she had reviewed all plans dating back to the original hospital construction date of 1970, and had "verified that none of those plans involved construction, alteration, or repair of patient rooms on the medical-surgical floors." As a licensed architect, Rowe was qualified to make that assessment. She did not reach any conclusions regarding whether there had been work that "triggered" accessibility requirements. The reference to "triggering" was the court's language, not Rowe's.

*(g) declaration of Ed Denton*

Seventh, plaintiff argues that the court should not have relied on the declaration submitted by defendants' witness Ed Denton, because defendants failed to produce Denton for deposition, based on their determination that his opinions were no longer relevant in light of the court's [*68] ruling on defendants' motion for summary judgment. Plaintiff asserts that he was improperly deprived of the opportunity to question Denton about his declaration.

Defendants respond that Denton is no longer employed by or affiliated with Kaiser, and that they rescheduled the Denton deposition several times at plaintiff's request. Defendants claim that finally, at the 11th hour, plaintiff requested a stipulation from defendants to allow plaintiff to take the deposition long after the hearing on the parties' cross-motions, and after the filing of the motions in limine. Defendants contend that they advised plaintiff more than once that if plaintiff failed to depose Denton on May 17, 2006 (the last agreed-upon date, which had been confirmed between the parties and then reconfirmed), plaintiff would lose his right to take the deposition. Defendants argue that it is ridiculous for plaintiff to now claim that he was "unilaterally" prevented from deposing Denton. Defendants also assert that Denton's declaration was not central to any of the court's ruling in the June 9, 2006, order, and the court used the information in the declaration merely as background.

In reply, plaintiff asserts that [*69] the court cited to Denton's declaration for factual assertions that included the cost of barrier removal and the "priorities" established by Kaiser with regard to the removal of barriers. Plaintiff states that he noticed Denton's deposition for a date prior to the hearing on the cross-motions, and that the deposition "was rescheduled to a date after the summary adjudication hearings, on June 16, 2006." Plaintiff asserts, however, that defendants "failed to produce Mr. Denton on the grounds that they did not believe his testimony was relevant any longer." Plaintiff contends that because plaintiff was precluded from taking Denton's deposition, the court should not have relied on his declaration, and should reconsider its ruling.

Plaintiff's argument is without merit. Plaintiff's counsel states in his declaration, "Ed Denton was disclosed first as a factual witness, then later as an expert. His deposition was previously set for May 17, but later moved to June 16, 2006. I was notified by defense counsel that they were not going to produce him because, in light of the [c]ourt's [o]rder, . . . they were withdrawing him as an expert and did not believe his testimony was relevant any [*70] longer." Decl. of Gary Gwilliam P 8.

The declaration of defendants' counsel provides a more complete version of events, showing that defendants made every effort to accommodate the scheduling of depositions, including Denton's, and that it was plaintiff that cancelled the May 17, 2006 deposition. In other words, it was plaintiff that opted not to take Denton's deposition prior to the hearing on the cross-motions for summary judgment. Defendants unequivocally advised plaintiff that he would lose his right to depose Denton if he (plaintiff) refused to go forward with the deposition on May 17. The cut-off date for expert discovery was May 29, 2006.

Subsequently, on June 13, 2006, defendants' counsel advised plaintiffs counsel that, based on the court's June 9, 2006, order on the cross-motions for summary judgment, defendants were withdrawing their designation of Denton as an expert. Because the court cited to Denton's declaration in its discussion of Kaiser's response to the passage of the ADA and its implementation of a plan for ADA compliance, plaintiff now wants to depose Denton. However, defendants have withdrawn Denton as an expert, and need not make him available for deposition [*71] — particularly in view of the fact that plaintiff chose not to take the deposition as previously scheduled. Plaintiff has not provided any support for its claim that the court should disregard Denton's declaration.

Finally, and most importantly, plaintiff has not established that this dispute regarding the Denton deposition falls under one of the grounds for seeking reconsidera-

tion. Plaintiff does not explain how this dispute involves newly discovered evidence, clear error, or an intervening change in the controlling law.

E. Defendants' Motion in Limine No. 1

Defendants' motion in limine No. 1 seeks to preclude evidence at trial as to matters that have been summarily adjudicated. The motion is GRANTED.

To the extent that defendants' intent is to assert that liability has been adjudicated with regard to claims involving the patient room, the court has already indicated, at the final pretrial conference, that the only issues remaining involve the door hardware and the Hoyer lift. In particular, plaintiff may not present evidence regarding the catheter accident, his efforts to take a shower, or his experiences in connection with the 4th floor shower. (As indicated in the order [*72] on the cross-motions for summary judgment, liability has not been adjudicated with regard to issues of accessible parking and paths of travel.)

Plaintiff has yet to provide a clear statement of what claims he believes remain in the case. In his original trial brief, filed June 13, 2006, plaintiff argued that the only issue submitted in defendants' motion for summary judgment was whether it was readily achievable for defendants to provide one patient room that had an accessible toilet and shower. Plaintiff asserted that numerous issues remain to be litigated, including "issues of policy under Civil Code *Section 54.1*." Plaintiff argued that

> [d]efendants have numerous policies which violate the California Civil Code. For instance, [d]efendants have admitted that they have a policy of evaluating the medical condition of hospital patients and, on the basis of a patient's medical condition, determining which patients should be confined to bed for medical reasons and required to submit to bed baths and to use bed pans instead of the in-room toilets and showers.

Although identified as one of "numerous policies" that violate the California Civil Code, this allegedly discriminatory [*73] policy with regard to medical evaluation is the only such policy identified by plaintiff in this trial brief. n16 Plaintiff argued that while this policy may not be discriminatory as applied to non-disabled patients, it is discriminatory as applied to disabled patients because "no matter the medical condition of a disabled patient, he or she is still classified as 'bed bound,' and regardless of his or her medical condition is required to submit to the use of bed baths and bed pans instead of using the in-room shower and toilet."

n16 The only other reference to "policies" in the trial brief is in the statement, "Many of [defendants'] policies of failing to provide accessible facilities violate these code sections [referring to Civil Code § 54.1], as explained through case law. This statement is followed in the brief by a general discussion of accessible parking.

Citing Hankins v. El Torito, plaintiff argued that a discriminatory policy may violate Civil Code § 51 and 54.1 without any violation of building [*74] standards. In other words, it is not necessary that there be a finding of a structural violation of access standards, if the defendant maintains a policy "unrelated to any structural impediment, which results in the denial of full and equal access by a disabled individual to a public accommodation." Hankins, 63 Cal. App. 4th at 522–23.

Apart from this single "policy" issue, the only other issues plaintiff identified in the original trial brief as unresolved were those involving the door hardware, the Hoyer lift, and the parking and paths of travel.

More recently, in a "supplemental" trial brief, filed July 11, 2006, n17 plaintiff seeks to clarify the "multiple remaining issues properly pled in the [c]omplaint and not determined by the Court's limited summary adjudication ruling in favor of defendants on the sole issue of Kaiser's liability to have provided an accessible toilet and shower in plaintiff's patient room."

n17 The "supplemental" brief was untimely, and filed without leave of court.

[*75]

Plaintiff first asserts that "all issues" remain for trial except the patient toilet room barrier removal issue upon which the court granted summary judgment for defendants. Plaintiff reiterates that "several major bases for liability" were not addressed by either of the parties' motions — including "the major policy issue of whether the manner in which John Mannick's needs as a disabled persons were 'accommodated' during his week of hospitalization denied him 'full and equal access' under state law and/or constituted 'policy' discrimination under the ADA." Plaintiff claims that these "policy" issues are "at the heart of plaintiff's case;" were "properly pled in the [c]omplaint to allege independent obligations under both state and federal law as to how a disabled patient must be treated and his disabilities accommodated;" and were supported during the summary judgment motion litigation by, among other things, the plaintiff's own declaration.

In support of this argument, plaintiff cites to the alle-

gations that Kaiser discriminated against him by failing to make "reasonable modifications in policies, practices, or procedures when such modifications were necessary to afford [*76] such goods, services, facilities . . . or accommodations to individuals with disabilities." Cplt P 29 (citing 42 U.S.C. § 12182(b)(2)(A)(ii)–the subsection (ii) "reasonable modification" claim addressed at length above, in the discussion of the parties' cross–motions for summary judgment). Plaintiff claims that these "policies and practices" issues alone entitle him to present his story to a jury.

However, as indicated above, there is no subsection (ii) claim remaining with regard to the patient bathroom, because plaintiff did not meet his burden of showing that he requested a modification or that the proposed modification was reasonable. Although defendants did not clearly identify the reasonable modification issue as a subsection (ii) claim, they did identify it as a claim of discrimination, and did provide evidence relating to the required elements of the claim. And while the order also did not identify it as a subsection (ii) issue, it was clearly identified as a "discrimination" claim.

Plaintiff also claims that the facts of the "policies and practices" as actually applied to the needs of a disabled person "may show a violation of one of the other subsections [*77] defining 'Discrimination' under the ADA." In the complaint, plaintiff alleged, without factual specificity, that defendants had violated subsections (ii), (iii), (iv), and (v) of 42 U.S.C. § 12182(b)(2)(A). However, as detailed above in the discussion of the cross–motion and the motion for reconsideration, the court also granted summary judgment on the claims under subsections (iv) and (v), in addition to granting summary judgment on the subsection (ii) claim. n18

n18 Neither party referred to subsection (iii) in the briefing on the cross–motions. Of the issues remaining in the case, only the claim involving the Hoyer lift appears to fall under subsection (iii). Plaintiff suggests that the claims involving door hardware, width of doorways, and lack of accessible roll–in shower also assert violations of subsection (iii). As pled in the complaint, these are architectural barrier claims, not claims of failure to provide auxiliary aids and services.

Nor does plaintiff provide any authority [*78] for this new theory that a plaintiff whose ADA Title III discrimination claims have been eliminated from the case in summary judgment can revive those claims under the guise of a claim of "policies, practices, and procedures" issues relating to whether the plaintiff was treated in a discrim-

inatory manner — particularly where the complaint contains not a hint of such "policies and practices" claims. The court also notes that despite having had the opportunity to file numerous briefs in this case, plaintiff remains unable to articulate exactly what these discriminatory "policies and practices" are.

As explained above, in the discussion of the parties' cross-motions, plaintiff provided no evidence to support his assertion that Kaiser had a "policy" or a "practice" of categorically classifying all disabled patients as "bed-bound," without regard for their true medical or physical condition, while defendants provided evidence showing that Kaiser had a practice of medically evaluating each patient admitted to the hospital. As the court found in the June 9, 2006, order, plaintiff was categorized, based on the assessment of his mobility, as a "total assist" patient with regard to hygiene [*79] needs, and a "high injury risk" because of his limited mobility. Plaintiff neither alleged any other discriminatory "policy," nor provided evidence of such a policy.

Finally, plaintiff contends that the "policy" issue of Kaiser's failure to provide him with accommodations (including accessible toilet and shower) are still before the court under Civil Code § 54.1. Plaintiff relies entirely on Hankins v. El Torito to support this argument. However, the facts in *Hankins* are distinguishable.

In Hankins, the defendant restaurant had a public restroom that was inaccessible to disabled customers because it was located on the second floor, up a flight of stairs. The restaurant was as also equipped with an accessible employee restroom on the first floor, and was therefore not in violation of disability access requirements. Nevertheless, the restaurant refused to allow the disabled plaintiff to use the accessible employee restroom. The court found that although the restaurant was equipped with an accessible restroom, it had nonetheless violated Civil Code § 54.1 by imposing a "policy" that the accessible restroom could be used by restaurant employees only, and that restaurant [*80] customers could use only the inaccessible restroom.

In the present case, Kaiser Oakland had no accessible bathroom in any patient room on any of the medical-surgical floors. Plaintiff has made no claim that Kaiser had accessible facilities available, but had a "policy" of denying disabled patients access to those facilities. In the words of the Hankins court, this is not a case involving a policy "unrelated to any structural impediment, which results in the denial of full and equal access." *Hankins, 63 Cal. App. 4th at 522-23*.

Having found that there is no viable ADA barrier removal claim or claim of failure to make reasonable mod-ifications with regard to the patient toilet and shower, the court need not consider the exact same claims disguised as a claim of discriminatory "policy."

F. Plaintiff's Objections to Ruling on Defendants' *Rule 37(c)* Motion

On June 23, 2006, Magistrate Judge Spero heard arguments on three discovery-related motions. In one of these disputes, defendants sought an order pursuant to *Federal Rule of Civil Procedure 37(c)* to exclude from trial any testimony relating to the supplemental reports [*81] prepared by plaintiff's experts Dr. Rosabel Young and Robert Johnson, on the ground that the supplemental reports were untimely. At the hearing, Judge Spero ruled from the bench, ordering that Young and Johnson could testify only as to opinions contained in their earlier May 19, 2006, Rule 26 disclosures. Also on June 23, 2006, Judge Spero issued a written order summarizing his rulings with regard to the three motions heard on that date. The order was e-filed, entered, and electronically served on the parties on June 23, 2006.

Eleven court days later, on July 11, 2006, plaintiff filed a "notice of intent to file objections" to Judge Spero's discovery ruling, pursuant to *Federal Rule of Civil Procedure 72*. In this filing, plaintiff asserted that Judge Spero had not made any findings in his order—"[i]nstead, they were made on the record." Plaintiff claims that "[u]pon conclusion of the hearing," he "requested a copy of the written transcript," but that he did not receive the transcript until July 11, 2006. He stated that he would be filing his objections "shortly." Eight court days later, on July 21, 2006, plaintiff filed the objections. [*82]

*Rule 72* provides, with regard to nondispositive matters referred to a magistrate judge for resolution, that "[w]ithin 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order." *Fed. R. Civ. P. 72(a)*. "[A] party may not therefore assign as error a defect in the magistrate judge's order to which objection was not timely made." Id. There is no provision in *Rule 72(a)* that permits the objecting party to delay filing objections to rulings on nondispositive matters past the 10-day limit.

Plaintiff claims that "[d]ue to Judge Spero's upcoming travel schedule, the transcript of the hearing, not the order, contained his findings." Plaintiff does not include a copy of the transcript with the objections, but the only "findings" plaintiff refers to in the objections are Judge Spero's rulings that there was no substantial justification for the late supplemental reports and that plaintiff had not shown that the late reports were harmless. Judge Spero stated the reasons for his rulings on the record, in open court, and plaintiff's counsel could easily have prepared

2006 U.S. Dist. LEXIS 57173, *82

objections based [*83] on Judge Spero's statements at the hearing, combined with the written order issued by Judge Spero the same day.

Plaintiff provides no credible justification for his failure to file the objections within the time required by *Rule 72(a)*. Accordingly, the objections are OVERRULED.

### CONCLUSION

In accordance with the foregoing, the court hereby DENIES plaintiff's motion for reconsideration, GRANTS defendants' motion in limine No. 1, and OVERRULES plaintiff's objections to Judge Spero's ruling on defendants' *Rule 37(c)* motion.

**IT IS SO ORDERED.**

Dated: July 31, 2006

PHYLLIS J. HAMILTON

United States District Judge