1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

_____

| | |
|---|---|
| JON MUSE, | CIVIL NO. 04-00154 DAE/BMK |
| Plaintiff, | (Civil Rights Violation) |
| vs. | |
| HOME DEPOT USA, INC., | |
| Defendant. | |

_____


DEPOSITION OF DARLYN KUHIA


Taken on behalf of the plaintiff at the office of Davis Levin Livingston Grande, 851 Fort Street, Suite 400, Honolulu, Hawai'i, commencing at 9:41 a.m. on July 20th, 2006, pursuant to Notice.




BEFORE:     B. KANOELANI COCKETT

Certified Shorthand Reporter

HI CSR NO. 379, CA CSR NO. 7995

EXHIBIT 8

1   A.   Not so.  I had to go back to times when I don't want
2   to remember again.
3   Q.   I'm sorry, what?
4   A.   I had to go and to remember something I didn't want
5   to remember again.
6   Q.   Um-hum.  But your memory now is crystal clear as to
7   the incident?
8   A.   Yes.
9   Q.   So it's fair to say, then, your memory is better now
10  today three years after the incident than it was three months
11  after the incident?
12  A.   Yes, because I had gone through it with Mr. Harris
13  yesterday, so yesterday it came all back again.
14  Q.   But you also went through it with another lawyer of
15  Mr. Harris' office on February 20th of 2004?
16       MR. HARRIS:  Objection, leading, assumes facts not
17  in evidence.
18       MR. SHERMAN:  Correct?
19       THE WITNESS:  Can you repeat that question again?
20       MR. HARRIS:  And foundation.
21          (The record was read.)
22       MR. HARRIS:  Same objection.
23       THE WITNESS:  No.
24  BY MR. SHERMAN:
25  Q.   So at that point your memory wasn't crystal clear;

38

1  Q. Did you talk to, again -- well, strike that.
2     You never felt any need to seek professional help
3  for your fear resulting from this incident; is that correct?
4  A. Yes.
5  Q. And you never have sought treatment for your fear
6  from this incident; is that correct?
7  A. Yes.
8        (Pause in the proceedings.)
9  BY MR. SHERMAN:
10 Q. Okay. Now, do you recollect Debra Peterson calling
11 you that day?
12 A. Yes.
13 Q. Where was she located?
14 A. Returns.
15 Q. Okay. And what was her position there? What was
16 her responsibility at returns?
17 A. As a cashier, refund merchandise.
18 Q. And what did she tell you on the phone?
19 A. That I needed to get there fast because there's
20 someone yelling and screaming at her and swearing at her, and
21 she was -- she was -- sounded like she was afraid.
22 Q. Okay. And that's exactly as you recollect today --
23 A. That's what she said.
24 Q. -- what she said?
25    Will you take a look at your statement again.

1   Q.   Why don't you tell me where in this document -- read
2   out where it says that Mr. Muse was yelling and screaming at
3   the time of the incident in November of 2003.
4   A.   It doesn't say that.
5   Q.   So on neither your handwritten statement nor the
6   Declaration you signed under penalty of law does it say
7   anywhere that Mr. Muse was yelling or screaming; is that
8   right?
9   A.   Yes.
10  Q.   And yet today, after talking to Mr. Harris
11  yesterday, you testify that you have a crystal clear
12  recollection now that Mr. Harris -- that Mr. Muse was yelling
13  and screaming at the time of the incident in November of 2003;
14  is that correct?
15           MR. HARRIS:   Objection.
16           THE WITNESS:   (Witness shakes head.)
17           MR. HARRIS:   Foundation, vague and confusing,
18  argumentative.
19           THE WITNESS:   (Witness shakes head.)   No.
20  BY MR. SHERMAN:
21  Q.   I'm sorry, you need to answer "yes" or "no."
22  A.   No.
23  Q.   What?
24  A.   I don't understand your question.
25  Q.   Okay.  Why is there no mention in either your

1   written statement or the written Declaration that Mr. Muse was
2   yelling and screaming?
3       A.   I don't know.
4       Q.   Well, why didn't you make sure it was put in?
5       A.   I didn't see him yelling or screaming.
6       Q.   Okay.  So he wasn't yelling and screaming at that
7   time; is that correct?
8       A.   He was swearing at us.
9       Q.   But he wasn't yelling and screaming; is that right?
10      A.   He was just swearing at us.
11      Q.   Okay.  Was he yelling or screaming at that time,
12  "yes" or "no"?
13      A.   No.
14           MR. SHERMAN:  Thank you.  Now, why don't we take a
15  break right now, if that's all right.  We've been going about
16  an hour.
17           Go off record, please.
18              (Recess was taken from 10:33 to 10:44 a.m.)
19           MR. SHERMAN:  Let's go back on the record.
20      Q.   We're back on the record.
21           Ms. Kuhia, you understand you're still under oath?
22      A.   Yes.
23      Q.   I want to refer you to Exhibit A again.
24           Now, did Mr. -- when you first met Mr. Muse did he
25  tell you that he had a disorder?

1    Q.   You don't recollect any written policy you've ever
2   read saying you can give a customer a personal shopper if they
3   ask for one?
4    A.   No.
5    Q.   Would it have made a difference during the situation
6   if he'd given you a sign explaining that he had Tourette's
7   Syndrome?
8         MR. HARRIS:  Objection, foundation, vague,
9   speculation.
10        THE WITNESS:  I don't know.
11  BY MR. SHERMAN:
12   Q.   Well, would you have understood better what his
13  condition was if he had?
14   A.   Yes.
15   Q.   Would you have still called the manager if he had
16  given you that sign?
17        MR. HARRIS:  Objection, foundation, vague.
18        THE WITNESS:  Yes.
19        MR. HARRIS:  Speculation.
20  BY MR. SHERMAN:
21   Q.   So it wouldn't have made any difference whether he
22  gave you a sign explaining he had Tourette's Syndrome or not,
23  would it?
24   A.   I don't even know what is that.  At the time I did
25  not know what Tourette's Syndrome was to begin with.

1   Q.   You didn't understand that?
2        MR. HARRIS:  Same objections.
3        THE WITNESS:  No.
4   BY MR. SHERMAN:
5   Q.   If you had understand that -- understood that at the
6   time, would it have made any difference as to how you
7   perceived Mr. Muse?
8        MR. HARRIS:  Objection, foundation, vague,
9   argumentative, speculation.
10       THE WITNESS:  I can't say anything.  I don't know.
11  BY MR. SHERMAN:
12  Q.   Have you ever filed a complaint with Home Depot
13  based on the incident of November 3rd, 2003?
14  A.   No.
15  Q.   Have you ever sought counseling through their human
16  resources department because of that incident?
17  A.   No.
18  Q.   Have you ever talked to other workers about how
19  upset you were that day?
20  A.   Only my front end supervisor, Jack Marin.
21  Q.   I'm sorry?
22  A.   Jack Marin.
23  Q.   But no one else?
24  A.   No.
25  Q.   Have you ever heard anyone else swear at Home Depot?

1   A.   Yeah, yes.
2   Q.   Have you heard customers swear?
3   A.   Yes.
4   Q.   What are -- do you remember any particular incidents
5   and times when this occurred?
6   A.   No.
7   Q.   In each of the times, did you immediately call a
8   supervisor?
9   A.   I hear them swearing. I don't -- it's not to me or
10  to anybody. They are talking to somebody else and I hear them
11  swearing, not necessarily having anything to do with Home
12  Depot.
13       (Electronic interruption in the proceedings.)
14  BY MR. SHERMAN:
15  Q.   So when you hear --
16       MR. HARRIS:   Excuse me, did you get that answer?
17           (The record was read.)
18       THE REPORTER:   Was that correct?
19       THE WITNESS:   Um-hum.
20  BY MR. SHERMAN:
21  Q.   So you don't recall any other incident involving
22  profanity where you called the supervisor to deal with it?
23  A.   No.
24  Q.   And yet you've heard other people use profanity
25  around you at Home Depot?

66

1  saying the words "cunt," "fucking" or "nigger"?  Do you
2  understand that?
3          MR. HARRIS:  Objection, foundation.
4          THE WITNESS:  Um-hum, yes.
5          MR. HARRIS:  And speculation and harassment.
6  BY MR. SHERMAN:
7      Q.  Okay.  And you understand that that's a disease; is
8  that correct?
9      A.  Yes.
10         MR. HARRIS:  Objection, foundation, vague,
11 speculation.
12 BY MR. SHERMAN:
13     Q.  Do you think he should be allowed to shop at Home
14 Depot?
15     A.  Yes.
16     Q.  Do you think there's some things that could be done
17 to make it easier for both Home Depot and its customers and
18 Mr. Muse that might be helpful?
19         MR. HARRIS:  Objection, foundation, vague,
20 speculation.
21         THE WITNESS:  Yes.
22 BY MR. SHERMAN:
23     Q.  What are some of those things?
24     A.  Like coming in with someone, coming in immediately
25 asking for a manager, you know, letting someone know.  My

69

```
 1        MR. LEVIN:  (Indicating.)
 2            (The record was read.)
 3                FURTHER EXAMINATION
 4        MR. SHERMAN:  Then we have more questions.
 5   Q.   Let me refer you to Exhibit A again.
 6        That's your handwriting, isn't it?
 7   A.   Yes.
 8   Q.   And you wrote out the words there yourself?
 9   A.   Yes.
10   Q.   And no one told you exactly what to write, did they?
11   A.   No.
12   Q.   And you used the words "fucking" and "cunt"?
13   A.   Yes.
14   Q.   In Exhibit A; is that correct?
15   A.   Yes.
16   Q.   And you wrote them out entirely; is that correct?
17   A.   Yes.
18        MR. SHERMAN:  Okay.  No further questions.
19        Oh, do you want to waive your...
20        MR. HARRIS:  No.
21        MR. SHERMAN:  You have a right to review the
22   deposition or you can waive your right to review it.
23        MR. HARRIS:  She'll review it.
24            (Whereupon the deposition
25              was concluded at 11:19 a.m.)
```

                                                                    67

1   personal thing is come with someone.
2       Q.   What if he had a sign or a letter from a doctor,
3   both a small one and then a longer letter that he gave the
4   Home Depot, would that be helpful?
5            MR. HARRIS:  Objection, foundation, speculation.
6            THE WITNESS:  I don't know that.  That I wouldn't
7   know.
8   BY MR. SHERMAN:
9       Q.   What if he called up before he came and contacted a
10  specific person and asked if they could help him when he got
11  there, would that be helpful?
12           MR. HARRIS:  Objection, foundation, and speculation.
13           THE WITNESS:  Maybe.
14  BY MR. SHERMAN:
15      Q.   I mean, you can understand how hard it would be for
16  Mr. Muse not to be able to go anywhere because of this
17  disease, can't you?
18           MR. HARRIS:  Objection, foundation, speculation,
19  argumentative.
20           THE WITNESS:  Yes.
21           MR. SHERMAN:  Why don't we take a break.
22                (Recess was taken from 11:10 to 11:17 a.m.)
23           MR. SHERMAN:  Back on the record, please.
24      Q.   Okay.  Miss Kuhia, you're still under oath.
25           You understand that?