IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| JON MUSE, | ) | CIVIL NO. 04-00154 DAE/BMK |
| | ) | (Civil Rights Violation) |
| Plaintiff, | ) | |
| vs. | ) | MEMORANDUM IN SUPPORT OF |
| | ) | PLAINTIFF'S MOTION FOR |
| HOME DEPOT USA, INC. | ) | PARTIAL SUMMARY JUDGMENT |
| | ) | AND IN OPPOSITION TO |
| Defendant. | ) | DEFENDANT'S MOTION FOR |
| | ) | SUMMARY JUDGMENT |

MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

Plaintiff, Jon Muse, submits this motion and memorandum in support of partial summary judgment for a determination that he is "disabled" within the meaning of the ADA and thus entitled to a reasonable accommodation from Home Depot to allow him to shop at its stores. Plaintiff brings this motion pursuant to Local Rule 7.9 because it addresses the identical issues raised in Home Depot's original motion for summary judgment. Thus, this also serves as Plaintiff's Opposition Memorandum to Home Depot's Motion for Summary Judgment.[1]

---

[1] On Friday, September 15, 2006, Defendant filed a supplemental pleading without leave of court or Plaintiff's counsel. Their memorandum is in violation of Local Rules 6.2, 7.2, 7.4, and 7.5. The alleged rationale was because of new discovery, but Defendant uses information available to it at the time of the filing of the original motion and, moreover, uses information subject to F.R.E. Rule 408. In sum, Defendant's Amended Memorandum neither should be read nor considered, and unless immediately withdrawn, a Motion to Strike will be filed requesting appropriate sanctions.

Defendant Home Depot's motion for summary judgment seeks to exclude persons suffering from Tourette Syndrome from public society, and it seeks to hold the Americans with Disabilities Act unconstitutional. Thus, this Court's interpretation of Title III of the ADA and the relevant regulations in this case will have widespread impact for persons with Tourette Syndrome who wish to receive equal opportunity to participate in mainstream society in the United States.

Defendant Home Depot's motion for summary judgment has five elements:

1. Even though Home Depot's actions and defense in this matter would preclude Muse from entering any retail outlet or other public accommodation in which he would need to check out goods or purchase services from a person, Home Depot asserts that Muse's disability does not qualify him for any accommodation because it does not affect a major life activity;

2. Even though Home Depot's actions refused further services to Muse under any condition, Home Depot argues that Muse never requested any accommodations therefore he deserves none;

3. Any accommodation, such as employee education, understanding, and even a willingness to go to a certain educated check-out person, would be too onerous for Home Depot and purportedly would subject it to potential liability for hypothetical claims from third persons who may be offended by Muse's unintentional utterances of certain vulgarities during the few occasions that he would be in Home Depot;

4. Muse is not disabled under Hawai'i law, and even if he is, he got what treatment he deserved.

5. Home Depot argues that the ADA is unconstitutional because it conflicts with a purported right to freedom of ideological speech, thereby justifying a private corporation that operates a profit making public accommodation the right to ignore its obligations to provide a reasonable

accommodation to a disabled person under the ADA or its Hawai'i counterpart.

Defendant's first argument is baseless, as it relies upon a complete mischaracterization of Mr. Muse's disability, ignoring expert opinion on this matter, ignoring as well its own treatment of Mr. Muse – Home Depot considers Mr. Muse to have such a disabling condition that it will not allow him in its stores, and its arguments would preclude Mr. Muse from going into any place of public accommodation. Yet, Home Depot has the audacity to argue that Mr. Muse's disability does not affect a major life activity. In contrast, Plaintiff's Motion for Summary Judgment shows that no reasonable juror could find but that he is disabled within the meaning of Title III of the ADA.

Defendant's second argument that Mr. Muse never requested an accommodation is specious; at the time that Muse was confronted with Home Depot's intolerance and *willful* misunderstanding, Jon Muse calmly tried to explain the uncontrollable source of the words to which the employees were taking offense. Once Mr. Muse explained his disability, it was Home Depot's obligation and duty to respond in accordance with the law and provide for him an accommodation; Mr. Muse came to Home Depot to shop, he explained his disability when questioned about it, thereby asking for understanding and the ability to shop at Home Depot. Then, as now, Home Depot simply does not care if he has a disability and absolutely refuses to serve Mr. Muse; what accommodation,

therefore, is available for the asking?  According to Home Depot, Mr. Muse's disability should make him unacceptable in the society in which Home Depot makes a huge profit from the sales of its many and various goods. As a matter of law and Home Depot's undisputed refusal to allow Mr. Muse to shop at its store after it knew of Mr. Muse's disability, Mr. Muse is not required to return to Home Depot to exercise a futile effort to shop there.

Defendant's third argument is related to its fifth argument: that somehow during the few times that Mr. Muse may decide to shop at Home Depot, despite any education and understanding that the employees may be asked to undergo, that Mr. Muse would violate Home Depot's purportedly deep commitment to provide a vernacularly pristine (however *that* may be defined) shopping environment, regardless of any intent to utter words less than pristine words.  Not only does Home Depot not have such a policy, its own employees' actions and testimony belie its solely litigation-based assertions of such a policy.

Defendant's fourth argument already was defeated on their prior motion to dismiss; Hawai'i law does cover Mr. Muse's disability because it is a neurological disorder; i.e., the physical structure of Mr. Muse's brain is, in essence, causing synapses to misfire which causes a physical reaction in the form of certain vocalizations.  Home Depot has presented no facts to counter the Plaintiff's experts' testimony and reports that Mr. Muse's disability is covered by the Hawai'i

law. The only thing non-physical is Home Depot's determination that such uncontrollable vocalizations somehow offend their sense of right and wrong.

## II.     FACTS

### A.  INCIDENT

Plaintiff Jon Muse [hereinafter "Muse" or "Jon Muse"] is a forty-three-year-old man with a long history of Tourette Syndrome.  Jon Muse is determined to be disabled by the Social Security  Administration, and receives supplemental security income ("SSI") in recognition of his disability's adverse impact on his ability to work..   Because of his disability, Jon Muse is necessarily self-employed, operating a plant supply business.  The nature of Jon Muse's business requires that he shop at Home Depot, which often has the lowest prices.

Jon Muse is impaired significantly in his speech, and consequently his major life activities, as he suffers from two distinct  manifestations of Tourette Syndrome called coprolalia and copropraxia.  His disability causes him to utter certain words compulsively, without any intent, and randomly into otherwise normal speech patterns and substance and to make a certain obscene gesture (commonly known as "giving the finger"), while also sometimes sticking his tongue out.   Mr. Muse does not shout or yell these words; the words are interspersed in his normal speaking tone of voice, without emphasis or other verbal or physical cues to indicate that he said anything out of the ordinary.  See Exhibit 6

(Day in the Life of Jon Muse DVD).  He also often seeks to disguise the obscene gesture by pretending to pat his hair or disguise the words within another word, e.g., "cuntgratulations."  Id.

Exhibit 6 is a Day in the Life video of a typical day for Mr. Muse.  The video shows that Mr. Muse's utterances and gestures are not nearly as dramatic or protrusive as depicted by defense counsel.   This is in stark contrast to the over dramatized depictions of persons with coprolalia and copropraxia depicted in popular culture, and in movies (e.g., "Deuce Bigelow - Male Gigilo") and television shows (e.g., L.A. Law and Curb Your Enthusiasm).

Regretfully, the words uncontrollably interjected are considered vulgarities by many, which offend certain aspects of society, though not all, and not in all circumstances.  Under some circumstances, most people would not be bothered by the words he uses.  The randomly interjected vulgarities are the words cunt, fuck, and nigger.2  As a matter of common knowledge, the latter of the first two words, in various forms, often is used commonly, though perhaps regrettably, to provide emphasis to many exclamations in many different situations.  The former word is less often used and when used by persons without Mr. Muse's disability, it is used

2       Mr. Muse did not utter the word "nigger" during the incidents in question, however.  Counsel for Plaintiff considered using abbreviated versions of such words, but after doing a quick search of case law on this issue, discovered so many published cases that routinely report the use of such words with the full spelling that it retains the full spelling of such words for accuracy, with the implicit understanding of all parties and the Court that the words never have been directed from or at any one herein with malicious intent and are simply "words," which Mr. Muse utters uncontrollably as part of his disability.  Or, as is often the case, naming something and putting light upon it, takes away any power to injure that otherwise would persist in darkness.

often with malicious intent by "calling someone a name."    The word "fuck" is often used without any malicious intent whatsoever[ it has become simply a way to make a point  stronger.  Regretfully, neither medication nor other treatment has been able to control this aspect of Mr. Muse's Tourette Syndrome.

Defendant Home Depot has named Mr. Muse a pariah in our society, and refuses to allow him in its commercial establishments or to do business with him in its retail establishments in any way, shape, or form.  The reason:  Because Mr. Muse has a psychological disability *that compels him* to utter *two words* in random and uncontrollable ways.  As set forth by the Defendant's attorney, Defendant Home Depot demands that Plaintiff "stay out of it [sic] stores until he avoids using vulgar language in front of employees and customers."  <u>See</u> Exhibit  7; accord Defendant Home Depot's Response to Motion to Continue Hearing on Defendant's Pending Motion to Dismiss filed May 14, 2004, p.2.  Indeed this is a difficult and tricky proposition to balance all of the competing interests in this case, one reason why Home Depot has chosen to litigate this case and instead of expanding its efforts on fashioning a truly workable resolution.

On or about November 3, 2004, Mr. Muse was making a purchase at the Defendant's Home Depot store located at 421 Ala Kawa Street in Honolulu, Hawai'i. While making his purchases, Mr. Muse conversed with the check-out clerk and randomly and uncontrollably voiced the words "fuck" and "cunt" due to

his coprolalia. The female supervisor on duty, named "Dar", overheard the conversation 3 and ordered Mr. Muse to stop using the vulgarities. Mr. Muse calmly apologized to the clerk and Dar and explained that his use of those words were due to his disability, Tourette Syndrome. Mr. Muse was quiet and polite during the exchange. Dar indicated that she did not care what sort of disability Mr. Muse had, despite Mr. Muse's explanation. The store manager, Mike Dolan was summoned and Mr. Muse again explained his condition and apologized. The store manager ignored Mr. Muse's explanation and stated that he would not tolerate such language. He further stated that he did not care what kind of disability Mr. Muse had and that Mr. Muse was not welcome at the store if he used such language. <u>See</u> Affidavit of Jon Muse, attached hereto. None of the managers or employees allowed Muse to speak well to explain his disability, none offered to try to accommodate his obvious desire to need to shop at Home Depot, and none offered any other avenue but to stay out until he controlled an uncontrollable disability (cf., don't come back until you can walk!).

### B.  JON MUSE'S DISABILITY

Jon Muse suffers from Tourette Syndrome. Muse also suffers from Attention Deficit Disorder, compounding his ability to think and interact well with

---

3       Darlyn Kuhia testified that the cashier Debra Peterson called her, but Mr. Muse never say or heard Ms. Peterson make such a call. Dar testified also that Ms. Peterson told her that Mr. Muse was "yelling and screaming" but she later admitted that such an assertion was only made after two written statements by her made no mention of such yelling or screaming statement, but only after she had spoken to her attorney before the deposition. <u>See</u> Exhibit 8, 32:9-13 and 45:5-14,19, 25

others, and to otherwise care for himself.  Jon Muse was evaluated by Samuel H.

Zinner, M.D., of the University of Washington, who reviewed Muse's medical

history, including the opinions of Dr. William P. Sheehan, Muse's Hawai'i

psychiatrist.    Dr. Zinner expressed his professional evaluation of Tourette

Syndrome (See Report of Dr. Zinner dated October 9, 2005, attached hereto as

Exhibit 2):

> Description of the cause of Tourette syndrome:
> Tourette syndrome is neurological in origin and is involuntary.  As described by the National Institute of Neurological Disorders and Stroke (NINDS) which is a branch of the National Institutes of Health (NIH), Tourette syndrome "is a neurological disorder characterized by repetitive, stereotyped, involuntary movements and vocalizations called tics."
>
> This disorder is defined by the presence of motor and vocal tics beginning in childhood and having a protracted, often lifelong course. No two people with Tourette syndrome have exactly the same symptoms.  For some people, symptoms of Tourette syndrome are mild.  For Mr. Muse, symptoms are severe.
>
> At its root, Tourette syndrome is a brain-based condition characterized by "disinhibition".  In other words, people with Tourette syndrome are not able to effectively inhibit their tics.  Scientists don't fully understand the brain-based abnormality that causes the tics.  However, we do understand that there is a circuit within the brain that connects areas on the surface of the brain to an area deep within the brain.  This circuit is "wired" incorrectly in people with Tourette syndrome; as such, many, if not most, people afflicted with Tourette syndrome also have one or more associated clinical problems, as is the case for Mr. Muse.  These associated problems feature other related "disinhibited" symptoms which may include impulsive behaviors (such as frequently interrupting, or a sense of restlessness and fidgetiness), compulsive behaviors, anxiety and sleeping difficulties.

For Mr. Muse, the ability to suppress his tics voluntarily is extremely limited. Because of the faulty wiring in his brain, Mr. Muse is no more able to stop the impulse to tic than a person with epilepsy is able to stop from having a seizure or a person on the brink of sneezing is able to postpone the sneeze.  Furthermore, his voluntary control over the impulse is extremely limited.  While his tics of "giving the finger" and saying socially inappropriate things that include profanity and ethnic slurs are shocking to people unfamiliar with Mr. Muse, there is no deliberate meaning behind these expressions.  Again, the analogy of a seizure can be very useful in understanding this.

While there is no cure for Tourette syndrome, the good news is **that Mr. Muse's Tourette syndrome poses no danger to other people, and some simple accommodations are likely to be effective in reducing any potential public stress or concern that may emerge. [emphasis added].**

Dr. Zinner, a qualified expert in Tourette Syndrome,   gave his undisputed professional opinion as (See Exhibit 2):

 Mr. Muse is a 44-year-old male with a longstanding history of Tourette syndrome. . . . Mr. Muse can be expected to suffer disabling symptoms of Tourette syndrome over the course of his life.  In his particular    circumstance,    these    tic    symptoms    will    include neurologically uncontrollable and socially embarrassing outbursts of profanity and vulgar gestures.  His tics will continue to wax and wane over time irrespective of Mr. Muse's obedient efforts to limit their expression.  The tics will occur at unpredictable times and places beyond Mr. Muse's willful power to suppress them.

Home Depot has offered no records or testimony that rebuts a finding that Mr.

Muse has Tourette Syndrome.4  Dr. Zinner found more specifically the following:

---

4        Home Depot attaches to its Motion for Summary Judgment NO documents from any designated or authenticated expert.  This report of Dr. Zen attached as Exhibit A-7 is not only out of date (2000), but there is no curriculum vitae that would assist the court in determining the validity of his opinions under the <u>Daubert</u> standards. Accordingly, unless properly authenticated by documentary evidence, Home Depot's exhibits on Muse's medical condition should not even be considered. Furthermore, the parties have agreed to have Dr. Zen not testify at trial nor use his medical records.

-   [Mr. Muse] received a global severity score of 80 points, based on the presentation of tics over the preceding week, which takes into account a qualitative impairment**. This score is quite high and indicates both significant tic severity and psychosocial consequence**." [emphasis added].

Dr. William P. Sheehan, Mr. Muse's former treating psychiatrist at Kaiser has the same opinion [See Sheehan Deposition Transcript, pp. 13-15, Exh. 3]:

Q.   What is your opinion about Mr. Muse's condition?

A..   I believe that Mr. Muse has Tourette Syndrome disorder, severe, I would say pretty severe, and that was primarily why I saw him. [p. 13. ll 19-21] . . .
  So the DSM-IV, that's a diagnostic criteria book that psychiatry uses, and if you went by criteria he probably had -- I treated him for, and I believe I considered it Tourette Syndrome disorder. [p. 14, ll 2-5]. . .
  I think that Mr. Muse has a very serious case of Tourette Syndrome disorder, and unfortunately, his symptoms never fully responded to treatment as I was able to provide it, for a variety of reasons, but bottom line was it never got fully under control. So I'm aware -- and it's pretty debilitating. [p.15, ll. 10-14].

Dr. Sheehan would give to Mr. Muse (and had provided to other Tourette patients) a card to give to people to help them to understand Mr. Muse's disability. See Sheehan Deposition at pp. 41-43.  Dr.. Sheehan also recognized, however, that a card, by itself, would not be sufficient; more education is needed.  See Sheehan Deposition, p. 96. Dr. Sheehan approved also Dr. Zinner's accommodation recommendation.  Id. This would be part of any solution to Mr. Muse's situation, but not the sole component.  Finally, The United States Social Security Administration considers Jon Muse disabled, and provides benefits in recognition

of the disabling effect that his disability has on his ability to work.[5]  <u>See</u> Exhibit 5; <u>see</u> <u>also</u> 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A)(defining "disability" define "disability" as the "inability to engage in any substantial gainful activity····"); <u>see</u> <u>also</u> 42 U.S.C. §§423(d)(2)(A), 1382c(a)(3)(B)(Individuals found to be under disability only if "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.")

Accordingly, there is no question, and no reasonable juror could find but, that at the time of the incidents that form the basis of the complaint, and at present, <u>see</u> Day in Life of Jon Muse DVD, attached hereto as Exhibit 6.  Jon Muse suffers from a disability that substantially limits a major life activity, thus deserving of a reasonable accommodation from Home Depot to allow Muse to shop there.

## III.    ARGUMENT

### A.    APPLICABLE LEGAL STANDARDS

---

5        "Disability" for SSA purposes was defined in Bowen v. City of New York, 476 U.S. 467, 469-70, (1986).

The Federal Government provides benefits to disabled persons under two distinct programs administered by the Social Security Administration (SSA . . . The Supplemental Security Income Program (SSI) established by Title XVI of the Act, 86 Stat. 1465, as amended, 42 U.S.C. §1381 et seq., provides benefits to indigent disabled persons. Both statutes define "disability" as the "inability to engage in any substantial gainful activity····" §§423(d)(1)(A), 1382c(a)(3)(A). An individual is found to be under a disability only if "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." §§423(d)(2)(A), 1382c(a)(3)(B).

### 1.    <u>Motion for Summary Judgment</u>

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party has the initial burden of "identifying for the court those portions of the materials on file in the case that it believes demonstrate the absence of any genuine issue of material fact."  <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).  In a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party.  <u>State Farm Fire & Casualty Co. v. Martin</u>, 872 F.2d 319, 320 (9th Cir. 1989).

In the context of  determining a person's disability status under ADA Title III, the Court has held that it is always on a case-by-case, individualized basis.  <u>See Bragdon v. Abbott</u>, 524 U.S. 624 (1998).

Plaintiff Jon Muse submits that, as set forth below, he has made a showing sufficient to demonstrate that he is a person with a disability within the meaning of the ADA, and entitled to an accommodation from Defendant Home Depot.

### 2.    Title III of the Americans with Disability Act

This case involves the interpretation of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §12181 <u>et seq</u> ("ADA"), which prohibits discrimination "on the basis of disability in the full and equal enjoyment of the

goods, services, facilities, privileges, advantages, or accommodations" offered by a place of public accommodation. 42 U.S.C. §12132(a) <u>et seq</u>; 28 C.F.R. § 36.201(a). The Supreme Court has articulated a three-step inquiry for determining whether an impairment substantially limits a major life activity so as to constitute a disability under the ADA. <u>See Bragdon</u>, 524 U.S. at 631. First, the court must ascertain whether plaintiff has a physical or mental "impairment." Next, the court must identify whether any "major life activities" are impacted by that impairment. Finally, the court must determine whether the impairment "substantially limits" any major life activity. <u>Id.</u>

Defendant's Motion seeks to have the Court ignore and dismiss Plaintiff's disability from consideration. As Defendant repeatedly asserts in its earlier brief in support of its previously filed Motion to Dismiss (see, e.g., page 5):

> the clerk, supervisor, manager and customers that were present were not required to accept Plaintiff's voicing vulgarities, even if they resulted from the alleged disability.

Both the facts and law applicable to this case compel a contrary conclusion, one that affirms Home Depot's obligation to abide by the ADA and treat Mr. Muse as an equal member of the society from which it draws its substantial income.

## B. PERSONS WITH A DISABILITY

The definition of a person with a disability is identical under both Title I and Title III of the Americans With Disabilities Act. There are three general categories

of persons who are protected:

    a.  Individuals have a physical or mental impairment that substantially limits one or more major life activities;

    b.  Individuals who have a record of a physical or mental impairment that substantially limits one or more of the individuals major life activities; and

    c.  Individuals who are regarded as having such an impairment whether impaired or not.

<u>See</u>  42 U.S.C. §12102(2); 28 C.F.R. §36.104.

Additionally, under the Federal Regulations, an impairment is defined as a physiological condition affecting the neurological body system.  <u>See</u> 28 C.F.R. § 36.104.

### C.  MAJOR LIFE ACTIVITIES

"Federal regulations describe major life activities as including functions 'such as caring for oneself, walking, seeing, hearing, **speaking**, breathing, learning, and working.' " We have recognized that the "illustrative list of major life activities requires the activity only to be of 'comparative importance' and 'central to the life process itself,' and it need not have a public, economic, or daily character." To be a major life activity, the activity need not be essential to survival, but rather "of central importance to most people's daily lives."

<u>Head v. Glacier Northwest, Incorporated</u>, 413 F.3d 1053,  (9th Cir. 2005) 1061-62 [emphasis added] <u>quoting</u> <u>Fraser v. Goodale</u>, 342 F.3d 1032, 1039 (9th Cir. 2003) <u>quoting</u> 45 C.F.R. §84.3(j)(2)(ii);  citing 29 C.F.R. §1630.2(i). This list is meant to be illustrative rather than exhaustive.  Furthermore, "[a] person is considered an individual with a disability ... when the individual's important life activities are

restricted as to the conditions, manner, or duration under which they can be performed in comparison to most people."  28 C.F.R. Part 36, App. B. §36.104.

The phrase "physical or mental impairment" includes any "physiological disorder or condition" that affects the neurological system or "any mental or psychological disorder such as ... emotional or mental illness."  28 C.F.R. §36.104. Tourette syndrome is a neurological impairment characterized by motor and verbal tics and coprolalia. See Purcell v. Pennsylvania Dep't of Corrs., 1998 WL 10236 (E.D. Pa. 1998)(Under ADA Title II, Tourette Syndrome sufferer with coprolalia affects a major life activity of interacting with others, even though he mostly was able to suppress it while dealing with others, entitling him to an accommodation from public entity); see also Exhibits 2 and 3.

A person with Tourette Syndrome also seeks to avoid contact with other persons, thus adding to the disability.  In Bragdon, 524 U.S. at 638, the Supreme Court expressly rejected the claim that a major life activity is limited to "those aspects of a person's life which have a public, economic, or daily character." Relying on the "breadth of the term" major life activity, Id., the Court held that HIV infection (as a physical impairment) substantially limited the major life activity of "reproduction," not because it physically prevented pregnancy, but because the infection deterred the plaintiff from seeking to become pregnant.

Thus, interacting and communicating with others is a major life activity.

See 29 C.F.R. §1630.2(i); Head, 413 F.3rd at 1060 citing McAlindin v. County of San Diego, 192 F.3d 1226, 1230 (9th Cir. 1999) cert denied 120 S.Ct. 2689 (2000) ("because interacting with others is an essential, regular function, like walking and breathing, it easily falls within the definition of 'major life activity.'"). In addition, the Equal Employment Opportunity Commission's Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities 5 (March 25, 1997) lists "interacting with others" as a major life activity.

Plaintiff alleges that, among other things, he is limited substantially in the major life activities of interacting with and working with others.  Any disability that significantly affects a person's ability to interact with others qualifies as a disability that affects a major life activity.  Although Muse has expert opinion supporting his assertions, his testimony alone would have been sufficient under prevailing Ninth Circuit law:

> Ninth Circuit precedent does not require comparative or medical evidence to establish a genuine issue of material fact regarding the impairment of a major life activity at the summary judgment stage. Rather, our precedent supports the principle that a plaintiff's testimony may suffice to establish a genuine issue of material fact,

In this case, Mr. Muse has provided both his own testimony[6] and the testimony of an expert to expert to establish that his disability affects a major life activity.

---

6  Muse Deposition Transcript, pg. 19:9-17 and page 21:16–20, respectively:

Jon Muse is an individual with physical impairments that substantially limit him in the major life activities of speaking, interacting with others, and working. Defendant Home Depot is a covered entity as a place of public accommodation under Title III of the ADA. See 42 U.S.C. §12181(7); 28 C.F.R. §36.104. Title III generally requires that a public accommodation may not discriminate against an individual with a disability and the operation of a place of public accommodation. 42 U.S.C. §12182(a); 28 C.F.R. §36.201. Specifically, individuals with disabilities may not be denied the ***full and equal enjoyment*** of the goods, services, facilities, privileges, advantages or accommodations offered by the public accommodation. 28 C.F.R. §36.201(a). Muse was denied full and equal enjoyment of the services, privileges, and advantages of a place of public accommodation (Home Depot) on the basis of his disability.

Home Depot argues also that Jon Muse has no problem working at his plant supply business , and thus he cannot rely upon an inability to work as one of the affected major life activities. Home Depot's logic is, once again, disingenuous and flawed. Jon Muse testified that he tried many other jobs but his disability interfered with his ability to work with others. <u>See</u> Muse Deposition Transcript at p.15:11-17 and 17:11-18 The mere fact that Jon has found **a** job at which he can

---

[M]aybe like a situation would be, excuse me, what did you just call me? And, you know, with the body language and a gesture like that (indicating), and right away I have to defend myself. And I say, excuse me, I didn't mean to say that. I have a – I have to explain myself constantly wherever I go. So I try to avoid social situations – at all costs..

If I'm out of the house, if I'm in public, if I'm parking my car, walking to the service station to get something to drink or – it happens just about every day. In any situation where there's other people involved and. . .

work in relative self-harmony does not obviate his inability to obtain a job, any job, that most other people without his disability would get – would Home Depot hire him?  It will not even let him into its stores, much less hire him.  The Social Security Administration has determined that Mr. Muse's disability significantly and adversely affects his ability to work – and has provided benefits to ameliorate his disability's effects.  See Exhibit 5 and footnote  1, *supra*.

As relied upon by Home Depot, "[w]hen the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs . . . one must be precluded from more than one type of job, a specialized job, or a particular job of choice."  Bitney v. Honolulu Police Dep't, 96 Haw. 243, 254 (2001);  29  C.F.R.  §1630.2(j)(3)(I)("The  term  substantially  limits  means significantly restricted to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable skills and abilities.").  Jon Muse has alleged not just one of the above elements listed in the disjunctive, but all three.

> Q.    How does your Tourette's limit your ability to work?
> A.    Well, um, I can work, but at the present time I can only work as a self-employed person, 'cause I cannot work for anybody – any other company because of the – my language that I use, and especially when you work with customers or if you're in social situations, it's just not appropriate.

### 1.  Obligation To Provide Accommodation.

Home Depot has taken more than one extreme position – First, it alleges that Muse never verbally asked for any specific accommodation, so therefore Home Depot is under no obligation to provide one.  Such an argument is completely at odds with Jon Muse's request to shop at Home Depot during regular business hours, 7 and Home Depot "accommodation" was to tell Jon Muse not to come in unless he could control his disability sufficiently enough so as to not express it.  Home Depot's argument is ludicrous, and contrary to law.

A public accommodation such as Home Depot must make reasonable modifications to policies, practices, and procedures that are necessary to provide goods and services to a person with a disability unless such modification would fundamentally alter the nature of the goods and services provided.  42 U.S.C. §12182(b)(2)(A).  Once Home Depot was put on notice of Muse's disability, it was required under the ADA to reconsider its position that Muse must leave the store unless he could control his language.  42 U.S.C. §12101, *et seq.*

In this case, as established by Dr. Zinner and Dr. Sheehan, and as established by the settlement agreement between Mr. Muse and Bank of Hawai'i [See Exhibit 10], there are accommodations available to Home Deport, one of which includes education of both the employees of Home Depot, as well as notice to employees

---

7        Although given Home Depot's policy of not interfering with swearing between customers and the fact that Home Depot's employee's adverse reaction arose from their unfamiliarity with Tourette Syndrome, Jon Muse has offered to shop at Home Depot with a friend or other chaperone during normal business hours.

and customers 8 while Mr. Muse is in the store.   Dr. Sheehan also suggested

reasonable accommodations, such as Mr. Muse carrying around a card explaining

his disability to those who misunderstood the source of his utterances.   In a

companion lawsuit (*Muse v. Bank of Hawai'i*, Civil No.04-00156), Bank of Hawaii

and Mr. Muse  worked out a reasonable accommodation that allows Mr. Muse to

do business at a convenient Bank of Hawaii branch during normal business hours

at Mr. Muse's convenience, just like the rest of Bank of Hawaii's customers:  The

settlement agreement is attached as Exhibit 10.  It is compelling that even Home

Depot's own employees feel that Jon Muse should be allowed to shop at Home

Depot.  See Kuhia Deposition, Exh. 8, 66:13-15. 9

Although businesses covered by Title III of the ADA are not required to

make accommodations that would result in fundamental alterations of goods and

services provided by the entity, it is the burden of the covered entity to demonstrate

such fundamental alteration.  See  Johnson v. Gambrinas Co./Spoetzl Brewery, 116

---

8        Contrary to Home Depot's assertion that it has a value to protect its customers from vulgar language, Home
Depot has admitted through the testimony of its Head Cashier that such is not the policy.  Home Depot personnel do
not interfere nor report incidents in which one customer swears at another, even when that use of vulgarity is
intentional.  See Kuhia Deposition, 62:1-12

9  In Kuhia Deposition, page 66-67:
        Q. Do you think he should be allowed to shop at Home Depot?
        A. Yes.
        Q. Do you think there's some things that could be done to make it easier for both Home Depot and its
        customers and Mr. Muse that might be helpful?
        MR. HARRIS: Objection, foundation, vague, speculation.
        THE WITNESS:  Yes.
        BY MR. SHERMAN:
        Q. What are some of those things?
        A. Like coming in with someone, coming in immediately asking for a manager, you know, letting someone
        know.  My personal thing is come with someone.

F.3d 1052 (5th Cir. 1997).  <u>Johnson</u> is a case heavily relied upon by Home Depot

for the proposition that a modification must be requested.  Similarly to Muse,

Johnson merely requested to be allowed to use a public accommodation, for him it

was with his seeing-eye dog, but the establishment refused him entry; no further

request was needed to be shown.[10]  <u>Id.</u> Jon Muse did request, moreover, an

accommodation – Home Depot's *understanding* that his utterances of certain

words was not intentional or meant to cause harm.  As set forth above by Dr.

Zinner, such understanding is the best accommodation that could be given, and one

that has been provided at other retail locations.  Home Depot did not care, and

refused to educate its employees to create such an accommodation.  The ADA does

not require that a person with a disability engage in a futile gesture if the person

has actual notice that the organization does not intend to comply with the ADA.

42 U.S.C. §12188(a)(1).  Furthermore, Muse, through counsel, also offered a

number of other reasonable accommodations, which accommodations were

---

10      Similar to Home Depot's Motion to Dismiss, Home Depot cites cases that do not support the extreme view
it espouses.  For example, as in Johnson, in <u>Fortyune v. Am. Multi-Cinima, Inc.</u>, 364 F.3d 1075 (9th Cir. 2004) the
Ninth Circuit did not "assess" whether the plaintiff had made a valid request for an accommodation.  Plaintiff's
"request" was merely showing up at a movie theater with a companion and asking to watch a show seated next to his
companion, just like anyone else who shows up with a companion.  In the case of <u>Larson v. Carnival Corp.</u>, 242
F.Supp.2d 1333, 1342 (S.D.Pa. 2003), the court therein merely cited to the <u>Johnson</u> case, cited <u>supra</u>, and not inquiry
of the plaintiff's request was ever done..  The case of <u>Karr v. Wal-Mart Stores, Inc.</u> a one page unpublished opinion
(containing an incorrect citation and spelling errors on a citation) is devoid of facts, persuasive or otherwise.  The
case in <u>Karr</u> cited in support of the proposition, <u>Gaston v. Bellingrath Gardnes [sic] & Homes</u> 167 F.3d 1361 (11th
Cir. 1999) is an employment law case.  Even in the inapplicable employment law context, however, "Once a
qualified individual with a disability has requested provision of reasonable accommodation, the employer must
make a reasonable effort to determine the appropriate accommodation." *Id.* [emphasis added].  Jon Muse most
clearly requested the ability to shop at Home Depot, and requested Home Depot's understanding of his disability,
and understanding that would have allowed him to shop there.  It was Home Depot that refused "make a reasonable
effort to determine an appropriate accommodation."

rejected.  Home Depot, both directly through its head cashier, assistant store managers, and its legal counsel, made it clear that any request for an accommodation was futile.

The futile gesture language of Title III is taken from <u>Teamsters v. U.S.</u>, 431 U.S. 324, 366 (1977) where the Court held that plaintiffs who actually did not apply for promotions nevertheless could challenge the employer's racially discriminatory seniority system under Title VII of the Civil Rights Act of 1964, codified as amended at 42 U.S.C. §2000e, *et seq.*, if they could show that they would have applied for this job if not for the employer's discriminatory practices. The Court reasoned that "[w]hen a person's desire for a job is not translated into a formal application [request] solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application." <u>Id.</u>  Congress specifically intended that <u>Teamsters</u>' futile gesture reasoning be applied to ADA claims. <u>See</u> H.Rep.No. 101-485(ii) at 82-83 (1990) reprinted in 1990 U.S.S.C.C.A.N. 303, 365 ("The Committee intends for this doctrine to apply to this title.")

Thus, under the ADA, once a plaintiff actually has become aware of discriminatory conditions existing at a public accommodation, and thereby is deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury.  <u>See</u> <u>also</u> <u>Davoll v. Webb</u>, 194 F.3d 1116, 1132-33 (10th Cir. 1999)

(disabled employee not required to initiate interactive process leading to reasonable accommodation where employer has made clear it will not engage in the interactive process). So long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues. See Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133 (9th Cir. 2002) (individual with paraplegia who visited inaccessible store on two occasions did not need to ask for any further specific accommodations before bringing suit).

In a strikingly similar suit, Dudley v. Hannaford Bros., LLC, 333. F.3d 299, 306 (1st Cir. 2003), Dudley was refused to be served alcoholic beverages because his behavior appeared affected by severe intoxication. Hannaford continue to refuse him the sale of alcohol even after it was explained to them that his gait and other drunken-appearing behavior arose from a prior head injury. In such a circumstance, Dudley did not need to request any specific accommodation that would establish that he was not inebriated. Id.

Home Depot relies upon Bercovitch v. Baldwin School, Inc., 133 F.3d 141 (1st Cir. 1998) for the proposition that it need not alter its core values. Home Depot describes the findings and holdings in Baldwin School as "it was unreasonable to require a non-special needs school to provide a student with an exemption from the normal operation of its disciplinary code based upon the student's attention deficit hypersensitivity disorder (ADHD)." As is now typical

for Home Depot's citation of legal authorities, there are several salient distinctions that make the case inapplicable, in addition to that it was located in a school setting, such that there were other schools that the boy could attend.  Home Depot 's argument would preclude Muse from visiting any retail establishment.  On a more fundamental level, though, the case simply is miscited..  What the Court actually found and held were the following:

> Jason has attended the school since pre-kindergarten. Over the years Jason has performed extremely well academically, but has had consistent behavioral problems, **which the school made efforts to accommodate** [emphasis added] . . .
>
> . . .
>
> Jason's behavior included the use of disrespectful language, persistent violations of classroom rules, and defiance of teachers' requests. Frequently Jason would refuse to settle down at the beginning of class, making it impossible for the teacher to begin lessons. On numerous occasions he made derogatory comments towards other students and teachers, including swearing at other students and teachers, and calling his teachers liars. **The new principal, Nancy Pagan, met with the Bercovitches and took several steps to accommodate Jason's individual needs [emphasis added]…**
>
> Jason's disruptive and disrespectful antics reached a zenith on January 15, 1997, when his behavior became so extreme and incorrigible that the school suspended him indefinitely. This particular event started with Jason calling a teacher unacceptable names in front of other children, after the teacher had asked Jason to keep quiet. Jason was brought to the Principal's office, and he denied ever saying anything wrong. The Principal tried to discuss the matter with Jason, but his anger grew and he began kicking the principal's desk, screaming at the teacher in the room, and saying he did nothing wrong. When the Principal phoned Mrs. Bercovitch, Jason stormed out of the office,

kicked the door, stormed down the corridor, ripped everything off of a bulletin board, kicked a lost and found box, and finally, at the Principal's pleading, returned to the Principal's office. The Principal felt the situation was completely*145 out of control, and contacted the Headmaster to come and meet with her and Mrs. Bercovitch. The Headmaster told Mrs. Bercovitch that **the school felt that it had tried everything with Jason and had no other option but to suspend him.  [emphasis added]**

**Only under these circumstances**, did the Court hold that:

It was beyond the power of the district court to order a school to suspend its normal codes of conduct in order to tolerate disruptive and disrespectful conduct when that behavior impaired the educational experience of the other students and significantly taxed the resources of the faculty and administration.

It is disingenuous, to say the least, for Home Depot to rely on such a case.  In Baldwin School, only after years of efforts to accommodate the individual was the institution forced to concede that it could no longer help him.  In the instant case, Home Depot has not tried anything to accommodate Muse; nor is Muse's behavior disruptive in a manner anywhere close to the student in Baldwin School.

Home Depot cites to a case, State v. Hoshijo, 102 Haw. 307 (2003) for the proposition that the word "nigger" is "perhaps the most offensive and inflammatory racial slur in English."  In a subsequent case, however, the Hawai'i Supreme Court distinguished its holding regarding the following circumstances:

There is no question that Doe suffers from a chronic and serious mental illness. She has been diagnosed as suffering from schizophrenia, paranoid type, as well as schizoaffective disorder, bipolar type, and has a history of: paranoid, persecutory

delusions; responding to internal stimuli, as manifested by her talking to herself,

gesturing, and engaging in purposeless behaviors; disturbed sleep; psychomotor

agitation; disorganized thinking; rambling speech; lack of insight; and poor

judgment. While she apparently has not been physically violent in the past, she

often directs loud racist, inflammatory remarks at others, often in their faces,

prompting concerns that she will provoke physical retaliation against her. During

previous stays in mental institutions and halfway houses, Doe's words have led to

angry confrontations with other patients and staff.  And thus the Hawai'i Supreme

Court in In Re Doe, 102 Haw. 528, 555 (2003) held that Doe was neither a danger

to herself or others, and commented that:

> Regrettably, the type of behavior exhibited by Doe is not uncommon
> on the streets of many of America's larger cities, including Honolulu.
> We would like to think that most urban residents would realize that
> individuals such as Doe are mentally ill and respond with compassion,
> rather than anger and violence, when confronted by such individuals.

Finally, Home Depot provision of goods and services requires no

fundamental alteration to services for Jon Muse during the short time of the few

days that he would be shopping in its stores.

### 2.   H.R.S. §347-13(a)

Defendant once again seeks to characterize Plaintiff's disability as

something other than a "physical" disability, and therefore not covered by the

statute.  Home Depot does not submit any facts relative to Muse's neurological

impairment. This Court already has ruled that the Statute applies. Dr. Zinner's and Dr. Sheehan's opinions establish that Muse's impairment is physiologically-based, not merely an emotional disability. <u>See</u> Defendant's Exhibit A-6 (Dr. Sheehan's Opinion that "This condition [Tourette Syndrome" is biological in etiology, not the product of willful behavior. As argued successfully against Home Deport's earlier Motion to Dismiss, Tourette Syndrome is a physical disability: it is inherited, it affects the physiological functioning of the brain, which in turn affects his control of his vocal cords in definite patterns. <u>See</u> Dr. Zinner's Report, Exhibit 2. If Defendant's argument were to prevail, than someone with a neurological disorder rendering that person deaf, dumb, or paralyzed would not qualify for the statute's protections**.**

### 3.    Defendant's Argument of No Discriminatory Practice

Defendant once again moves to dismiss Count III of Plaintiff's complaint, and once again fails to offer any evidence or any case law to support its attempted "second bite at the apple." [11]

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff Jon Muse respectfully requests that this honorable Court GRANT his Motion for Partial Summary Judgment on the issue that he is a person with a disability entitled to the protections of the ADA and

---

[11]  On its Motion to Dismiss, Defendant cited to <u>Doe v. Kahala Dental Group</u>, 72 Haw. 150 (1991), a case completely at odds with its purported interpretation of it. In its Motion for Summary Judgment, Defendant abandons the <u>Kahala Dental Group</u> case, and any other case law, as well.

DENY Defendant's Motion for Summary Judgment in its entirety.    Otherwise, Plaintiff will have no where to obtain needed essentials like food, clothing, house wares, and home improvement items at prices available to the rest of our society, or otherwise.    Moreover, if Defendant prevails, Mr. Muse will, by extension, be unable to enter any place of public accommodation; Defendant will have succeeded in making him a pariah, unfit for human interaction, all because he utters a few words that most teenagers, male or female, could care less about and use on a familiar basis.

DATED: Honolulu, Hawai'i, September 18, 2006.

/S/ STANLEY E. LEVIN

_____

STANLEY E. LEVIN
BRUCE  F. SHERMAN
THOMAS F. FEENEY
Attorneys for Plaintiff
JON MUSE