LEXSEE 2001 US DIST. LEXIS 6489

**CORA L. HAMPTON, Plaintiff, v. WILLIAM HENDERSON, Postmaster General, Defendant.**

No. C 00-2529 SI

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

*2001 U.S. Dist. LEXIS 6489*

May 1, 2001, Decided
May 1, 2001, Filed

**DISPOSITION:** [*1] Defendant's motion for summary judgment GRANTED.

**CORE TERMS:** clock, disability, summary judgment, Rehabilitation Act, accommodation, documentation, supervisor, pretext, prima facie case, doctor, disparate treatment, physical disability, accommodate, supplemental, discovery, modified, genuine, duty, final decision, clocking, treated differently, similarly situated, nondiscriminatory, investigated, stress, intentional discrimination, employment discrimination, reasonable accommodation, restraining order, hearing date

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Standards > Legal Entitlement*
*Civil Procedure > Summary Judgment > Standards > Materiality*
*Civil Procedure > Summary Judgment > Supporting Materials > Affidavits*
[HN1] The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Fed. R. Civ. P. 56(c)*.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants*
*Civil Procedure > Summary Judgment > Supporting Materials > Affidavits*
[HN2] In a motion for summary judgment, if the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in *Fed. R. Civ. P. 56*, specific facts showing that there is a genuine issue for trial.

*Civil Procedure > Summary Judgment > Evidence*
*Civil Procedure > Summary Judgment > Supporting Materials > Affidavits*
[HN3] In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the nonmoving party. The evidence presented by the parties must be admissible. *Fed. R. Civ. P. 56(e)*. Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. Hearsay statements found in affidavits are inadmissible.

*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Enforcement > Jurisdiction*
[HN4] The jurisdictional scope of a Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000e et seq.*, claimant's court action depends upon the scope of both the Equal Employment Opportunity Commission (EEOC) charge and investigation. Courts must give the EEOC charge a broad construction because they are often framed by those without technical knowledge required for formal pleading.

*Labor & Employment Law > Discrimination > Disability Discrimination > Federal & State Interrelationships*



Case 1:04-cv-00154-DAE-BMK    Document 209-4    Filed 10/03/2006    Page 2 of 8

Page 2
2001 U.S. Dist. LEXIS 6489, *

*Labor & Employment Law > Discrimination > Disability Discrimination > Rehabilitation Act*
*Labor & Employment Law > Discrimination > Disparate Treatment > Proof > Burdens of Proof*
[HN5] To prevail on a claim of disability discrimination under the Rehabilitation Act of 1973 (Act), *29 U.S.C.S. § 791* et seq., a plaintiff must prove: 1) that she is disabled within the meaning of the Act; 2) that she is otherwise able to perform the essential functions of the job; 3) that the defendant is a federal agency, and 4) that the defendant took adverse employment action solely because of her disability.

*Labor & Employment Law > Discrimination > Disability Discrimination > Federal & State Interrelationships*
[HN6] The Rehabilitation Act of 1973, *29 U.S.C.S. § 791* et seq., is unique in its requirement that a person's disability serve as the sole impetus for a defendant's adverse action against the plaintiff.

*Labor & Employment Law > Discrimination > Disparate Treatment > General Overview*
[HN7] The McDonnell Douglas/Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000e* et seq., burden shifting analysis is applied to determine whether an employer's action was done solely because of the plaintiff's disability where the employer disavows that any adverse employment action resulted due to an employee's disability. Under this scheme, the plaintiff bears the burden of raising a prima facie case of discrimination either by direct evidence of discriminatory intent or by inference, which requires demonstrating that the employer took adverse action or treated plaintiff differently from other similarly situated individuals not within plaintiff's protected class.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
*Labor & Employment Law > Discrimination > Disparate Treatment > General Overview*
[HN8] Once the plaintiff establishes a prima facie case of employment discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. If the employer does so, then plaintiff, in order survive summary judgment, must demonstrate that the reason the employer offered is pretext for another, discriminatory motive. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

*Civil Procedure > Discovery > Methods > Requests for Production & Inspection*
*Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview*
*Civil Procedure > Summary Judgment > Opposition > General Overview*
[HN9] To prevail on a request for additional discovery under *Fed. R. Civ. P. 56(f)*, plaintiffs must submit an affidavit demonstrating (1) the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that those sought-after facts are essential to resist the summary judgment motion.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Denials*
*Civil Rights Law > Protection of Disabled Persons > Rehabilitation Act > Accommodation*
*Labor & Employment Law > Discrimination > Disability Discrimination > Reasonable Accommodation > Undue Hardship*
[HN10] A claim of reasonable accommodation under the Rehabilitation Act of 1973, *29 U.S.C.S. § 791* et seq., involves the same analysis as a claim under the Americans with Disabilities Act, *42 U.S.C.S. § 12101* et seq. There are three elements in a claim of failure to reasonably accommodate: (1) plaintiff must be a qualified handicapped individual; (2) the agency must make reasonable accommodation to the handicap; and (3) the accommodation need not be made if it would impose an undue hardship.

**COUNSEL:** For CORA L. HAMPTON, Plaintiff: Kimberly Draves Daren, United States Postal Service, Law Department, Burlingame, CA.

For CORA L. HAMPTON, Plaintiff: Gail Killefer, Patricia Benton, U.S. Attorney's Office, San Francisco, CA.

For CORA L. HAMPTON, Plaintiff: Robert A. Salinas, Sundeen & Salinas, Oakland, CA.

**JUDGES:** SUSAN ILLSTON, United States District Judge.

**OPINION BY:** SUSAN ILLSTON

**OPINION:**

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

On February 16, 2001, the Court heard argument on defendant's motion for summary judgment. Both sides

Case 1:04-cv-00154-DAE-BMK   Document 209-4   Filed 10/03/2006   Page 3 of 8

Page 3
2001 U.S. Dist. LEXIS 6489, *

had submitted fully briefed papers, and the Court was prepared to render a decision at that time. n1 However, plaintiff, who had been *pro se* until then, appeared at the hearing represented by an attorney whom she had just retained the previous day. It was agreed that plaintiff's new attorney should have an opportunity to review the papers and submit supplemental briefings as he saw fit. Counsel did so on March 9, 2001, and defendant responded with a brief supplemental reply shortly thereafter. The matter has been submitted and, pursuant to Local Rule 7-1(b), the Court finds the motion [*2] suitable for decision without oral argument. Having carefully considered the arguments of the parties and all the papers submitted, the Court hereby GRANTS defendant's motion, for the reasons set forth below.

> n1 The motion was first filed on October 5, 2000, with a hearing date of November 17, 2000. The Court moved the hearing date first to January 5, 2001 and then to January 19, 2001. Upon plaintiff's request, the hearing date was finally moved to February 16, 2001.

**BACKGROUND**

On July 12, 2000, plaintiff Cora L. Hampton ("Hampton") filed a complaint against her employer, the United States Postal Service ("USPS"), alleging discrimination in the form of disparate treatment and failure to accommodate on the basis of mental disability (stress) and physical disability (back injury), in violation of the Rehabilitation Act of 1973, as amended, *29 U.S.C. § 791* et seq. Hampton works as a mail handler at defendant's San Francisco Bulk Mail Center in Richmond, California. Declaration of Cora [*3] Hampton in Oppo. S.J. (Mar. 9, 2001) ("Hampton Decl.") P 1. Since late 1997, USPS has allowed Hampton to work on a modified duty status to accommodate a back injury she sustained on the job. Id. at P 3; Declaration of Patricia Benton in Supp. S.J. ("Benton Decl.") P 3, Ex. A (modified duty job offer dated Oct. 15, 1997). Hampton's modified duty position was designed to meet her medical restrictions, which included no lifting greater than 10 pounds, no bending, pushing, squatting and climbing, and limited standing and walking. Benton Decl., Ex. A at 2.

In the present lawsuit, Hampton alleges three incidents of discrimination: 1) denial of her requests for leave between February 10 and March 15, 1999; 2) a March 16, 1999 incident involving her employer's handling of PS Forms 3971 (forms requesting leave); and 3) a March 26, 1999 incident where plaintiff was dismissed for the day due to her failure obey orders by her supervisor to clock in. See 7/1/99 Hampton Affid. (attached to Hampton Decl., Ex. A); 5/3/00 Hampton Stmt. (attached at Benton Decl., Ex. C). The facts relating to these events as stated below are undisputed except where noted.

**1. Denial of Requests for Leave** [*4] **of Absence**

On February 10, 1999, plaintiff's supervisor Ralph Patterson ("Patterson") found her talking to a co-employee in a work area during her 9 a.m. break. 5/3/00 Hampton Stmt. at 1. Patterson told plaintiff that she was not allowed to be in the area as required by a restraining order filed against her by another co-employee. Id. Patterson also told Hampton that he would have her "put out of the building" if she remained in the area. Id. Hampton requested but was denied a shop steward. Id. She returned to her work area and, later that day before clocking out for lunch, submitted two requests on a PS Form 3971 for leave of absence for the remainder of the day. See id. Hampton claims that she had accrued sick and annual leave at that time. Hampton Decl. P 6. In her first request, Hampton claimed that she was "stressed from harassment and threat from supervisor"; and in the second request, Hampton simply claimed "stress." Benton Decl. P 7, Ex. E (PS Forms 3971, Feb. 10, 1999). Patterson denied both requests, claiming that plaintiff's asserted reasons for needing leave were "inaccurate and unsupported," and for the "need of the service." Id.; 8/9/00 Patterson [*5] Affid. (attached at Benton Decl., P 14, Ex. L).

Upon returning from lunch, Hampton heard that police officers from the City of Richmond were outside the building, and she told USPS police that they were probably called because of her. 5/3/00 Hampton Stmt. at 1. However, nothing happened the remainder of the day; Hampton was not approached by Richmond police or USPS police. Hampton finished her shift and left work as usual, but did not return to work until March 16, 1999, claiming that she suffered from "excessive stress related to the incident when the police were called to the work for no apparent reason." Id.

Hampton filed a grievance with her union, which was settled by USPS Management "insuring Ms. Hampton . . . . will not be discriminated against in any way. She will be treated fairly and with all due respect." Benton Decl., P 8, Ex. F (Step 2 Grievance settlement).

On February 12, 1999, while Hampton was absent from work, she called her supervisor and requested sick leave under Continuation of Pay ("COP") status. See Benton Decl., Ex. G (EEO charge narrative) at 1, and Ex. K (PS Form 3971 dated Feb. 12, 1999). She brought documentation from her doctor to Patterson [*6] on February 18, 1999. Benton Decl., Ex. G (EEO charge narrative) at 2. Hampton's documentation consisted of an undated note from Doctor Charles Ferris, stating without explanation that Hampton could not "meet the demands

Case 1:04-cv-00154-DAE-BMK   Document 209-4   Filed 10/03/2006   Page 4 of 8

Page 4
2001 U.S. Dist. LEXIS 6489, *

of her employment" and needed disability for about 2 to 4 weeks. See Benton Decl., Ex. H (doctor's note). Patterson filled out a PS 3971 Form on Hampton's behalf, dated February 12, 1999, requesting COP status. 8/9/00 Patterson Affid.

On March 22, 1999, Hampton's request for COP status was denied by Inger Wilson ("Wilson") because Hampton was "not entitled to COP." See Benton Decl., Ex. K. Wilson was an Injury Compensation Specialist who had authority and discretion to approve or disapprove a COP request. 8/9/00 Patterson Affid. Hampton claims that she was not paid for the time she was on leave from February 12 through March 15, 1999. Benton Decl., Ex. G (EEO charge narrative) at 2.

### 2. PS Forms 3971

Hampton returned to work on March 16, 1999, where she found that many of her PS Forms 3971 were left in a time rack behind her time cards by supervisor Juanita Minter. 7/1/99 Hampton Affid. at 2; 7/8/99 Minter Affid. (attached at Benton Decl., Ex. O). [*7] Hampton had requested that Minter not place her PS Forms 3971 behind the time rack, even though it was common practice to do so. 7/8/99 Minter Affid. Hampton also asked for her 1998 PS Forms 3971 from Minter, but was refused. 7/1/99 Hampton Affid. at 2. Minter explained that she had given Hampton all the PS Forms 3971 in her possession and that Inger Wilson would have the rest of her forms. 7/8/99 Minter Affid.; 8/8/00 Minter Affid. (attached at Benton Decl., Ex. P).

### 3. March 26 Incident

On March 26, 1999, Hampton arrived to work early and waited by the time-clock for her time to clock in at 6:30 a.m. 7/1/99 Hampton Affid. at 2. Hampton claims she was waiting for the area to clear of other employees in order to avoid people bumping into her or stumbling over her cane. Hampton Decl. P 7. Patterson approached Hampton and told her to clock in. Id.; 8/3/99 Patterson Affid. (attached at Benton Decl., Ex. R). After Hampton explained her reason for waiting, she claims that Patterson responded, "I'm giving you a direct order to clock in now or I will call security and have you put out of the building." 7/1/99 Hampton Affid. at 2; 5/3/00 Hampton Stmt. at 2. Hampton did not comply [*8] and Patterson had a USPS police officer escort her out of the building and placed on non-duty, non-pay status. 7/1/99 Hampton Affid. at 2; Benton Decl., Ex. Q (Step 2 Grievance settlement). According to Patterson, he ordered Hampton to clock in because it was time for her to start working. 8/3/99 Patterson Affid. Furthermore, Patterson was concerned about when Hampton clocked in because she had been clocking in early in the past. Id. Patterson dismissed Hampton for the day because she had disobeyed several direct orders to clock in. Id. Hampton did not return to work until July 28, 1999, and was not paid during this period. 5/3/00 Hampton Stmt. at 2. Hampton filed a grievance through her union, which was settled by an agreement to compensate Hampton for one full day of work to make up for her dismissal on March 26. See Benton Decl., Ex. Q. Hampton was not paid for the rest of the time she missed work.

On May 18, 1999, Hampton filed an employment discrimination charge with the Equal Employment Opportunity Commission ("EEOC") citing the incidents discussed herein.. The EEOC issued a final decision against Hampton, finding that she failed to establish a prima facie case of [*9] disability discrimination with respect to either disparate treatment or denial of reasonable accommodation. See Compl., attachment at 2. Hampton appealed the final decision, and on April 13, 2000, the Office of Federal Operations vacated and remanded for further investigation. Id. at 2. The remand order also included a Notice of Right to Sue letter, which prompted plaintiff to file this lawsuit. See id. at 7. On August 16, 2000, the EEOC completed its supplemental investigation, coming to the same conclusion as its initial final decision. See Supplemental Declaration of Patricia Benton (Jan. 31, 2001), Ex. A. Defendant now moves for summary judgment.

### LEGAL STANDARD

[HN1] The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*.

[HN2] In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the [*10] materials on file that it believes demonstrate the absence of any genuine issues of material fact," the burden of production then shifts so that "the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987)* (citing *Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986))*.

[HN3] In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the nonmoving party. See *T.W. Electric, 809 F.2d at 630-31* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)); Ting*

Case 1:04-cv-00154-DAE-BMK   Document 209-4   Filed 10/03/2006   Page 5 of 8

Page 5
2001 U.S. Dist. LEXIS 6489, *

v. *United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. *Fed. R. Civ. P. 56(e)*. Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat [*11] summary judgment. See *Falls Riverway Realty, Inc. v. City of Niagara Falls, 754 F.2d 49 (2d Cir. 1985); Thornhill Publ'g Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979)*. Hearsay statements found in affidavits are inadmissible. See, e.g., *Fong v. American Airlines, Inc., 626 F.2d 759, 762-63 (9th Cir. 1980)*.

### DISCUSSION

Plaintiff's complaint consisted of an employment discrimination form-complaint accompanied by a decision of the Office of Federal Operations remanding the Equal Employment Opportunity Commission's final decision on Hampton's EEO charge. The complaint does not provide detailed allegations or claims, but instead appears to rely on the allegations and claims investigated by the EEOC. For purposes of her federal civil action, the Court will adopt plaintiff's theories and allegations as contained in the EEOC investigation and decision. See *Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir. 1990)* (citing *Green v. Los Angeles Co. Superintendent of Schools, 883 F.2d 1472, 1476 (9th Cir. 1989))* ("[HN4] The jurisdictional scope of a Title VII claimant's court action depends upon the scope [*12] of both the EEOC charge and investigation."). Courts must give the EEO charge a broad construction because they are often framed by those without technical knowledge required for formal pleading. *Kaplan v. International Alliance of Theatrical and Stage Employees, 525 F.2d 1354, 1359 (9th Cir. 1975)*.

The EEOC investigated Hampton's allegations in her EEO charge under a theory of disparate treatment and a theory of denial of reasonable accommodations, both in violation of the Rehabilitation Act. See Compl., attachment at 1. [HN5] To prevail on a claim of disability discrimination under the Rehabilitation Act, Hampton must prove: 1) that she is disabled within the meaning of the Act; 2) that she is otherwise able to perform the essential functions of the job; 3) that the defendant is a federal agency, and 4) that the defendant took adverse employment action solely because of her disability. n2 See *Wong v. Regents of University of California, 192 F.3d 807, 816 (9th Cir. 1999); Mustafa v. Clark County Sch. Dist., 157 F.3d 1169, 1174 (9th Cir. 1998); Dempsey v. Ladd, 840 F.2d 638, 640 (9th Cir. 1988)*. Defendant does not challenge [*13] Hampton's proof under the first three elements. Reply at 2. For purposes of this motion, the Court will evaluate whether Hampton has raised genuine issues of material fact with respect to the fourth element of a Rehabilitation Act claim, under theories of disparate treatment and denial of reasonable accommodations.

n2 [HN6] The Rehabilitation Act is unique in its requirement "that a person's disability serve as the *sole* impetus for a defendant's adverse action against the plaintiff." *Amir v. St. Louis Univ., 184 F.3d 1017 1029 n.5 (8th Cir. 1999)* (emphasis in original).

### A. Disparate Treatment

The Ninth Circuit has adopted [HN7] the McDonnell Douglas/Title VII burden shifting analysis to determine whether an employer's action was done solely because of the plaintiff's disability where, as here, the employer disavows that any adverse employment action resulted due to an employee's disability. See *Mustafa, 157 F.3d at 1175-76; Lucero v. Hart, 915 F.2d 1367, 1371 (9th Cir. 1990);* [*14] *Smith v. Barton, 914 F.2d 1330, 1339 (9th Cir. 1990)*. Under this scheme, the plaintiff bears the burden of raising a prima facie case of discrimination either by direct evidence of discriminatory intent or by inference, which requires demonstrating that the employer took adverse action or treated plaintiff differently from other similarly situated individuals not within plaintiff's protected class. *Kortan v. California Youth Authority, 217 F.3d 1104, 1113 (9th Cir. 2000)* ("a prima facie case of employment discrimination [requires a showing that plaintiff] . . . suffered an adverse employment action, or was treated differently from others similarly situated.") (citing *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)); Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994)*.

[HN8] Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. *Wallis v. J.R. Simplot Co., 26 F.3d at 889*. If the employer does so, then plaintiff, in order survive summary judgment, [*15] must demonstrate that the reason the employer offered is pretext for another, discriminatory motive. Id. "She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy o credence." *Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981* (citing *McDonnell Douglas, 411 U.S. at 804-05, 93 S. Ct. 1817)*.

There is no direct evidence that USPS committed the challenged acts solely because o Hampton's mental or physical disability. Hampton must therefore establish her prima facie case of discrimination by inference. However, Hampton failed to present any evidence that other similarly situated individuals without disabilities were treated differently. n3 The record suggests the contrary -- that Hampton was treated the same as any other similarly situated employee.

n3 Plaintiff makes a request in her supplemental opposition papers for additional discovery under Rule 56(f). Suppl. Oppo. at 5. [HN9] To prevail on such a request, plaintiffs must submit an affidavit demonstrating "[(1)] the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that those sought-after facts are 'essential' to resist the summary judgment motion." *State of California v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998).* Plaintiff only states that she needs discovery because she "has not had the opportunity to gather evidence that she was treated differently from other similarly-situated employees." Supp. Oppo. at 5:12-14. This demonstration falls far short of the necessary showing for additional discovery under Rule 56(f). In particular, plaintiff provides no reason to believe that the facts sought exist.

[*16]

Patterson testified that he has "approved and disapproved other employees' request for leave as warranted," including past requests by Hampton. 8/9/00 Patterson Affid. Hampton herself admits that she does not know "if Mr. Patterson have denied another employee leave because they were ill." 7/1/99 Hampton Affid. With respect to the March 26 incident, Patterson has never had to deal with an employee other than Hampton who did not obey an order to clock in. 8/3/99 Patterson Affid. Hampton did not present evidence showing what Patterson would do in such a situation, and if his response would be different from how he treated Hampton. Furthermore, Hampton's PS Forms 3971 were placed in the time rack in accordance with common practice applicable to all employees. Id. at P 17, Ex. O. The evidence on record does not raise an inference that USPS discriminated against Hampton on account of her disabilities.

Assuming Hampton could carry her burden of establishing a prima facie case, she would fail to raise a genuine issue of material fact that defendant's legitimate, nondiscriminatory reasons were pretext. Hampton does not challenge Patterson's authority to grant or deny a request for leave [*17] and does not argue that he exceeded his discretion. She rather takes issue with Patterson's exercise of his discretion in denying her leave request. See Opposition 5-6. Yet, it is undisputed that Hampton was in violation of a restraining order when Patterson told her to return to her work area on February 10. This fact is consistent with Patterson's grounds for denying Hampton's requests for leave, that is, that Hampton's asserted reasons for needing leave were inaccurate and unsupported. 8/3/99 Patterson Affid.; 8/9/00 Patterson Affid. Faced with this explanation, Hampton provides no evidence urging suspicion or otherwise suggesting that Patterson's answer was pretext.

Hampton also does not dispute that Inger Wilson had authority and discretion to grant or deny her February 12 request for leave under COP status. See 8/9/00 Patterson Affid. Hampton's leave request was denied due to a lack of supporting medical documentation. See Benton Decl., Exs. K and N. It is undisputed that such a defect can prevent granting of leave. Id. at Ex. M (handbook detailing procedure to request COP status). The only documentation submitted to support Hampton's request was an unsigned [*18] doctor's note stating in conclusory fashion (without any factual explanation) that Hampton needed leave. See id. at Ex. H. The doctor's note -- Hampton's own evidence -- corroborates Wilson's reason for denying Hampton's COP leave request for insufficient documentation. No other evidence is offered to suggest that Wilson's legitimate reason for denying COP status was pretext.

With respect to Hampton's complaint about the PS Forms 3971, Hampton presented no evidence to dispute Juanita Minter's nondiscriminatory explanations for the incident occurring on March 16, 1999. See 7/8/99 Minter Affid. (attached at Benton Decl., Ex. O); 8/8/00 Minter Affid. (attached at Benton Decl., Ex. P). Hampton does not even address Minter's explanations in her opposition briefs, apparently relying on her original allegation that Minter's actions were done because of Hampton's disability. This is insufficient to demonstrate that Minter's explanations are pretext.

There also is no triable issue that the March 26 incident involved intentional discrimination. Hampton does not dispute that she failed to comply with Patterson's direct orders to clock in, even after he warned her that she would be escorted [*19] out of the building. See 7/1/99 Hampton Affid. at 2-3. There is a factual dispute over particular details of the exchange, but nothing denies the fact that Hampton was dismissed for the day because of her failure to obey Patterson's orders. Hampton claims that she was waiting for other employees to clear the area to avoid hurting herself or other employees when Patterson approached her and gave his order, even though it was not time for Hampton to clock in. n4 7/1/99 Hampton Affid. 2-3; Hampton Decl. P 7. She ex-

Case 1:04-cv-00154-DAE-BMK   Document 209-4   Filed 10/03/2006   Page 7 of 8

Page 7
2001 U.S. Dist. LEXIS 6489, *

plained to Patterson that her back was hurting and that she did not want others bumping into her or tripping over her cane. 7/1/99 Hampton Affid. 2-3; Hampton Decl. P 7. On the other hand, Patterson states that he ordered Hampton to clock in because it was past her start time. n5 8/3/99 Patterson Affid.

> n4 Hampton claims that Patterson gave her the order two minutes before her start time. Hampton Decl. P 7.

> n5 Hampton's own evidence suggests an additional nondiscriminatory reason for Patterson's actions. A statement by a shop steward, submitted in support of Hampton's opposition, indicated that Patterson also wanted Hampton to clock in because Joan Davis, the employee who had a restraining order against Hampton, was in the area. See Opposition, Ex. 2.

[*20]

The evidence may raise a dispute over whether Patterson acted fairly in requiring Hampton to clock in. It does not, however, suggest that Patterson's reason for dismissing Hampton for the day -- disobedience to several orders to clock in -- was pretext for intentional discrimination on account of Hampton's disabilities. USPS also argues that plaintiff has failed to demonstrate that she has suffered adverse employment actions. Motion 7-9. The Court does not reach this argument, finding instead that Hampton has failed to raise a triable issue of intentional discrimination.

**B. Denial of Reasonable Accommodation**

The EEOC also investigated Hampton's allegations under a theory of denial of reasonable accommodations. See Compl., attachment at 1. [HN10] A claim of reasonable accommodation under the Rehabilitation Act involves the same analysis as a claim under Title I of the Americans with Disabilities Act ("ADA"). See *29 U.S.C. § 794*(d) (directing that standards used to determine when violation of Title I of the ADA has occurred also apply to violation of Rehabilitation Act, § 794); *Zukle v. Regents of the Univ. of California, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999)* [*21] (observing that "courts have applied the same analysis to claims brought under both statutes"). There are three elements in a claim of failure to reasonably accommodate:

> (1) plaintiff must be a "qualified" handicapped individual; (2) the agency must make "reasonable accommodation" to the handicap; and (3) the accommodation need not be made if it would impose an "undue hardship."

*Fuller v. Frank, 916 F.2d 558, 561 (9th Cir. 1990).*

Hampton does not appear to challenge USPS's procedure in granting or denying leave. She presented no evidence that the leave procedure was unduly burdensome or treated her differently than others similarly situated due to her disability. After all, Hampton has obtained leave in the past for reasons related to her physical disability. See 5/3/00 Hampton Stmt. at 3; Oppo., Ex. 6 (Dec. 16, 1994 ltr. from Dr. T.D. Schmitz releasing Hampton back to work). Hampton also does not dispute the documentation requirements cited by defendant when justifying Inger Wilson's denial of Hampton's leave request of February 12 due to insufficient documentation.

Hampton's claim that USPS failed to reasonably accommodate her disability appears [*22] to focus directly on the particular denials of her requests for leave on February 10 and 12, and March 26. See Opposition 6 ("Patterson failed to recognize that a request, for medical reasons, to be relief from under his authority was a request to be accommodated."). However, as discussed above, the evidence shows beyond a genuine dispute that defendants had legitimate, nondiscriminatory reasons for denying Hampton's requests on each of those occasions. Hampton did not present evidence to dispute defendant's reasons or the underlying facts. The evidence also shows that defendants have accommodated Hampton's physical disability before, for instance, offering her modified duties as a mail rewrapper in accordance with her doctor's recommendations. See Benton Decl. P 3, Ex. A.

In her supplemental opposition brief, Hampton argues for the first time that USPS failed to engage in an interactive process and failed to reasonably accommodate her physical disability (back injury) by refusing to let her wait for the clock area to clear before clocking in. See Suppl. Oppo. 5-8. This argument, which was never raised with either USPS or the EEOC before, is unpersuasive. Plaintiff does [*23] not argue, and the facts do not support, that plaintiff ever requested any accommodation with respect to clocking in before the morning of March 26, and it is not clear that her discussion with her supervisor on that morning could fairly be characterized as a request for accommodation, rather than an argument about whether Hampton would comply with her supervisor's instruction to clock in. Hampton later grieved and settled a claim concerning this incident by receiving eight hours pay for March 26. See Benton Decl., Ex. Q. Under all these circumstances, this eleventh hour argument is insufficient to save plaintiff's complaint.

Plaintiff has failed to raise a genuine issue of material fact to support her claim that USPS denied reasonable accommodations for her disability. Defendant therefore is entitled to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: May 1, 2001

SUSAN ILLSTON

United States District Judge

**JUDGMENT** - ENTERED IN CIVIL DOCKET 5-14-01

In accordance with this Court's Order Granting Defendant's Motion for Summary Judgment dated Mary 1, 2001, judgment [*24] is hereby entered.

**IT IS SO ORDERED AND ADJUDGED.**

Dated: May 1, 2001

SUSAN ILLSTON

United States District Judge