
OF COUNSEL:
DAVIS LEVIN LIVINGSTON GRANDE
STANLEY E. LEVIN     1152-0
851 Fort Street
400 Davis Levin Livingston Grande Place
Honolulu, Hawai'i 96813
Telephone: (808) 524-7500
Fax: (808) 545-7802
E-Mail: slevin@davislevin.com

BRUCE F. SHERMAN   5996
E-mail: failey52@hawaii.rr.com
THOMAS F. FEENEY   5546
E-mail: FeeneyatLaw@cs.com
ATTORNEY AT LAW
A Law Corporation
1164 Bishop Street, Suite 124
Honolulu, Hawai'i 96813
Tel:(808) 599-3955/Fax: (808) 599-3944

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| JON MUSE, | ) | CIVIL NO. 04-00154 DAE/BMK |
| | ) | (Civil Rights Violation) |
|       Plaintiff, | ) | |
| | ) | REPLY MEMORANDUM IN |
| vs. | ) | SUPPORT OF PLAINTIFF'S |
| | ) | MOTION FOR PARTIAL |
| HOME DEPOT USA, INC. | ) | SUMMARY JUDGMENT; |
| | ) | DECLARATION OF STANLEY E. |
|       Defendant. | ) | LEVIN; EXHIBIT "11" AND |
| | ) | CERTIFICATE OF SERVICE |
| | ) | |
| | ) | DATE:   October 16, 2006 |
| | ) | TIME:   9:00 a.m. |
| _____ | ) | CHIEF JUDGE: Hon. David A. Ezra |

REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT[1]

**I.   INTRODUCTION**

Home Depot continues to try to convince this Court that this is a Title I employment case, rather than the Title III Public Accommodation case that it is. Title I and Title III are two different statutory schemes with different motivations and concerns. *See generally Dudley v. Hannaford Bros. Co.,* 333 F.3d 299 (1st Cir. 2003)(refusing to apply Title I standards to a Title III case. "The obviousness vel non of an individual's disability has no relevance [as it would under Title I] to the mandates of Title III.").[2]  Title I addresses e-m-p-l-o-y-m-e-n-t, where the employee is necessarily representing the employer during each and every minute of a 40 or more hour work week.  Title III addresses public accommodations, run mostly by for-profit corporations, who need to service all segments of society if they expect to make money from it.  "Congress, in enacting the ADA, explicitly warned that 'overprotective rules and policies' erect discriminatory barriers to people with disabilities." *Dudley*, 333 F.3d at 310.

---

[1] Home Depot, without leave of Court, filed an amended memorandum in support of its motion for summary judgment.
[2] *Dudley* was a case in which the First Circuit found that the convenience store had arbitrary policies regarding service to persons the clerk decided could not be serviced. Because of their appearance caused the clerk to conclude the customer was not sober. The *Dudley* court thoroughly analyzed vacates where line personnel were provided the discretion to decide whether a supposedly disabled customer should receive service.

2

In Title III cases, moreover, the public accommodation's interaction with any one member or the public is typically brief, and on a usually an occasional basis, as is the case with Mr. Muse. Mr. Muse usually will not spend more than 30 minutes in a Home Depot store and visit it but perhaps once a month or once every two months. His interaction with employees at Home Depot is limited to a small fraction of his actual time in the store. It is simply appalling that Home Depot has taken the extreme position that it has in this Title III public accommodation matter

The ADA was designed to end the exclusion of people with disabilities from the workplace and from other realms of social life. As President George Bush explained upon signing the ADA:

> Today, we're here to rejoice in and celebrate another 'Independence Day,' one that is long overdue. With today's signing of the landmark Americans for [sic] Disabilities Act, every man, woman, and child with a disability can now pass through once-closed doors into a bright new era of equality, independence and freedom . . . Today's legislation brings us closer to that day when no Americans will ever again be deprived of their basic guarantees of life, liberty, and the pursuit of happiness.

President George Bush, "Remarks on Signing the Americans with Disabilities Act of 1990," (July 26, 1990), reprinted in Bernard D. Reams, Jr., et. al., eds., Disability Law in the United States: A Legislative History of the Americans with Disabilities Act of 1990, Public Law 101-336, Vol. I, Document No. 9 (1992). Home Depot's position in this case is anathema to the purposes of the Americans with Disabilities Act.

## II.     MAJOR LIFE ACTIVITY

Home Depot, despite its own treatment of Mr. Muse as someone with a disability severe enough to warrant his expulsion from its own stores, attempts to argue that his disability does not affect the major life activities such as interacting with other and working, a disability acknowledged by their own identified expert as well as by the Social Security Administration as being disabling.[3]  Home Depot now also pleads ignorance that Mr. Muse's disability substantially adversely affected the major life activities of interacting with others and working.  Home Depot's counsel questioned Mr. Muse at length on both aspects – interacting with others and working.  See e.g., Muse Deposition Transcript, p. 17:11-12 (Attorney Harris: 'How does your Tourette's limit your ability to work?") and p. 18:10-11 (Attorney Harris: "Are your relations with other people characterized on a regular basis by severe problems?"  Answer: "Yes" (at p. 19:2)).  Home Depot's argument that it has somehow been prejudiced by the use of the work "communicate" is asserted in extreme bad faith; it is directly contrary to how its attorney prepared for Mr. Muse's deposition.

---

[3]     In one of its Motions in Limine, a motion that appears to cast a dark Rule 11 shadow on its counsel, Home Depot argues that its expert, Dr. Marvitt, should be disqualified under the Daubert standards.  This Motion to disqualify its own expert comes after formally identifying that expert to the Court and, most egregiously, after forcing Mr. Muse to endure a grueling 6-hour psychological exam from this doctor who Home Depot now argues was not qualified to examine Mr. Muse regarding his disability in the first instance.  Dr. Marvitt's report, in addition to confirming that Mr. Muse is afflicted with Tourette Syndrome, also confirms that he is aware that the Social Security Administration considers Mr. Muse to be disabled severely enough to qualify him for supplemental employment income.  Such a finding casts doubt on the integrity of another of Home Depot's Motion in Limine that seeks to exclude the Social Security Administration's notice of benefits because Home Depot purportedly was unaware of it until just recently.

Home Depot's arguments completely misconstrue the nature of Jon Muse's disability – HE CANNOT CONTROL CERTAIN THINGS THAT HE SAYS OR DOES. It would not even need to be vulgar words and gestures to be so disabling. Imagine if his verbal ticks were limited to the words "tart, cake, and fruit" and his physical tick was limited to him patting the top of his head. Such lack of control of one's speaking ability and physical mannerisms would necessarily cause anyone to be severely depressed and anxious at one's lack of control over one's own body. The natural state of the community in which we live would expect him to be able to control such words and physical tics in social situations. Otherwise, he would not be given jobs that involved interacting with others. This is common sense. The fact that his verbal and physical ticks are considered vulgar by the entire society in which we live, greatly exacerbates the disability and the adverse impact on Jon Muse's ability to interact with others and his ability to work with others. Jon Muse's disability does not **prevent** him from communicating with others or from working – the ADA does not require such absolute disability to be protectable – "[a] person is considered an individual with a disability…when the individual's important life activities are restricted as to the conditions, manner, or duration under which they can be performed in comparison to most people." 23 C.F.R. Part 36, App B. § 36.104. There is no question that Jon Muse's disability qualifies for and deserves the protection of the Americans With Disabilities Act.

## III.   ACCOMMODATION – OBLIGATION TO PROVIDE

Home Depot once again argues that Mr. Muse somehow failed to request an accommodation, so therefore Home Depot has no obligation to provide one.  This is a very misleading argument, since the Rule 30(b)(6) designee, testifying on behalf of Defendant Home Depot stated: "[s]ir, I think that I've said before, we don't have a national policy on disabilities with customer."  Cooper deposition at 68:1-5.  Certainly the question of futility is relevant here-where the Defendant is a public accommodation and has no policy for accommodating persons with disabilities[4].  The Plaintiff cannot be held responsible for initiating the creation of such a policy, where the Defendant has shirked its own such obligation.

Plaintiff already has addressed this issue in its Motion for Partial Summary Judgment/Memorandum in Opposition to Home Depot's Motion for Summary Judgment.  Further on that argument, Home Depot uses certain employment law cases to buttress its position that it is Mr. Muse who has an obligation to suggest a particular accommodation.   On the one hand, Mr. Muse did suggest the accommodation – it was understanding, an understanding (implicitly through education of its employees) that Mr. Muse's utterances of a few vulgar words were not directed at anybody, and also did not mean anything – they were simply uncontrollable utterances arising from his disability.

---

[4] The Rule 30(b)(6) designee, Emory L. Cooper, testified at his deposition on June 6, 2006 that the Defendant Home Depot does not have either a national policy nor a local policy on addressing the disabilities of customers. Cooper deposition at: 43:16-20; 44:23-25; 45:1-9; 67:9-25; 68:1-5; 83:7-25; 84:1-8.  Exhibit "11".

Moreover, even were this an employment law case, it is still Home Depot's affirmative obligation under the ADA to initiate the process to identify such an accommodation. An employer has a mandatory obligation under the Americans with Disabilities Act (ADA) to engage in the reasonable accommodation interactive process, which is triggered either by (1) the employee's request for accommodation **or (2) by the employer's recognition of the need for accommodation.**

The legislative history makes clear that employers are required to engage in an interactive process with employees in order to identify and implement appropriate reasonable accommodations. The Senate Report explained that: "A problem-solving approach should be used to identify the particular tasks or aspects of the work environment that limit performance and to identify possible accommodations . . . employers first will consult with and involve the individual with a disability in deciding on the appropriate accommodation." S. Rep. No. 101-116, at 34 (1989); see also H.R. Rep. No. 101-485, pt. 2, at 65 (1990). The ADA authorizes the EEOC to issue regulations implementing the ADA. See 42 U.S.C. S 12116. The EEOC regulations outline the nature of the interactive process:

> To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

29 C.F.R.S 1630.2(o)(3).

Any doubt that the EEOC views the interactive process as a mandatory obligation is resolved by the EEOC's interpretive guidance, which directs that: **"the employer must make a reasonable effort to determine the appropriate accommodation.** The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability."  29 C.F.R. Pt. 1630, App. S 1630.9.  The EEOC's Enforcement Guidance also specifies the nature of the interactive process: "The employer and the individual with a disability should engage in an informal process to clarify what the individual needs and identify the appropriate accommodation." EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, EEOC Compliance Manual (CCH), S 902, No. 915.002 (March 1, 1999), at 5440.  The interactive process is triggered **either** by a request for accommodation by a disabled employee or by the employer's recognition of the need for such an accommodation.  An employee requesting a reasonable accommodation should inform the employer of the need for an adjustment due to a medical condition using "'plain English' and need not mention the ADA or use the phrase 'reasonable accommodation.'"  Id. at 5438.  In some circumstances, according to the EEOC, the employee need not even request the accommodation: "An employer should initiate the reasonable accommodation

8

interactive process without being asked if the employer: (1) knows that the employee has a disability, (2) knows, or has reason to know, that the employee is experiencing workplace problems because of the disability, and (3) knows, or has reason to know, that the disability prevents the employee from requesting a reasonable accommodation." Id. at 5459.

Therefore, even under its own misguided use of Title I employment standards in this Title III case, Home Depot clearly was informed of Mr. Muse's disability and the problem that that disability was causing. Home Depot is, once again, ignoring the law in trying avoid its responsibilities.

## IV. ESTOPPEL AND UNREASONABLE ACCOMMODATIONS?

Home Depot's arguments that somehow Plaintiff is estopped from shopping at Home Depot because he agreed to abide by Home Depot's directive that he not enter the store until he could control his language, pending the resolution of this lawsuit, is meritless. As set forth in Attorney Harris' own letter that seeks to have Mr. Muse "continue to stay out of it [sic] stores until he avoids using vulgar language in front of employees and customers." See Plaintiff's Exhibit 7.

Similarly, Home Depot's argument that the proposed accommodations are unreasonable misinterprets the law, even in employment cases. It is Home Depot's burden in this Title III case to show that any reasonable modification in its policies would be an undue hardship. It is not Mr. Muse's obligation to do Home Depot's

9

homework for it, though he always has been willing to engage in some kind of interactive process. Regretfully, Home Depot views Mr. Muse as unable to interact with others, including itself.

### A.  H.R.S. §§ 347-13 AND 489-3

Finally Home Depot resurrects its unsuccessful argument that H.R.S. § 347-13 and 489-3 are inapplicable. Plaintiff will not waste this Court's time on a detailed refutation of Home Depot's argument, except to re-iterate the Court's decision denying Home Depot's Motion to Dismiss "the Court rejects Defendant's argument that there is no discrimination under the statute . . . Moreover, Plaintiff has included in his pleadings assertions supporting the conclusion that his disability [is] properly classified as "physical" as required by the statute [H.R.S. § 347-13" Home Depot has yet to provide any evidence contrary to the evidence provided by Muse that such a disability is physiological in origin. Home Depot has even gone so far as to disqualify its own expert so that any argument now seeking to use that expert (even if he had that opinion) would be in extreme bad faith.

As to H.R.S. § 489-3, Home Depot tries to use the discredited case of <u>Doe v. Kahala Dental Group</u>, 808 P.2d 1276 (Haw. 1991). As above, the:

> Court once again finds that Defendant's argument is illusory. In <u>Doe</u>, the plaintiff was indeed excluded from receiving services based on his noncompliance with the service provider's policy. However, his noncompliance with that policy was not directly caused by his

disability; he was able to comply with the policy, but chose not to. . . . In this case, Plaintiff Muse, taking his allegations to be true, in incapable of complying with Defendant's policy, and this inability to comply with store policy is directly caused by his disability.

## V.  CONCLUSION

For all of the reasons set forth above and in Plaintiff's Motion for Partial Summary Judgment and Memorandum in Opposition to Defendant's Motion for Summary Judgment, this Court is requested to find simply that:

1. Jon Muse is disabled, he is afflicted with Tourette Syndrome;

2. Jon Muse's disability affects his ability to communicate such that his ability to interact and work with others is substantially and adversely affected;

3. Home Depot has violated its obligations under Title III of the ADA, and under H.R.S. §§347-13 and 489-3; and

4. Home Depot has an obligation under the ADA to provide a reasonable accommodation to allow Jon Muse to shop at its stores.

DATED:  Honolulu, Hawai'i, October 9, 2006.

/S/ STANLEY E. LEVIN
_____
BRUCE F. SHERMAN
STANLEY LEVIN
THOMAS F. FEENEY
Attorneys for Plaintiff