A003F61
EMORY L. COOPER   JUNE 6, 2006

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF HAWAII

 3

 4

 5   JON MUSE,                       )
                                     )
 6                  Plaintiff,       )
                                     )
 7        vs.                        )  Civil No. 04-00154 DAE/BMK
                                     )  (Civil Rights Violation)
 8   HOME DEPOT USA, INC.,           )
                                     )
 9                  Defendant.       )
     _____)

10

11

12

13

14

15          DEPOSITION OF HOME DEPOT USA, INC.

16       THROUGH ITS REPRESENTATIVE EMORY L. COOPER

17                    ORANGE, CALIFORNIA

18                      JUNE 6, 2006

19

20

21

     ATKINSON-BAKER, INC.
22   COURT REPORTERS
     (800) 288-3376
23   www.depo.com

24   REPORTED BY: LISA O'SULLIVAN, CSR NO. 7822

25   FILE NO.: A003F61
```



Page 1

**Page 42**

1  A   Yes, sir, I do.
2  Q   Do you agree today that the answers you will give
3  to our questions will be binding on Home Depot?
4      MR. HARRIS: Objection, outside the scope of the
5  notice and the rule. And asks for a legal conclusion.
6      THE WITNESS: Could you repeat the question?
7      MR. SHERMAN: If I could ask the court reporter to
8  read the question back to the witness, please.
9      (Record is read.)
10     MR. HARRIS: Objection, outside the scope of the
11 notice and the rule. And requests a legal conclusion.
12     Go ahead and answer.
13     THE WITNESS: Yes.
14 Q   BY MR. SHERMAN: What is Home Depot's policy
15 regarding accommodating customers with disabilities?
16     MR. HARRIS: Objection, assumes facts not in
17 evidence.
18 Q   BY MR. SHERMAN: You can answer.
19 A   Sir, the policy that we have as it relates to
20 maintaining our workforce or our work environment has to do
21 with respecting individuals, whether they're customers or
22 associates or vendors or, you know, anyone that visits our
23 workplace.
24     You know, there's not a specific policy per se that
25 talks about customers with a disability. We treat anyone

**Page 43**

1  that comes onto our premises with respect, and that's a
2  requirement within the organization.
3  Q   Is there a written version of this policy?
4  A   Of our respect policy, sir? Yes, sir.
5  Q   No, of the policy with regard to accommodating
6  customers with disabilities.
7  A   No, sir.
8  Q   Have you reviewed any e-mails or memos regarding
9  any policy regarding accommodating customers with
10 disabilities?
11 A   No, sir, not that I recall.
12 Q   Has this lawsuit, to your knowledge, resulted in
13 any change or implementation of any policy for Home Depot
14 for the accommodation of customers with disabilities?
15 A   No, sir, not that I'm aware of.
16 Q   Are there any written policies regarding
17 accommodating customers with disabilities on a local level
18 in Hawaii?
19 A   Not that I'm aware of, sir. I think it's the same
20 policy in Hawaii as it is throughout the organization.
21 Q   So would it be fair to say that Hawaii doesn't have
22 a written policy specifically as to the accommodation of
23 customers with disabilities?
24 A   The only policy that Hawaii should be operating
25 under is the same policy that we have throughout the

**Page 44**

1  organization, and that's primarily found in our respect
2  policy on how we treat customers and associates and our
3  vendors when they come into our workplace.
4  Q   Is anyone responsible for applying your respect
5  policy specifically in order to ensure that customers with
6  disabilities are accommodated?
7      MR. HARRIS: Objection, vague and confusing.
8      THE WITNESS: Sir, I'm not sure I understand your
9  question. Could you repeat it?
10     MR. SHERMAN: Certainly. If we could have the
11 court reporter read the question back.
12     (Record is read.)
13     MR. HARRIS: Objection, vague and confusing.
14 Assumes facts not in evidence.
15     THE WITNESS: Sir, in ensuring that our respect
16 policy is being carried out within the organization, every
17 manager within a Home Depot organization or a Home Depot
18 store, any assistant manager, human resource manager, as
19 well as all associates, are charged with the responsibility
20 of maintaining respect in our workplace as it relates to
21 associates, vendors, customers, and anyone that comes onto
22 our premises.
23 Q   BY MR. SHERMAN: Is there anyone who's responsible
24 for national corporate policy, to implement a policy
25 regarding accommodating customers with disabilities

**Page 45**

1  specifically?
2      MR. HARRIS: Objection, assumes facts not in
3  evidence. Misstates the prior testimony.
4  Q   BY MR. SHERMAN: You may answer, sir.
5      MR. HARRIS: Objection. There's been no testimony
6  as to any such specific policy.
7  Q   BY MR. SHERMAN: Mr. Cooper, you may answer.
8  A   I think I've said before, we don't have a national
9  corporate policy on addressing disabilities of customers.
10 Q   What do you know about the Americans with
11 Disabilities Act, Mr. Cooper?
12     MR. HARRIS: Objection, outside the scope of the
13 deposition. Specifically covered by a prior magistrate
14 judge's order. Harassing.
15 Q   BY MR. SHERMAN: Mr. Cooper, you can answer.
16 A   Could you repeat the question?
17 Q   Certainly. What do you know about the Americans
18 with Disabilities Act, Mr. Cooper?
19     MR. HARRIS: Same objection, outside the scope of
20 the deposition. Harassing. Violates the court's order and
21 the parties' agreement.
22     THE WITNESS: Could I have a moment with my
23 counsel?
24 Q   BY MR. SHERMAN: I'd like to ask you if you could
25 try to answer the question without consulting with

```
 1  Mr. Harris.
 2     A  And, sir, I would love to answer your question.
 3  But you've asked me what do I know about the American
 4  Disabilities Act. How much in detail do you want me to go?
 5         I'm very familiar with the American Disabilities
 6  Act as it relates to our workplace and our need to
 7  accommodate through the interactive process with associates
 8  that have disabilities as it relates to the Americans with
 9  Disabilities Act.
10     Q  What is your knowledge with respect to Title III of
11  the Americans with Disabilities Act that relates to public
12  accommodations, removal of barriers, and access by persons
13  with disabilities to public accommodations?
14         MR. HARRIS: Objection, outside the scope of the
15  deposition notice and the rule. Harassing.
16         THE WITNESS: I'm somewhat familiar with Title III.
17     Q  BY MR. SHERMAN: And what do you know about
18  Title III of the Americans with Disabilities Act?
19     A  That there has to be accessibility on the part of
20  people coming onto our premises, whether it's for our
21  associates and their access to our training facilities, and
22  the removal of barriers for such.
23     Q  Mr. Cooper, do you understand that the nature of
24  this litigation does not involve an employment issue? Are
25  you clear on that?
```
Page 46

```
 1     A  Yes.
 2     Q  And it is your understanding that Title I of the
 3  Americans with Disabilities Act refers to employment issues;
 4  is that correct?
 5     A  That's correct.
 6     Q  And you understand Title III is a different area
 7  altogether; is that correct?
 8     A  That's correct.
 9     Q  Have you ever actually read Title III, the statute
10  itself?
11         MR. HARRIS: Objection, outside the scope of the
12  deposition notice. Harassing.
13         THE WITNESS: Sir, I'm sure at some point in time,
14  I have. I have not read it recently, no.
15     Q  BY MR. SHERMAN: Are you familiar with what's
16  called the Americans with Disabilities Act accessibility
17  guidelines, or ADAG?
18         MR. HARRIS: Objection, outside the scope of the
19  deposition. Harassing.
20         THE WITNESS: Somewhat familiar, sir.
21     Q  BY MR. SHERMAN: Are you familiar with regulations
22  that have been promulgated by the Department of Justice
23  relating to Title III of the Americans with Disabilities
24  Act?
25         MR. HARRIS: Objection, outside the scope of the
```
Page 47

```
 1  deposition. Harassing.
 2         THE WITNESS: I'm not that familiar with it, sir,
 3  no.
 4     Q  BY MR. SHERMAN: And you understand that they have
 5  promulgated regulations also with respect to Title I in the
 6  employment area? You understand that?
 7         MR. HARRIS: Objection, outside the scope of the
 8  deposition. Harassing.
 9         THE WITNESS: I'm familiar with that, yes, sir.
10     Q  BY MR. SHERMAN: Is Home Depot a government
11  contractor --
12     A  Yes, sir.
13     Q  -- to your knowledge?
14     A  Yes.
15     Q  And by "government" I mean the federal government.
16     A  Yes.
17     Q  Okay, are you familiar with Section 504 of the
18  Rehabilitation Act of 1973?
19         MR. HARRIS: Objection, outside the scope of the
20  deposition notice. Harassing.
21         THE WITNESS: No, sir, not specifically.
22     Q  BY MR. SHERMAN: So you're not aware that that's a
23  separate area of federal law relating to persons with
24  disabilities and how they can be treated by companies; are
25  you?
```
Page 48

```
 1         MR. HARRIS: Objection, outside the scope of the
 2  deposition. Harassing.
 3         THE WITNESS: Could you repeat the question,
 4  please?
 5         MR. SHERMAN: If I could ask the court reporter to
 6  read that back, please.
 7            (Record is read.)
 8         MR. HARRIS: Objection, outside the scope of the
 9  deposition notice. Harassing.
10         THE WITNESS: No, sir.
11         MR. SHERMAN: I'd like to introduce what we've sent
12  to the court reporter as Exhibit 15, and I guess that would
13  be number 2.
14            (Plaintiff's Exhibit 2 is marked for
15            identification.)
16     Q  BY MR. SHERMAN: Mr. Cooper, are you familiar with
17  this exhibit?
18         MR. HARRIS: He's looking at it.
19         THE WITNESS: Yes, sir, I am.
20     Q  BY MR. SHERMAN: Can you identify it for the
21  record, Mr. Cooper?
22     A  This appears to be a copy of our Associate
23  Orientation Guide.
24     Q  Does it appear to be a complete copy?
25     A  Sir, in a cursory review, I see no reason to say
```
Page 49

13 (Pages 46 to 49)

Page 50

1  that it's not a complete guide. It appears that all the
2  pages are here.
3      MR. SHERMAN: I'd just like the record to reflect
4  that Mr. Cooper's had the opportunity to review the entire
5  exhibit.
6      THE WITNESS: Sir.
7      MR. HARRIS: Excuse me.
8      MR. SHERMAN: I'm sorry, go ahead.
9      THE WITNESS: I have not reviewed the entire guide,
10 okay? I have flipped through it, and it appears that all
11 the pages are here. I have not reviewed it on a
12 page-by-page basis.
13     Q  BY MR. SHERMAN: Is this a document that you used
14 to prepare for this deposition today?
15     A  Yes.
16     Q  So prior to the deposition today and your
17 testimony, you've had an opportunity to read this entire
18 document; is that correct?
19     A  Sir, I did not read the entire document, no, sir.
20     Q  But you had the opportunity to read it, if you so
21 desired; is that correct?
22     A  Yes, I could have.
23     Q  Okay, you had a copy of it; is that correct?
24     A  Yes.
25     Q  On the document, do you notice, in the right-hand

Page 51

1  corner, long numbers, Bates stamp numbers?
2      A  Yes.
3      Q  I want to refer you to the page where the last
4  three numbers of the Bates stamp are 510.
5      A  Okay.
6      Q  Is this what you mean by your respect policy,
7  what's contained on that page?
8      A  That's part of it, sir.
9      Q  Where else in this manual would we find an
10 expression of your respect policy?
11     A  Could you repeat the question, please?
12     MR. SHERMAN: If I could ask the court reporter to
13 kindly read that question back, please.
14     (Record is read.)
15     THE WITNESS: Sir, in this particular manual, I
16 don't know where you would find another expression of our
17 respect policy.
18     Q  BY MR. SHERMAN: Did you consult or review any
19 other manual in preparation for this deposition, besides
20 this manual?
21     A  Any other manual?
22     Q  Any other associate's manual. Did you consult any
23 other associate's manual in preparation for your testimony
24 today?
25     A  I did consult other documents, not necessarily

Page 52

1  manuals.
2      Q  Can you specifically identify those documents for
3  us, please?
4      A  Yes, the associate's guide to the code of conduct,
5  and the manager's guide to the code of conduct.
6      Q  How long is each of those documents? How many
7  pages?
8      A  The associate's guide is probably eight to 10
9  pages, and the manager's guide is probably 25, 35 pages.
10     Q  Let me refer you to Bates stamp page in this
11 associate's manual 513. Is this manual supplemented by
12 videotapes or some sort of visual aid?
13     A  Yes, I believe it is, sir.
14     Q  Would those visual aids more fully explain the
15 issues listed on page 513?
16     A  Could you repeat the question again, please? I'm
17 sorry.
18     MR. SHERMAN: If I could ask the court reporter to
19 read that question back, please.
20     (Record is read.)
21     THE WITNESS: Sir, I think the aids would
22 supplement. I'm not sure what level of detail that it would
23 go into.
24     Q  BY MR. SHERMAN: Is it fair to say, though, that
25 whoever put this manual together felt that they needed to

Page 53

1  have the associate watch those videos in order to have a
2  better idea of the Home Depot code of conduct?
3      A  Sir, I really don't know that I can answer that,
4  because I have not recently watched the videos. But I do
5  know that there are videos that supplement this material.
6      Q  Okay, is there anything on the intranet site that
7  would supplement this material?
8      A  Yes.
9      Q  Do you know who prepared this associate's guide?
10     A  Specifically, sir, no, I do not.
11     Q  Do you know when it was prepared?
12     A  There is an annual edition of this associate guide
13 that comes out, so it's revised annually, or it's updated
14 annually.
15     Q  In the Home Depot hierarchy, who is responsible for
16 producing this manual?
17     A  Sir, I believe it's our learning group or our
18 learning department.
19     Q  Could you define or explain what the learning
20 department is at Home Depot?
21     A  In other organizations, it would be known as the
22 training department.
23     Q  Is that a separate entity from Human Resources?
24     A  No, it's under the umbrella of Human Resources.
25     Q  Do you know who's in charge of the learning

**Page 70**

1  or would there be one just for Hawaii and Alaska combined?
2  A   No, there would be one for Hawaii. It's just that
3  Rowena is covering both states right now until we fill the
4  position in Hawaii. There will be and has been in the past
5  a regional HR manager for Hawaii.
6  Q   Did you talk to Rowena prior to this in preparation
7  for this testimony today?
8  A   No, sir, I did not.
9  Q   Did you talk at any time with Larry Anderson in
10 preparation for this testimony today?
11 A   No, I did not.
12 Q   So is it fair to say that there's no special
13 procedure per se for when a person with a disability
14 requests an accommodation at a Home Depot?
15 A   Could you repeat the question, please?
16     MR. SHERMAN: If I could ask the court reporter to
17 kindly repeat that.
18         (Record is read.)
19     THE WITNESS: Sir, are we talking about an
20 associate, or are we talking about a customer?
21 Q   BY MR. SHERMAN: When a customer would request an
22 accommodation.
23     MR. HARRIS: Objection, speculation.
24     THE WITNESS: I'm not familiar with one, no, sir.
25 Q   BY MR. SHERMAN: We spoke earlier about a person in

**Page 71**

1  a wheelchair requesting assistance at a Home Depot.
2        If a blind person were to come in there to a Home
3  Depot, could they request that a particular associate
4  accompany them throughout the store in order to assist them
5  in their shopping, as an accommodation?
6     MR. HARRIS: Objection, outside the scope of the
7  deposition notice, which requests a representative to
8  testify on the application of policies to individuals with
9  disabilities such as plaintiff's alleged disability.
10        This witness is not prepared and has not been
11 designated to testify with respect to the applications of
12 the policies to individuals with disabilities that are not
13 such as plaintiff's alleged disability.
14 Q   BY MR. SHERMAN: Okay, Mr. Cooper, you can answer
15 the question.
16 A   Could you repeat the question, please?
17     MR. SHERMAN: If I could ask the court reporter to
18 kindly repeat the question, please.
19         (Record is read.)
20     MR. HARRIS: Same objection. And irrelevant. Not
21 reasonably calculated to lead to the discovery of admissible
22 evidence. Harassment. Speculative.
23     THE WITNESS: Sir, since I am not working in a
24 store, you know, for me to respond to that would be pure
25 speculation on my part. I don't know, from the store

**Page 72**

1  management standpoint, if that could be done.
2  Q   BY MR. SHERMAN: Do you know if that can be done in
3  the context of the subject store in this litigation?
4     MR. HARRIS: Objection, outside the scope of the
5  notice of taking deposition, which requests a representative
6  to be designated with respect to the application of policies
7  to disabilities such as plaintiff's alleged disability.
8        This representative has not been prepared and is
9  not prepared to testify with respect to questions concerning
10 the application of policies to disabilities that are not
11 such as plaintiff's alleged disability.
12     Go ahead and answer.
13     THE WITNESS: Could you repeat the question,
14 please?
15     MR. SHERMAN: If I could ask the court reporter to
16 kindly repeat the question.
17         (Record is read.)
18     THE WITNESS: Sir, I'm not familiar with the store
19 that's the subject of this litigation. And since I'm not a
20 part of the leadership team there in the store, I really
21 don't know.
22 Q   BY MR. SHERMAN: What do you mean by "leadership
23 team"?
24 A   Management team.
25 Q   Would the leadership team in that particular store

**Page 73**

1  which is the subject of this litigation -- would they know
2  what would be done in such an instance?
3     MR. HARRIS: Objection, the question is vague if it
4  refers back to the blind individual who theoretically was
5  requesting the accommodation.
6        This witness is not designated to testify as to
7  that question, because the notice requested a witness to
8  testify with respect to the application of policies to
9  individuals with disabilities such as plaintiff's alleged
10 disability.
11     THE WITNESS: Could you repeat the question, sir?
12     MR. SHERMAN: If the court reporter could kindly
13 repeat the question.
14         (Record is read.)
15     MR. HARRIS: Same objection. And speculation. Not
16 reasonably calculated to lead to the discovery of admissible
17 evidence. Harassment.
18     THE WITNESS: Sir, I don't know what the leadership
19 team in that store -- since I've never been in the store
20 that's the subject of this litigation, I really don't know
21 what they know.
22 Q   BY MR. SHERMAN: What do you know about the local
23 implementation of corporate policy regarding accommodating
24 customers with disabilities? And by "local" I mean Hawaii.
25     MR. HARRIS: Objection, outside the scope of the

1  notice.
2      This witness has been designated to testify with
3  respect to the local application of such policies to
4  individuals with disabilities such as plaintiff's alleged
5  disability.
6      Q  BY MR. SHERMAN: You may answer the question.
7      A  Sir, the expectation in the local market -- when I
8  say "local," I'm referring to Hawaii -- is that they follow
9  the company's expectation as it relates to the workplace and
10 customer service and maintaining the environment, for not
11 only the associates but for the customers and for the
12 vendors and for the people that visit the store.
13     So the policy in Hawaii is the same policy that we
14 have everywhere else.
15     Q  Who in Hawaii is responsible for ensuring that that
16 policy is implemented and followed?
17     A  Within each store, the ultimate responsibility
18 would rest with the store manager. However, there is an
19 expectation within the Home Depot culture that all
20 associates are responsible for maintaining the type of
21 environment for our associates and our customers and our
22 vendors.
23     So while management has the responsibility, or the
24 overseeing responsibility, it is an expectation of every
25 associate within our organization to adhere to the values,

Page 74

1  and part of those values in our respect policy have to do
2  with our commitment to customer service.
3      Q  Who makes the final decision at a store, a local
4  store, with respect to what is a proper accommodation for a
5  person with a disability? Is it the manager?
6      MR. HARRIS: Objection, outside the scope of the
7  notice.
8      This witness has been designated to testify with
9  respect to local application of policies to individuals with
10 disabilities such as plaintiff's alleged disability and not
11 all disabilities in general.
12     Q  BY MR. SHERMAN: You can answer the question,
13 Mr. Cooper.
14     A  Okay, I think the question was, who has the final
15 say?
16     Q  That's correct.
17     A  That would rest in partnership between the store
18 manager, the HR manager, the district manager, the regional
19 HR manager, the regional HR director, and potentially
20 myself.
21     Q  Where does the buck stop in that instance? Is that
22 with you?
23     A  Well, that decision could also be appealed to the
24 regional -- or the vice-president of Human Resources, which
25 is my boss. It could go further up, to the vice-president

Page 75

1  of employment practices within the Home Depot corporation.
2      No. The stopping point is higher than myself.
3      Q  With respect to the current litigation, who has
4  made the decision as to what is a proper accommodation with
5  respect to Jon Muse?
6      MR. HARRIS: Objection, outside the scope of the
7  deposition notice. Work product. Attorney-client
8  privilege.
9      THE WITNESS: Could you repeat the question,
10 please?
11     MR. SHERMAN: If I could ask the court reporter to
12 kindly repeat it.
13     (Record is read.)
14     MR. HARRIS: Same objection.
15     THE WITNESS: Sir, I guess I'm not familiar with
16 what decision you're referring to.
17     MR. SHERMAN: The decision that he's not allowed to
18 go into any of the Home Depot stores: That decision.
19     MR. HARRIS: Objection, assumes facts not in
20 evidence.
21     MR. SHERMAN: In Hawaii.
22     MR. HARRIS: Objection, assumes facts not in
23 evidence. Outside the scope of the deposition notice.
24 Speculative. Work product. And attorney-client privilege.
25     That's actually an agreement between counsel, I

Page 76

1  should say.
2      THE WITNESS: Could I speak to my counsel?
3      MR. SHERMAN: Well, if you could try and answer the
4  question first, I'd appreciate that.
5      THE WITNESS: And what was the question?
6      MR. SHERMAN: If we could ask the court reporter to
7  repeat it, please.
8      (Record is read as follows:)
9      "Q  With respect to the current
10     litigation, who has made the decision as to
11     what is a proper accommodation with respect
12     to Jon Muse?"
13     MR. HARRIS: Objection, outside the scope of the
14 notice. Work product. Attorney-client privilege. Subject
15 to stipulation among counsel.
16     THE WITNESS: Sir, I don't know.
17     MR. SHERMAN: Okay, I'm going to ask the court
18 reporter to take what we've given her as Exhibit 12, and I
19 guess we could mark that as Exhibit 3.
20     (Plaintiff's Exhibit 3 is marked for
21     identification.)
22     Q  BY MR. SHERMAN: Mr. Cooper, have you seen that
23 document before?
24     A  Yes, I have.
25     Q  Okay, now, moving down to the third

Page 77

20 (Pages 74 to 77)

## Page 102

1  THE WITNESS: Yes.
2  Q  BY MR. SHERMAN: Do you understand that in using
3  the term "involuntary," that also would mean that the person
4  exhibiting that symptom does not intentionally say offensive
5  words?
6      MR. HARRIS: Objection, outside the scope of the
7  notice. Speculative. Assumes facts.
8      THE WITNESS: Could you repeat the question?
9      MR. SHERMAN: If I could ask the court reporter to
10 kindly repeat the question.
11     (Record is read.)
12     MR. HARRIS: Same objection. Plus speculative.
13     THE WITNESS: Yes.
14 Q  BY MR. SHERMAN: What is the corporate policy
15 relating to use of sexually, racially, or otherwise
16 offensive language, by or in the presence of customers or
17 associates, while on store premises, nationally?
18     THE WITNESS: Could you repeat the question?
19     MR. SHERMAN: If I could ask the court reporter to
20 repeat the question, please.
21     (Record is read.)
22     THE WITNESS: Sir, it is absolutely unacceptable
23 for any of our associates to use or to make comments that
24 are sexual or racial or offensive, and we also tell our
25 associates that they don't have to work in an environment

## Page 103

1  where that is being used. That falls under our respect
2  policy.
3  Q  BY MR. SHERMAN: And is this contained specifically
4  in a manual or other publication by Home Depot?
5  A  Sir, I believe it is in the detailed provisions of
6  the respect policy, but I would have to verify that. I
7  believe it is.
8  Q  Is it the company policy -- does the company policy
9  distinguish between intentional or unintentional use of
10 sexual language?
11     MR. HARRIS: Objection, speculation.
12     THE WITNESS: Not that I'm aware of.
13 Q  BY MR. SHERMAN: So if someone unintentionally used
14 a phrase, they could be terminated?
15     MR. HARRIS: Objection.
16 Q  BY MR. SHERMAN: An associate?
17     MR. HARRIS: Speculation.
18     THE WITNESS: Sir, I don't know of any distinction
19 that's ever been made between intentional or unintentional.
20 If the statements are made, of course, we look into every
21 situation and make a determination from there.
22 Q  BY MR. SHERMAN: Let me give you an example. And I
23 want first to prepare you.
24     We may use some language in the rest of the
25 deposition that some people, you know, might consider

## Page 104

1  offensive, but these are some of the words that are part of
2  this lawsuit. They're not intended to embarrass or make
3  anyone uncomfortable, but we do have to use them so that
4  we're clear on them.
5      MR. HARRIS: You know, no, you don't. We object to
6  their use. You can use "the C word" and "the N word" and
7  complete the same effect without creating a harassing
8  environment in the context of this deposition.
9      And I'll object to your use of any of the offensive
10 words in front of myself or the court reporter or any of the
11 other participants that may listen to or view this
12 deposition.
13     MR. SHERMAN: Mr. Harris, we're not going to be
14 held hostage by you and your attempt to blow up this
15 situation, all right? You've done this again and again, and
16 it's nothing more than, you know, an attempt to make it
17 worse or make it seem worse than it is, all right?
18     You've done this again and again, and it's
19 tiresome, all right?
20     MR. HARRIS: I'm --
21     MR. SHERMAN: No, no. Let me finish, Mr. Harris,
22 all right? And, you know, I understand you're grinning
23 because you're doing this again.
24     MR. HARRIS: No, you're being silly. You're
25 violating the code of professional responsibility and

## Page 105

1  judicial conduct, which prohibits you from using harassing
2  comments in the context of litigation.
3      You don't need to use those words. You don't need
4  to use those words. You can use substitutes. You can use
5  abbreviations, okay? So I object to your use of those
6  words.
7      MR. SHERMAN: We're going to use other words, and
8  it's going to be on a case-by-case basis, okay, Mr. Harris?
9  And if you can't take the heat, you can get out of the depo
10 room, all right?
11 Q  All right, Mr. Cooper. Now, if someone at Home
12 Depot, an associate, were to drop a block on their foot and
13 say "son of a bitch," would they be terminated for that, or
14 disciplined?
15     MR. HARRIS: Objection, speculation.
16     THE WITNESS: The associate would be subject to
17 disciplinary action up to and including termination.
18     But as you just used the word, I would say there
19 would not be termination involved, but there would be a
20 record of discussion and a degree of discipline within our
21 progressive discipline system.
22 Q  BY MR. SHERMAN: Now, if a customer were to have a
23 block dropped on their foot by an associate, and the
24 customer exclaimed "son of a bitch," would they be banned
25 from the store?

REPORTER'S CERTIFICATION

I, Lisa O'Sullivan, CSR No. 7822, a Certified Shorthand Reporter in the State of California, certify:

That the foregoing proceedings were taken before me at the time and place therein set forth, at which time the witness was put under oath by me;

That the testimony of the witness and all objections made at the time of the examination were recorded stenographically by me and were thereafter transcribed;

That the foregoing is a true and correct transcript of my shorthand notes so taken.

I further certify that I am not a relative or employee of any attorney or of any of the parties, nor financially interested in the action.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated this day, June 8, 2006.

*Lisa O'Sullivan*
LISA O'SULLIVAN, CSR No. 7822

REPORTER'S CERTIFICATION OF CERTIFIED COPY

I, Lisa O'Sullivan, CSR No. 7822, a Certified Shorthand Reporter in the State of California, certify that the foregoing pages 1 through 130 constitute a true and correct copy of the original deposition transcript of Home Depot USA, Inc., through its representative Emory L. Cooper, taken on June 6, 2006.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated this day, June 8, 2006.

*Lisa O'Sullivan*
LISA O'SULLIVAN, CSR No. 7822