IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JON MUSE, | ) | Civil No. CV04-00154 DAE BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HOME DEPOT USA, INC., | ) | |
| | ) | |
| Home Depot. | ) | |
| _____ | ) | |

ORDER DENYING HOME DEPOT USA, INC.'S MOTION FOR SUMMARY
JUDGMENT AND DENYING JON MUSE'S MOTION FOR PARTIAL
<u>SUMMARY JUDGMENT</u>

Defendant  Home Depot USA, Inc. (hereinafter, "Home Depot") filed

its Motion for Summary Judgment on November 29, 2005.  On September 18,

2006, Plaintiff Jon Muse (hereinafter, "Mr. Muse") filed a Motion for Partial

Summary Judgment and Memorandum in Opposition to Home Depot's Motion for

Summary Judgment.  Home Depot filed its Memorandum in Opposition to

Plaintiff's Motion for Partial Summary Judgment and Reply in Memorandum in

Support of Defendant's Motion for Summary Judgement on September 28, 2006.

1

The Court heard these motions on October 16, 2006. Bruce F. Sherman, Esq.,

appeared at the hearing on behalf of Muse. Jeffrey S. Harris, Esq., and Clayton A.

Kamida, Esq., appeared at the hearing on behalf of Home Depot. After reviewing

the motions and the supporting and opposing memoranda, the Court DENIES

Home Depot's Motion for Summary Judgment and DENIES Mr. Muse's Motion

for Partial Summary Judgment.

BACKGROUND

Mr. Muse filed a complaint against Home Depot alleging violations of

his rights under the Title III of the Americans with Disabilities Act of 1990, 42

U.S.C. § 12181 et seq. (the "ADA"). Mr. Muse suffers from Tourette's Syndrome,

which causes him to interject vulgarities into his speech randomly and

uncontrollably, and to make obscene gestures (like sticking up his middle finger) at

others. (Pl.'s CSF Ex. 1 at 14, Ex. 2 at 11-12, Ex. 3 at 13.) Medication and

treatment have not been able to completely rid Mr. Muse of his verbal tics and

gestures. (Id. at Ex. 2 at 12.) Mr. Muse testified that he tries to avoid social

situations at all costs because he often has to defend and explain his actions. (Id. at

Ex. 1 at 19, 26-27, 174.) His Tourette's Syndrome has caused him to provoke

fights with others and receive threats to be beaten. It is undisputed that some of

Mr. Muse's client's workers giggle or mimic him. Mr. Muse also testified that he

2

lost one customer in his business and he assumes it was because of his Tourette's Syndrome. (Def.'s CSF Ex. A-1 at 122.) Mr. Muse's former treating psychiatrist, Dr. William Sheehan, states that Mr. Muse's disorder is moderately severe. (Pl.'s CSF Exs. 3, 10 A.) Dr. Samuel Zinner stated that Mr. Muse "can be expected to suffer disabling symptoms of Tourette syndrome over the course of his life. In his particular circumstance, these tic symptoms will include neurologically uncontrollable and socially embarrassing outbursts of profanity and vulgar gestures." (Pl.'s CSF Ex. 2.) Mr. Muse has been found to be entitled to monthly social security disability benefits. (Pl.'s CSF Ex. 5.)

However, it is also undisputed that Mr. Muse is able to shop at stores, his Tourette's Syndrome does not cause severe problems with close friends, he is able to attend Narcotics Anonymous meetings, and he is able to make deliveries and collect money for his business. In addition, Mr. Muse's psychiatrist, Dr. Mark Zen, has opined that Mr. Muse had an adequate ability to relate to others. (Def.'s CSF Exs. A-1 at 98, A-7.)

On November 3, 2003, Mr. Muse went to the Honolulu branch of Home Depot to return a purchase he had made at an earlier date. (Def.'s CSF Ex. A-1 at 6-7.) During his conversation with the sales clerk at the customer service counter, Mr. Muse used the words "f[]ck" and "c[]nt". (Def.'s CSF Ex. A-1 at 71-

72.)  Mr. Muse maintains that he randomly and involuntarily voiced these words and it was caused by his Tourette's Syndrome.  (Id.)  According to Mr. Muse, the supervisor on duty overheard the exchange and requested that Mr. Muse stop using profanities.

Mr. Muse maintains that he told the clerk that he did not mean to offend anyone and attempted to explain that his Tourette's Syndrome caused his behavior.  (Def.'s CSF Ex. A-1 at 71-73; Pl.'s CSF Ex. 1 at 154.)  Mr. Muse states that the supervisor rudely informed him that she did not care what disorder he had and that he should not use those types of words towards the cashiers.  (Pl.'s CSF Ex. 1 at 154.)

Mr. Muse completed his sales transaction.  (Def.'s CSF Ex. A-1 at 80.)  Mr. Muse alleges that he was told not to come back to the store.  (Id.; Pl.'s Responsive CSF ("RCSF") Ex. 7.)  Home Depot alleges that it did not ban Mr. Muse from its store and that the manager only asked that he leave.  (Pl.'s RCSF Ex. 6.)  Mr. Muse did not ask for any specific accommodation at that time, other than an understanding of his condition.  (Id. at Ex. 2 149-50.)  Approximately eight months after the incident, Home Depot's attorney wrote a letter to Mr. Muse's attorney offering Mr. Muse money if he dismissed the lawsuit and continued to stay out of Home Depot stores until he avoided using vulgar language in front of

4

employees and customers.  (Pl.'s CSF Ex. 7.)

On March 4, 2004, Mr. Muse filed a Complaint.  In Count One of the Complaint, Mr. Muse asserts that Home Depot violated Title III of the ADA by refusing to serve him based on his alleged disability.  In Count Two of the Complaint, Mr. Muse claims that Home Depot violated Hawaii Revised Statutes § 347-13 by denying him equal services to Home Depot's public accommodations. In Count Three of the Complaint, Mr. Muse alleges that Home Depot violated Haw. Rev. Stat. § 489 by refusing to provide him service because of his alleged disability.

On April 9, 2004, Defendant filed a Motion to Dismiss Complaint, which was denied by this Court on January 11, 2005.  These motions followed.

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dept. of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of factually unsupported claims and

defenses.  Celotox Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings.  Porter, 383 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary

6

judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."). "[A]t least some 'significant probative evidence'" must be produced. T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631. In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. Id. However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

<u>DISCUSSION</u>

A.    <u>The ADA Claim</u>

Title III of the ADA prohibits discrimination on the basis of disability by private entities which own, operate, or lease places of public accommodation. 42 U.S.C. § 12182(a); <u>see also</u> 28 C.F.R. § 36.201(a).  In particular, Title III provides that

> [i]t shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

42 U.S.C. § 12182(b)(1)(A)(i).  The implementing regulation further provides that

> [n]o individual with a disability shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who owns, leases (or leases to), or operates a place of public accommodation.

28 C.F.R. § 36.201(a).  Thus, if a plaintiff establishes that he is (1) an individual with a disability, (2) who was denied an opportunity to participate in or benefit from goods, services, facilities, privileges, advantages, or accommodations, (3) on

8

the basis of her disability, (4) by a place of public accommodation, he has made out a claim under Title III's general non-discrimination provision.

Here, there is no dispute that Mr. Muse has been denied an opportunity to participate in and benefit from the services, facilities, and accommodations offered by Home Depot until he can control his outbursts of profanity, or that Home Depot is a place of public accommodation within the meaning of the ADA. The issues are whether Mr. Muse's Tourette's Syndrome qualifies as a disability for purposes of the ADA, whether Mr. Muse requested a modification of Home Depot's policies, and whether his request is reasonable.

The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 28 C.F.R. § 36.104. The U.S. Supreme Court has articulated a three-step inquiry for determining whether an impairment substantially limits a major life activity so as to constitute a disability under the ADA. See Bragdon v. Abbott, 524 U.S. 624, 631 (1998). First, the court must ascertain whether plaintiff has a physical or mental "impairment." Next, the court must identify whether any "major life activities" are impacted by that impairment.

9

Finally, the court must determine whether the impairment "substantially limits" any major life activity.  Id.

"Physical or mental impairment" is defined as "any mental or psychological disorder such as . . . emotional or mental illness."  28 C.F.R. § 36.104.  Tourette's Syndrome is a neurological impairment characterized by motor and verbal tics.  See Purcell v. Pa. Dep't of Corrs., No. CIV. A. 95-6720, 1998 WL 10236 (E.D. Pa. Jan. 9, 1998).

Mr. Muse alleges his impairment affects his ability to work, interact with others, and speak.  "Major life activities" include, but are not limited to, "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  28 C.F.R. § 36.104. "Interacting with others" has also been identified as a major life activity.  Equal Employment Opportunity Commission's Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities 5 (March 25, 1997); see also McAlindin v. County of San Diego, 192 F.3d 1226, 1234 (9th Cir. Sept. 16, 1999, amended Jan. 18, 2000) ( the Ninth Circuit held that "because interacting with others is an essential, regular function, like walking and breathing, it easily falls within the definition of 'major life activity.'").[1]

_____

[1] Other courts have held that interacting with others is a major life

10

The next inquiry is whether Mr. Muse's Tourette's Syndrome substantially limits his major life activity of working, interacting with others, and/or speaking.  An individual suffers a substantial limitation of a major life activity if that person is "[s]ignificantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j).

    1.    <u>Working</u>

Mr. Muse argues that he has provided  sufficient evidence of his substantial limitation in the major life activity of working to survive summary judgment.

To be considered substantially limited in the major life activity of working a person must be precluded from performing "'either a class of jobs or a broad range of jobs in various classes as compared to the average person having

---

activity.  <u>See</u> <u>Soileau v. Guilford of Maine, Inc.</u>, 105 F.3d 12, 15 (1st Cir. 1997) (assumed that interacting with others is a major life activity); <u>Steele v. Thiokol Corp.</u>, 241 F.3d 1248, 1255 (10th Cir. 2001) (same); <u>Garvey v. Jefferson Smurfit Corp.</u>, No. 00-1527, 2000 WL 1586077, *3 (E.D. Pa. Oct. 24, 2000) (finding that a jury could conclude that plaintiff with severe form of hypertension was substantially limited in major life activity of interacting with others); <u>Zale v. Sikorsky Aircraft Corp.</u>, No. 3:97CV 00125, 2000 WL 306943 (D. Conn. Feb. 7, 2000) (recognizing the major life activity of interaction with others); <u>Sherback v. Wright Automotive Group</u>, 987 F. Supp. 433, 438 (W.D. Penn. 1997) (recognizing major life activity of interaction with others).

comparable training, skills and abilities.'" 29 C.F.R. § 1630.2(j)(3)(i); see Sutton

v. United Airlines, Inc., 527 U.S. 471, 492 (1999) (to be substantially limited in the

major life activity of working, "one must be precluded from more than one type of

job, a specialized job, or a particular job of choice."). "[W]hether a plaintiff is

substantially limited in the major life activity of working is determined by

comparing his ability to perform jobs with the ability of a person without physical

limitations who has a comparable education, job skills, and talent." Mullins v.

Crowell, 228 F.3d 1305, 1314 (11th Cir. 2000). In determining whether an

individual is substantially limited in the major life activity of working, courts

should consider "the geographical area to which the individual has reasonable

access, and 'the number and types of jobs utilizing similar training, knowledge,

skills or abilities, within the geographical area, from which the individual is also

disqualified.'" Sutton, 527 U.S. at 492 (quoting §§ 1630.2(j)(3)(ii)(A), (B)).

"[A] plaintiff must present specific evidence about relevant labor markets to defeat

summary judgment on a claim of substantial limitation of 'working.'" Thornton v.

McClatchy Newspapers, Inc., 261 F.3d 789, 795 (9th Cir. 2001).

       Here, Mr. Muse has not demonstrated that he is substantially limited

in a broad range of jobs, such as any that require frequent interaction with the

public, and a class of jobs, such as jobs in the service industry. In fact, Mr. Muse

has failed to provide any evidence of jobs from which he was precluded or evidence of the relevant labor markets for those classes of jobs.  See Id. (affirming district court's conclusion that no genuine issue of material fact existed since the plaintiff failed to present evidence of the jobs from which she was precluded and of the relevant labor markets for that class of jobs).  To the contrary, Mr. Muse has been able to maintain his own business that requires him to interact with suppliers and customers on a regular basis.  Therefore, Mr. Muse has failed to present sufficient evidence to demonstrate a genuine issue of material fact as to whether he is substantially limited in the major life activity of working.

      2.     <u>Interacting with others</u>

      Mr. Muse claims his Tourette's Syndrome substantially limits him in the major life activity of interacting with others.  The Ninth Circuit has explained that "[r]ecognizing interacting with others as a major life activity of course does not mean that any cantankerous person will be deemed substantially limited in a major life activity."  <u>McAlindin</u>, 192 F.3d at 1234.  In <u>McAlindin</u>, the Ninth Circuit held that "a plaintiff must show that his 'relations with others were characterized on a regular basis by severe problems, for example, consistently high levels of hostility, social withdrawal, or failure to communicate when necessary.'"  <u>Id.</u> (quoting <u>EEOC Enforcement Guidance on the Americans with Disabilities Act</u>

13

and Psychiatric Disabilities 5 (March 25, 1997)).

In <u>McAlindin</u>, the plaintiff suffered from panic and anxiety disorders. Several doctors who evaluated the plaintiff indicated that he had become withdrawn, was anxious all the time, had fear reaction, avoided activities, and constricted his outside activities to stay away from shopping malls and crowds. 192 F.3d at 1235. Another doctor stated that the plaintiff's social activities were limited to his family and he was not involved in any groups. <u>Id.</u> The court held that these evaluations suggested that the plaintiff suffered from "a total inability to communicate at times, in addition to a more subtle impairment in engaging in meaningful discussion." <u>Id.</u> Thus, there was a genuine issue of material fact as to whether the plaintiff was substantially limited in his ability to interact with others. <u>Id</u> at 1236.

Similarly, in <u>Purcell</u>, 1998 WL 10236 at *8, although the plaintiff could communicate with prison officials on discrete occasions, the plaintiff usually had to suppress his verbal and motor tics when interacting with others and later "explode" in privacy to release the tics. According to doctors, the plaintiff had the ability to suppress the tics for only limited periods of time ranging from a few minutes to a few hours. <u>Id.</u> at 7. Thus, the court found that there was a genuine issue of fact as to whether the plaintiff's Tourette's was serious enough to affect a

major life activity.

Here, on the one hand, there is evidence that Mr. Muse's Tourette's Syndrome has not prevented him from shopping in public places, maintaining close friendships, running his own business, and attending meetings of the Narcotics Anonymous group to which he belongs. Indeed, the effects of Mr. Muse's Tourette's Syndrome on his ability to interact with others do not seem nearly as severe as those found in McAlindin as there is no evidence that they have resulted in a "total inability to communicate at times." McAlindin, 192 F.3d at 1235. However, on the other hand, Mr. Muse has uncontrollable tics and vocalizations, including profanity, racial slurs, and obscene gestures, which have caused him to avoid social situations and become engaged in fights to defend himself. Mr. Muse states that he experiences anxiety in public places, which stems from his fear of the way in which he will be perceived. Mr. Muse also alleges that people who encounter him will sometimes openly mock him, stare at him, and misperceive his tics as signs of disrespect or hatred. Furthermore, there are opinions from two doctors that Mr. Muse's symptoms are severe and disabling.

Accordingly, Mr. Muse has presented enough evidence to demonstrate a genuine issue of material fact as to whether he is substantially limited in the major life activity of interacting with others. Based on the evidence presented to

the Court at this time, there remain questions as to whether his tics significantly restrict his ability, either in manner or duration, to interact with others. For this reason, both Home Depot's motion for summary judgment and Mr. Muse's motion for partial summary judgment are denied.

3.    <u>Request for modification</u>

Home Depot argues that even if Mr. Muse is disabled, his ADA claim fails because he did not request any modifications. Mr. Muse argues that he requested a modification when he informed Home Depot that he had Tourette's syndrome and could not control his utterances of vulgar words. Mr. Muse states that Home Depot should have been compassionate and not asked him to leave the store and not return.

The ADA requires that places of public accommodation make reasonable modifications to policies, practices and procedures that are necessary to provide goods and services to a person with a disability, unless the modification would fundamentally alter the nature of the goods or services provided. 42 U.S.C. § 12182(b)(2)(A). The Ninth Circuit has held that in order to prove a Title III ADA claim, a plaintiff must establish, among other requirements, that "the defendant discriminated against the plaintiff based upon the plaintiff's disability by (a) failing to make *a requested reasonable modification* that was (b) necessary to

16

accommodate the plaintiff's disability." <u>Fortyune v. Am. Multi-Cinema, Inc</u>., 364

F.3d 1075, 1082 (9th Cir. 2004) (emphasis added).  Applying Title I framework of

employment discrimination to a Title III case (public accommodations), the Fifth

Circuit has held that the "plaintiff has the burden of proving that a modification

was requested and that the requested modification is reasonable." <u>Johnson v.</u>

<u>Gambrinus Company/Spoetzl Brewery,</u> 116 F.3d 1052, 1059 (5th Cir. 1997);

<u>Larsen v. Carnival Corp., Inc</u>., 242 F. Supp. 2d 1333, 1342 (S.D. Fla. 2003) ("A

plaintiff who alleges that a defendant failed to reasonably modify its policies,

practices or procedures must show that he or she actually requested a

modification.").

        The issue here is, even if Mr. Muse was disabled, was informing

Home Depot that he had Tourette's syndrome, which caused him to involuntarily

utter profanities, and being present in the store at the time with the intention to

shop, sufficient to be considered a request for modification of Home Depot's

policy of refusing service to customers who use profane language to Home Depot

employees.  This Court finds that it is.

        The ADA does not require a disabled person to use specific words or

magic language to make his or her request for an accommodation or modification

known.  <u>Schmidt v. Safeway</u>, 864 F. Supp. 991, 997 (D.Or. 1994) ("The [ADA]

does not require the plaintiff to speak any magic words before he is subject to its protections."); K.F. v. Guardsmark, LLC, No. C 05-1222 CW, 2006 WL 2785303, at *10 (N.D. Cal. Sept. 26, 2006).  Furthermore, in the employment context, an employer is required to engage in an interactive process with an employee to determine a reasonable accommodation either when the employee requests an accommodation *or if the employer recognizes that an accommodation is necessary*. Barnett v. U.S. Air, Inc., 228 F.3d 1105, 1111 (9th Cir. 2000), vacated on other grounds, 535 U.S. 391 (2002).  Accordingly, making Home Depot aware that Mr. Muse was using the profane language as a result of a disorder and explaining that he did not mean to offend anyone but that he could not control his utterances, while attempting to shop at Home Depot, was sufficient to be considered a request for a modification of Home Depot's policies.  See Fortyune, 364 F.3d at 1078-79, 1082, 1084 (finding that the plaintiff, who was in a wheelchair, requested a modification by showing up at the movie theater with his wife and asking the manager to have a customer moved from the companion seat next to the wheelchair area so that he and his wife could sit together).

Home Depot next argues that Mr. Muse's requested modifications are not reasonable as a matter of law.  Mr. Muse has suggested that he be able to shop at Home Depot either by himself, or with a sign posted that a person with

18

Tourette's is currently shopping, or using a chaperone.  Home Depot argues that

this request is unreasonable because it would require substantial modification by

requiring Home Depot to disregard its core values of prohibiting sexist and vulgar

remarks, and would possibly subject Home Depot to liability for sexual or criminal

harassment.

This Court cannot hold as a matter of law that Mr. Muse's request is

unreasonable.  This is not a situation where the profanities used are directed at a

specific person and are intentional.  Instead, Mr. Muse has presented evidence that

he has Tourette's syndrome, which causes him to make these remarks involuntarily

and that he does not mean them.  Thus, there is no evidence that Mr. Muse is

intentionally violating Home Depot's core values.   Furthermore, Mr. Muse

presented evidence that a bank where he deposits checks was able to accommodate

him by having him give notice of when he was coming into the bank and working

with one employee.  Home Depot, however, presented no evidence that it had tried

to find an employee who would volunteer to chaperone Mr. Muse.  That employee

and Mr. Muse could possibly work together to have Mr. Muse shop when Home

Depot is less busy, that employee could explain Mr. Muse's situation to any nearby

customers, and/or that employee could open a cashier line for Mr. Muse's

purchases only, thus avoiding a line of customers behind him.  If that employee

19

was educated and volunteered, that employee would also understand that he could not prove a sexual harassment claim since he or she could not establish that the profanities are intentional or unwelcome.

Accordingly, this Court cannot find as a matter of law that Mr. Muse's requested modifications are unreasonable. Indeed, the question of reasonableness is ordinarily left to the jury. Schmidt, 864 F. Supp. at 997. For this reason, Home Depot's motion for summary judgment must be denied. Additionally, as this Court could not find that Mr. Muse is 'disabled' as a matter of law, or that any requested modification was reasonable as a matter of law, summary judgment in favor of Mr. Muse is also inappropriate.

B.    Hawaii Revised Statute Section 347-13

Home Depot next argues that Mr. Muse is not physically disabled and thus cannot seek recovery under Haw. Rev. Stat. § 347-13.[2] Home Depot asserts

---

[2]    Hawaii Revised Statute Section 347-13, provides in part that: The blind, visually handicapped, and otherwise physically disabled are entitled to full and equal accommodations, advantages, facilities, and privileges of all common carriers, airplanes, motor vehicles, railroad trains, motor transportation, hotels, lodging places to which the general public is invited, subject only to the conditions and limitations established by law and applicable alike to all persons.

H.R.S. § 347-13(a).

20

that Tourette's Syndrome is a mental disability and not a physical disability.  Home

Depot also argues that even if the statute did apply to Mr. Muse, he was only

entitled to the same privileges as any other customer.  These are the same

arguments that Home Depot presented earlier and this Court rejected in its Order

Denying Defendant's Motion to Dismiss.  Indeed, this Court held that

> The Court has been unable to locate, nor have the parties
> cited, any cases in which the Hawaii courts have applied
> this statute.  Giving effect to the plain meaning of the
> statute's text, the Court rejects Defendant's argument that
> there is no discrimination under the statute, so long as a
> condition is applied to all persons equally.  The statute
> says that access to public accommodations may be
> "subject only to the conditions and limitations
> *established by law and* applicable alike to all persons."
> H.R.S. § 347-13(a) (Michie 2004).  The Court is not
> aware of, and nor does Defendant cite, any law
> establishing Home Depot's policy against profanity.
> Thus, the Court cannot dismiss Plaintiff's claim under
> Section 347 as a matter of law because Defendant's
> policy of denying access to those who speak profanity
> was equally applied.

(Order Denying Def.'s Mot. to Dismiss at 17.)  Home Depot has not presented any

evidence or argument that persuades this Court to change its finding.

Furthermore, Mr. Muse produced evidence that Tourette's is a

neurological impairment.  Dr. Sheehan stated that "[t]his condition is biological in

etiology, and is not the product of willful behavior."  (Pl.'s CSF Ex. 10 A.)  Dr.

Zinner also stated that "Tourette syndrome is neurological in origin and is involuntary."  (Pl.'s CSF Ex. 2.)  He further stated that it is a

> brain-based abnormality . . . there is a circuit within the
> brain that connects areas on the surface of the brain to an
> area deep with the brain.  This circuit is 'wired'
> incorrectly in people with Tourette syndrome; . . .
> Because of the faulty wiring in his brain, Mr. Muse is no
> more able to stop the impulse to tic than a person with
> epilepsy is able to stop from having a seizure . . . .

Id.  Home Depot has not presented any evidence to refute the doctors' findings or to otherwise establish that Tourette's is only a mental disability and not a physical disability.  Instead, Home Depot only argues that since Mr. Muse is not deprived of his senses and is able to walk, see, hear, breathe, and speak, he is not physically disabled.  As argued by Mr. Muse, if this Court were to accept such an argument, then anyone with a neurological disorder which rendered that person unable to speak clearly or correctly would not qualify for the statute's protections.

Finally, Home Depot has not cited any law requiring it to limit access to its stores to people who do not use profane language.  As this is required by the statute, and as evidence has been presented establishing that Tourette's is a neurological disorder, this Court cannot find, as a matter of law, that this statute does not apply to Mr. Muse.

C.    Hawaii Revised Statute section 489-3

Section 489-3 prohibits:

unfair discriminatory practices which deny, or attempt to
deny, a person the full and equal enjoyment of the goods,
services, facilities, privileges, advantages, and
accommodations of a place of public accommodation on
the basis of race, sex, color, religion, ancestry, or
disability . . . .

H.R.S. § 489-3.  Home Depot argues that Mr. Muse's claim under Haw. Rev. Stat.

§ 489-3 fails because Home Depot could not have denied Mr. Muse services he did

not request and he received the same treatment any other offensive customer would

have received.  This is the same argument that Home Depot presented earlier and

this Court rejected in the Order Denying Defendant's Motion to Dismiss.  Home

Depot has not presented any new evidence or argument in support of its claim.

Again, as held earlier, this argument fails because Mr. Muse is not just any other

customer.  If Mr. Muse establishes that he is in fact disabled, as defined by the

ADA, then it is clear that it is because of this "disability," that he is incapable of

complying with Home Depot's policy.

Thus, this Court cannot find as a matter of law that Mr. Muse is not

entitled to the protections of this statute.

23

<u>CONCLUSION</u>

For the reasons stated above, the Court DENIES Home Depot's

Motion for Summary Judgment and DENIES Mr. Muse's Motion for Partial

Summary Judgment.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 7, 2006.



_____
David Alan Ezra
United States District Judge

<u>Muse v. Home Depot USA, Inc., et al.,</u>Case No. CV-04-00164 DAE-BMK;
ORDER DENYING HOME DEPOT USA INC.'S MOTION FOR SUMMARY
JUDGMENT AND DENYING JON MUSE'S MOTION FOR PARTIAL
SUMMARY JUDGMENT