OF COUNSEL:
DAVIS LEVIN LIVINGSTON GRANDE
STANLEY E. LEVIN     1152-0
851 Fort Street
400 Davis Levin Livingston Grande Place
Honolulu, Hawai'i 96813
Telephone: (808) 524-7500
Fax: (808) 545-7802
E-Mail: slevin@davislevin.com

BRUCE F. SHERMAN   5996
ATTORNEY AT LAW
A Law Corporation
E-mail: failey52@hawaii.rr.com
THOMAS F. FEENEY   5546
E-mail: FeeneyatLaw@cs.com
1164 Bishop Street, Suite 124
Honolulu, Hawai'i 96813
Tel: (808) 599-3955/Fax: (808) 599-3944

Attorneys for Plaintiff
JON MUSE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| JON MUSE, | CIVIL NO. 04-00154 DAE/BMK |
| | (Civil Rights Violation) |
| Plaintiff, | |
| vs. | PLAINTIFF'S TRIAL BRIEF AND |
| | CERTIFICATE OF SERVICE |
| HOME DEPOT USA, INC. | |
| | TRIAL DATE: January 17, 2007 |
| Defendant. | TIME: 9:00 a.m. |
| _____ | JUDGE: Hon. David A. Ezra |

# **PLAINTIFF'S TRIAL BRIEF**

## I.   INTRODUCTION

It is established in this case that Plaintiff, Jon Muse [hereinafter "Mr. Muse" or "Jon Muse"] has a neurological impairment that adversely affects his speech and ability to control certain physical movements ("tics"), and thus his ability to communicate, interact with others, and work.

The trial is needed to determine three factual issues:

1)   Does the severity of Mr. Muse's impairment substantially effect the major life activities of speaking, communicating, and interacting with others to extent of rendering him "disabled" within the meaning of Title III of the ADA;

2)   If "disabled," the trier of fact must then determine the parameters of a reasonable accommodation that would allow Mr. Muse to shop at Home Depot; and,

3)   The extent of monetary damages due Mr. Muse arising from Home Depot's willfully unlawful exclusion of Mr. Muse from its stores.

## II.   FACTS

### A.  INCIDENT

There is no dispute that Plaintiff is a forty-four-year-old man with a long history of Tourette Syndrome. This is established by Mr. Muse's own testimony,

and the testimony and reports of his treating psychiatrist, Dr. William Sheehan, and the expert retained in the matter, Dr. Samuel Zinner.

Jon Muse is impaired significantly in his speech, and consequently his major life activities, as he suffers from a distinct forms of Tourette Syndrome called coprolalia (verbal tics) and copropraxia (physical tics).  His coprolalia causes him to utter certain words compulsively, without any intent, and randomly into otherwise normal speech patterns and substance.  Mr. Muse does not shout or yell these words; the words are interspersed in his normal speaking tone of voice, without emphasis or other verbal or physical cues to indicate that he said anything out of the ordinary.  Regretfully, the words uncontrollably interjected are considered vulgarities by many, which offend certain aspects of society, though not all, and not in all circumstances.  Under some circumstances, most people would not be bothered by the words he uses.  The randomly interjected vulgarities are the words c[]nt, f[]ck, and n[]gger.[1]  As a matter of common knowledge, the latter of the first two words, in various forms, often is used commonly, though perhaps regrettably, to provide emphasis to many exclamations in many different situations.  The former word is less often used and when used by persons without

---

[1] Mr. Muse did not utter the word "n[]gger" during the incidents in question, however.  Plaintiff disputes also his alleged use of the word "f[]ck" to the extent alleged by Home Depot employees during the incident, and Plaintiff's identified expert, Dr. Marvitt, found even that Mr. Muse's coprolalia is limited to the use of the word "c[]nt."  Counsel for Plaintiff considered using abbreviated versions of such words, but after doing a quick search of case law on this issue, discovered so many published cases that routinely report the use of such words with the full spelling that it retains the full spelling of such words for accuracy, with the implicit understanding of all parties and the Court that the words never have been directed from or at any one herein with malicious intent and are simply "words," which Mr. Muse utters uncontrollably as part of his disability.  Or, as is often the case, naming something and putting light upon it, takes away any power to injure that otherwise would persist in darkness.

Mr. Muse's disability, it is used often with malicious intent by "calling someone a name." The word "f[]ck" is often used without any malicious intent whatsoever [it has become simply a way to make a point a little stronger. Both Mr. Muse's treating physician and his expert Dr. Zinner observed that neither medication nor other treatment has been able to control this aspect of Mr. Muse's Tourette Syndrome.

Home Depot's position is for Plaintiff to "stay out of it[s] stores until he avoids using vulgar language in front of employees and customers."

> On or about 3 November 2004, Mr. Muse was making a purchase at Defendant's Home Depot store located at 421 Ala Kawa Street in Honolulu, Hawai'i. While making his purchases, Mr. Muse conversed with the check-out clerk Debra Peterson and randomly and uncontrollably voiced the words "f[]ck" and "c[]nt" due to his coprolalia. The female supervisor on duty, Darlyn Kuhia, overheard the conversation and ordered Mr. Muse to stop using the vulgarities. Mr. Muse calmly apologized to the clerk and Darlyn Kuhia, and explained that his use of those words were due to his disability, Tourette's. Mr. Muse was not loud, but was polite during the exchange.
>
> Head Cashier Darlyn Kuhia indicated that she did not care what sort of disability Mr. Muse had, despite Mr. Muse's explanation. The store manager, Mike Dolan was summoned and Mr. Muse again explained his condition and apologized. The store manager ignored Mr. Muse's explanation and stated that he would not tolerate such language. He further stated that he did not care what kind of disability Mr. Muse had and that Mr. Muse was not welcome at the store if he used such language.

**B. JON MUSE'S DISABILITY**

Jon Muse suffers from Tourette Syndrome. Muse also suffers from

4

Attention Deficit Disorder, depression, and other related impairments, compounding his ability to think and interact well with others, and to otherwise care for himself.  Jon Muse was evaluated by Samuel H. Zinner, M.D., of the University of Washington, who reviewed Muse's medical history, including the opinions of Dr. William P. Sheehan, Plaintiff's Hawai'i psychiatrist.  Dr. Zinner, in his expert's report, expressed his professional evaluation of Tourette Syndrome:

> Description of the cause of Tourette syndrome:
>
> Tourette syndrome is neurological in origin and is involuntary.  As described by the National Institute of Neurological Disorders and Stroke (NINDS) which is a branch of the National Institutes of Health (NIH), Tourette syndrome "is a neurological disorder characterized by repetitive, stereotyped, involuntary movements and vocalizations called tics."
>
> This disorder is defined by the presence of motor and vocal tics beginning in childhood and having a protracted, often lifelong course.  No two people with Tourette syndrome have exactly the same symptoms.  For some people, symptoms of Tourette syndrome are mild.  For Mr. Muse, symptoms are severe.
>
> At its root, Tourette syndrome is a brain-based condition characterized by "disinhibition."  In other words, people with Tourette syndrome are not able to effectively inhibit their tics.  Scientists don't fully understand the brain-based abnormality that causes the tics.  However, we do understand that there is a circuit within the brain that connects areas on the surface of the brain to an area deep within the brain.  This circuit is "wired" incorrectly in people with Tourette syndrome; as such, many, if not most, people afflicted with Tourette syndrome also have one or more associated clinical problems, as is the case for Mr. Muse.  These associated problems feature other related "disinhibited" symptoms which may include impulsive behaviors (such as frequently interrupting, or a sense of restlessness and fidgetiness), compulsive behaviors, anxiety and sleeping difficulties.

> For Mr. Muse, the ability to suppress his tics voluntarily is extremely limited. Because of the faulty wiring in his brain, Mr. Muse is no more able to stop the impulse to tic than a person with epilepsy is able to stop from having a seizure or a person on the brink of sneezing is able to postpone the sneeze. Furthermore, his voluntary control over the impulse is extremely limited. While his tics of "giving the finger" and saying socially inappropriate things that include profanity and ethnic slurs are shocking to people unfamiliar with Mr. Muse, there is no deliberate meaning behind these expressions. Again, the analogy of a seizure can be very useful in understanding this.
>
> While there is no cure for Tourette syndrome, the good news is **that Mr. Muse's Tourette syndrome poses no danger to other people, and some simple accommodations are likely to be effective in reducing any potential public stress or concern that may emerge. [emphasis added].**

Dr. Zinner's undisputed[2] professional opinion is that:

> Mr. Muse is a 44-year-old male with a longstanding history of Tourette syndrome. . . . Mr. Muse can be expected to suffer disabling symptoms of Tourette syndrome over the course of his life. In his particular circumstance, these tic symptoms will include neurologically uncontrollable and socially embarrassing outbursts of profanity and vulgar gestures. His tics will continue to wax and wane over time irrespective of Mr. Muse's obedient efforts to limit their expression. The tics will occur at unpredictable times and places beyond Mr. Muse's willful power to suppress them.

Home Depot has offered no records or testimony that rebuts a finding that Mr. Muse has Tourette Syndrome. Dr. Zinner found more specifically the following:

- [Mr. Muse] received a global severity score of 80 points, based on the presentation of tics over the preceding week, which takes into

---

2 Home Depot motioned *in limine* to exclude its own expert Dr. Marvitt, so Home Depot has no expert to rebut the expert opinions of Dr. Zinner nor the observations of Plaintiff's treating physician Dr. William Sheehan.

account a qualitative impairment**. This score is quite high and indicates both significant tic severity and psychosocial consequence**." [emphasis added].

Dr. William P. Sheehan, Mr. Muse's former treating physician at Kaiser has the same opinion as Dr. Marvit, as set forth in his deposition testimony:

Q. What is your opinion about Mr. Muse's condition?

A. I believe that Mr. Muse has Tourette's disorder, severe, I would say pretty severe, and that was primarily why I saw him. [p. 13. ll 19-21] . . .

So the DSM-IV, that's a diagnostic criteria book that psychiatry uses, and if you went by criteria he probably had -- I treated him for, and I believe I considered it Tourette's disorder. [p. 14, ll 2-5]. . .

I think that Mr. Muse has a very serious case of Tourette's disorder, and unfortunately, his symptoms never fully responded to treatment as I was able to provide it, for a variety of reasons, but bottom line was it never got fully under control. So I'm aware -- and it's pretty debilitating. [p.15, ll. 10-14].

There is no question, and no reasonable juror could find but, that Jon Muse suffers from a disability that substantially limits a major life activity, thus deserving of a reasonable accommodation from Home Depot to allow Muse to shop there.

**REASONABLE ACCOMMODATION**

Dr. Sheehan would give to Mr. Muse (and had provided to other Tourette patients) a card to give to people to alert them to such a disability so that any misunderstandings could be obviated. See Sheehan Deposition at pp. 41-43. Dr. Sheehan approved also Dr. Zinner's accommodation recommendation. Id. Nevertheless, Mr. Muse would agree to provide reasonable advance notice (e.g. 18 hours) and shop as less busy days and times and be accompanied by a Home Depot employee who was educated as to his Tourette Syndrome.

### C. APPLICABLE LEGAL STANDARDS OF THE TITLE III OF THE AMERICANS WITH DISABILITIES ACT.

This case involves the interpretation of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 et. seq. ("ADA"), which prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" offered by a place of public accommodation. 42 U.S.C. § 12132(a) et. seq.; 28 C.F.R. § 36.201(a). The Supreme Court has articulated a three-step inquiry for determining whether an impairment substantially limits a major life activity so as to constitute a disability under the ADA. See Bragdon v. Abbott, 524 U.S. 624, 631 (1998). First, the court must ascertain whether plaintiff has a physical or mental "impairment." Next, the court must identify whether any "major life activities" are impacted by that impairment. Finally, the court must determine whether the impairment "substantially limits" any major life activity. Id.

Defendant repeatedly has asserted in earlier pleadings and correspondence, see Defendant's Motion to Dismiss (see, e.g., page 5):

> the clerk, supervisor, manager and customers that were present were not required to accept Plaintiff's voicing vulgarities, even if they resulted from the alleged disability.

Both the facts and law applicable to this case compel a contrary conclusion, one that affirms Home Depot's obligation to abide the ADA and treat Mr. Muse as an equal member of the society from which it draws its substantial income.

**D. PERSONS WITH A DISABILITY**

The definition of a person with a disability is identical under both Title I and Title III of the Americans With Disabilities Act. There are three general categories of persons who are protected:

a. Individuals have a physical or mental impairment that substantially limits one or more major life activities;

b. Individuals who have a record of a physical or mental impairment that substantially limits one or more of the individuals major life activities; and

c. Individuals who are regarded as having such an impairment whether impaired or not.

See 42 U.S.C. § 12102(2); 28 C.F.R. § 36.104.

Additionally, under the Federal Regulations, an impairment is defined as a physiological condition affecting the neurological body system. See 28 C.F.R. § 36.104.

Mr. Muse meets all three of the above requirements for establishing a disability: 1) Mr. Muse's own testimony, and the testimony, medical records, and reports from Drs. Sheehan and Zinner establish that his impairment substantially limits more than one major life activity – speech, communication, interacting with others, and working; 2) as observed by both Plaintiff's expert Dr. Zinner and Defendant's expert Dr. Margit in their reports submitted to this Court, the Social Security Administration has established that for the past three years (and thus at the

time of the incident) Mr. Muse is disabled sufficiently from working such as to be entitled to receive supplemental income benefits; and 3) Home Depot considers Mr. Muse's impairment so severe as to consider him unfit to shop in its, and thus in any company's, retail locations, thus naming him a pariah among men and women, all because of his disability.

### E. MAJOR LIFE ACTIVITIES

> "Federal regulations describe major life activities as including functions 'such as caring for oneself, walking, seeing, hearing, **speaking**, breathing, learning, and working.' " We have recognized that the "illustrative list of major life activities requires the activity only to be of 'comparative importance' and 'central to the life process itself,' and it need not have a public, economic, or daily character." To be a major life activity, the activity need not be essential to survival, but rather "of central importance to most people's daily lives."

Head v. Glacier Northwest, Incorporated, 413 F.3rd 1053, (9th Cir. 2005) 1061-62 [emphasis added] quoting Fraser v. Goodale, 342 F.3d 1032, 1039 (9th Cir. 2003) quoting 45 C.F.R. § 84.3(j)(2)(ii); citing 29 C.F.R. § 1630.2(i). This list is meant to be illustrative rather than exhaustive. Furthermore, "[a] person is considered an individual with a disability ... when the individual's important life activities are restricted as to the conditions, manner, or duration under which they can be performed **in comparison to most people.**" 28 C.F.R. Part 36, App. B. § 36.104 [emphasis added].

The phrase "physical or mental impairment" includes any "physiological disorder or condition" that affects the neurological system or "any mental or

psychological disorder such as ... emotional or mental illness." 28 C.F.R. § 36.104. Tourette syndrome is a neurological impairment characterized by motor and verbal tics and coprolalia. See Purcell v. Pennsylvania Dep't of Corrs., 1998 WL 10236 (E.D. Pa. 1998)(Under ADA Title II, Tourette Syndrome sufferer with coprolalia affects a major life activity of interacting with others, even though he mostly was able to suppress it while dealing with others, entitling him to an accommodation from public entity).

A person with Tourette Syndrome also seeks to avoid contact with other persons, thus adding to the disability. In Bragdon v. Abbott, 524 U.S. 624, 638 (1998) the Supreme Court expressly rejected the claim that a major life activity is limited to "those aspects of a person's life which have a public, economic, or daily character." Relying on the "breadth of the term" major life activity, id., the Court held that HIV infection (as a physical impairment) substantially limited the major life activity of "reproduction," not because it physically prevented pregnancy, but because the infection deterred the plaintiff from seeking to become pregnant.

Thus, interacting and communicating with others are major life activities. See 29 C.F.R. § 1630.2(i); Head, 413 F.3rd at 1060 citing McAlindin v. County of San Diego, 192 F.3d 1226, 1230 (9th Cir. 1999) cert denied 120 S.Ct. 2689 (2000) ("because interacting with others is an essential, regular function, like walking and breathing, it easily falls within the definition of 'major life activity.'") In addition,

11

the Equal Employment Opportunity Commission's <u>Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities</u> 5 (March 25, 1997) lists "interacting with others" as a major life activity.

Plaintiff alleges that, among other things, he is substantially limited in the major life activities of speaking, and thus communicating, and interacting with others. Any disability that significantly affects a person's ability to interact with others qualifies as a disability that affects a major life activity. Although Muse has expert opinion supporting his assertions, his testimony alone would have been sufficient under prevailing Ninth Circuit law:

> Ninth Circuit precedent does not require comparative or medical evidence to establish a genuine issue of material fact regarding the impairment of a major life activity at the summary judgment stage. Rather, our precedent supports the principle that a plaintiff's testimony may suffice to establish a genuine issue of material fact,

In this case, Mr. Muse will offer his own testimony and the testimony of an expert to expert and his treating physician to establish that his disability affects these major life activities.

Defendant Home Depot is a covered entity as a place of public accommodation under Title III of the ADA. See 42 U.S.C. § 12181(7); 28 C.F.R. § 36.104. Title III requires that a public accommodation may not discriminate against an individual with a disability and the operation of a place of public accommodation. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201. Specifically,

individuals with disabilities may not be denied the ***full and equal enjoyment*** of the goods, services, facilities, privileges, advantages or accommodations offered by the public accommodation. 28 C.F.R. § 36.201(a). Muse was denied full and equal enjoyment of the services, privileges, and advantages of a place of public accommodation (Home Depot) on the basis of his disability.

### F. OBLIGATION TO PROVIDE ACCOMMODATION

Home Depot has taken more than one extreme position. First, it alleges that Muse never verbally asked for any specific accommodation, so therefore Home Depot is under no obligation to provide one. Such an argument is completely at odds with Jon Muse's request to shop at Home Depot, and Home Depot's "accommodation" was to tell Jon Muse not to come in unless he could control his disability sufficiently enough so as to not express it. Home Depot's argument is ludicrous, and contrary to law. This Court has found on summary judgment that Jon Muse's representations while at Home Depot were a sufficient request for a modification of its policies to accommodate his disability.

Under the ADA, once a plaintiff actually has become aware of discriminatory conditions existing at a public accommodation, and thereby is deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury. See also Davoll v. Webb, 194 F.3d 1116, 1132-33 (10th Cir. 1999) (disabled employee not required to initiate interactive process leading to

reasonable accommodation where employer has made clear it will not engage in the interactive process). So long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues. See <u>Pickern v. Holiday Quality Foods, Inc.</u>, 293 F.3d 1133 (9th Cir. 2002) (individual with paraplegia who visited inaccessible store on two occasions did not need to ask for any further specific accommodations before bringing suit).

A public accommodation such as Home Depot must make reasonable modifications to policies, practices and procedures that are necessary to provide goods and services to a person with a disability unless such modification would fundamentally alter the nature of the goods and services provided. 42 U.S.C. § 12182(b)(2)(A). Once Home Depot was put on notice of Muse's disability, it was required under Title III (not Title I) of the ADA to reconsider its position that Muse must leave the store unless he could control his language. 42 U.S.C. § 12101, *et. seq.*

Finally, Home Depot's provision of goods and services requires no fundamental alteration to services for Jon Muse during the short time of the few days that he would be shopping in its stores.

**G.     H.R.S. § 347-13(a)**

It has been established, despite Defendant's unsupported arguments to the contrary, that Jon Muse's disability fall within the purview of the statute and

entitled to its protections. The medical records, and Dr. Zinner's and Dr. Sheehan's opinions establish that Muse's impairment is physiologically-based, not merely an emotional disability.

## III.  CONCLUSION

For the reasons set forth above, Plaintiff Jon Muse respectfully requests that this honorable Court determine that he is a person with a disability entitled to the protections of the ADA, and set forth the parameters of the manner in which he reasonably can access the goods and services provided by Home Depot. Otherwise, Plaintiff will have no where to obtain needed essentials like food, clothing, house wares, and home improvement items at prices available to the rest of our society, or otherwise. Moreover, if Defendant prevails, Mr. Muse will, by extension, be unable to enter any place of public accommodation; Defendant will have succeeded in making him a pariah, unfit for human interaction, all because he utters a few words that most teenagers, male or female, could care less about and use on a familiar basis.

DATED: Honolulu, Hawai'i, December 4, 2006.

/S/ STANLEY E. LEVIN
_____
BRUCE  F. SHERMAN
STAN LEVIN
THOMAS F. FEENEY
Attorneys for Plaintiff
JON MUSE