OF COUNSEL:
DAVIS LEVIN LIVINGSTON GRANDE
STANLEY E. LEVIN     1152-0
851 Fort Street
400 Davis Levin Livingston Grande Place
Honolulu, Hawaii 96813
Telephone: (808) 524-7500/Fax: (808) 545-7802
E-Mail: slevin@davislevin.com

BRUCE F. SHERMAN    5996
E-mail: failey52@hawaii.rr.com
THOMAS F. FEENEY    5546
E-mail: feen@compuserve.com
1164 Bishop Street, Suite 124
Honolulu, Hawaii 96813
Tel: (808) 599-3955/Fax: (808) 599-3944

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JON MUSE, | CIVIL NO. 04-00154 DAE/BMK |
| | (Civil Rights Violation) |
| Plaintiff, | PLAINTIFF'S MEMORANDUM IN |
| | OPPOSITION TO DEFENDANT |
| vs. | HOME DEPOT USA, INC.'S |
| | FOURTH (4TH) MOTION IN |
| HOME DEPOT USA, INC., | LIMINE (RESTRAINING |
| | PLAINTIFF JON MUSE FROM |
| Defendant. | ATTEMPTING TO INTRODUCE |
| | EVIDENCE, TESTIMONY, |
| | ARGUMENT, AND COMMENT |
| | CONCERNING ANY MAJOR LIFE |
| | ACTIVITY OTHER THAN |
| | COMMUNICATION) AND |
| | CERTIFICATE OF SERVICE |
| | TRIAL WEEK: January 17, 2007 |
| _____ | JUDGE: David A. Ezra |

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT HOME DEPOT USA, INC.'S FOURTH (4TH) MOTION IN LIMINE (EXCLUDING EVIDENCE, TESTIMONY, ARGUMENT, AND COMMENT CONCERNING ANY MAJOR LIFE ACTIVITY OTHER THAN COMMUNICATION)

Defendant would have this court believe that he can limit the major life activity to communication because Plaintiff answered discovery as identifying communication. There are several problems with Defendant's position. First, on its face, the interrogatory was objected to and it certainly cannot be used for any purpose until the objection is ruled on.

Assuming that the question is allowed, then the Defendant has other problems. Second, Plaintiff has identified the major life activities with this understanding:

> Q. Okay. How long have you had – had the impairment that we're discussing?
>
> A. What do you mean impairment? Tourette's?
>
> Q. Yeah.
>
> A. I've lived with this – I've been diagnosed with this since I was about eight or nine years old.
>
> Q. Okay. How about the – can you say the word that starts C-o-p, can you say that again and spell it for the court reporter.
>
> A. C-o-p?
>
> Q. Yeah, coprolalia.
>
> A. Coprolalia.

Q. Okay. Can you say that and spell it for the court reporter.

A. I'm not sure if I can spell it exactly, but I've – I've read about it. Coprolalia, C-o-p-r-a-l-a-l-i-a (sic).

Q. And how long have you had that condition?

A. Since I was 12.

Q. And do you consider that an impairment?

A. Oh, yeah, If – if—if you can't control it and it come, you know, and then . . .

Q. Has it gotten –

A. It's not normal. It's not normal, put it that way.

Q. Has it gotten better or worse over time?

A. I would say the words have gotten worse over time. The words that I use have gotten worse over time.

Q. Okay. Has your use of the words gotten more frequent or less frequent over time?

A. More frequent or less frequent? I can't answer that accurately.

Q. Why not?

A. I can't answer that accurately. It all depends on my state of mind. My being. If I'm under a lot of stress or if I'm relaxed or if I'm around people or if I'm in a tense situation, all depends. I can't give you an accurate answer on that.

Q. Okay. Are there – are there any times when you may go a day or so without the condition manifesting itself?

A. No. Not a day in my life.

Jon Muse deposition at p. 43, line 3 to p. 44 line 19.

Mr. Muse testified how greatly Tourette Syndrome has affected his life.

Q. Okay. Are there any other activities that you don't engage in because of your Tourette's?

A. Playing basketball. I just play with my son or one of his friends or couple of my friends that – people that know me well. But in a game setting, in a five on five, in a real game setting, I – I—I don't engage in that.

Q. Is there anything else that you don't do because of your Tourette's?

A. I don't – I don't go to Home Depot anymore.

Q. Okay. Anything else?

A. I try – like if I go to the store, if I have a friend with me, if I have my girlfriend, I send her in there. I try not to go in the store myself. But if I gotta go pick up my medication, it's prescribed under my name, so I'm the likely one that's supposed to pick it up, so – but the Longs Pali, they know me. The girls that work at the pharmacy know me, and they – they overlook my Tourette's completely.

Q. Is there any place else that you don't go?

A. I can't think of – that's – I've had enough of that already. There's nothing I can think of anymore.

Jon Muse deposition at p. 65, line 5 to p. 66 line 2.

Plaintiff has submitted to a five plus hours of deposition by defense counsel. There can be no reasonable issue about whether Defendant understood that Plaintiff has claimed that Tourette Syndrome affects everything he does because that is essentially what he said in his deposition.

Certainly, there is no reason to limit the major life activities to only communications. In *Head v. Northwest Glacier, Inc.,* 413 F.3d 1053 (9th Cir. 2005), the court dealt with a much more foggy and loose claim of disability – that of depression and bipolar disease. The court ruled that as long as the Plaintiff pursued his alleged ADA claim with his own statements of the affects of the disability on his life, then he would not be required to submit comparative or medical evidence to avoid summary judgment. In the course of so ruling, the Ninth Circuit ruled that it was announcing two more "major life activities" of reading and interacting with others.

For the case at bar, there is not a single reason, post-Head, for excluding evidence that Plaintiff should have every single life activity which he felt was adversely affected by Tourette Syndrome. The interrogatory was at best in artfully composed so that the open-ended answer is not surprising.

DATED: Honolulu, Hawaii, December 4, 2006.

/s/ STANLEY E. LEVIN
STANLEY E. LEVIN
BRUCE F. SHERMAN
THOMAS F. FEENEY

Attorneys for Plaintiff