IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

CERTIFIED COPY

JON MUSE, Plaintiff,

vs.

HOME DEPOT USA, INC., Defendant.

Civil No. 04-00154 DAE/BMK (Civil Rights Violation)

DEPOSITION OF HOME DEPOT USA, INC.

THROUGH ITS REPRESENTATIVE EMORY L. COOPER

ORANGE, CALIFORNIA

JUNE 6, 2006

ATKINSON-BAKER, INC.
COURT REPORTERS
(800) 288-3376
www.depo.com

REPORTED BY: LISA O'SULLIVAN, CSR NO. 7822

FILE NO.: A0C3F61





IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JON MUSE,<br>Plaintiff,<br>vs.<br>HOME DEPOT USA, INC.,<br>Defendant. | Civil No. 04-00154 DAE/BMK |

Deposition of Home Depot USA, Inc., through its representative Emory L. Cooper, taken on behalf of plaintiff, at 333 City Boulevard West, 17th Floor, Orange, California, commencing at 11:10 AM, on Tuesday, June 6, 2006, before Lisa O'Sullivan, CSR No. 7822.

A Yes, sir, I do.

Q Do you agree today that the answers you will give to our questions will be binding on Home Depot?

MR. HARRIS: Objection, outside the scope of the notice and the rule. And asks for a legal conclusion.

THE WITNESS: Could you repeat the question?

MR. SHERMAN: If I could ask the court reporter to read the question back to the witness, please.

(Record is read.)

MR. HARRIS: Objection, outside the scope of the notice and the rule. And requests a legal conclusion.

Go ahead and answer.

THE WITNESS: Yes.

Q BY MR. SHERMAN: What is Home Depot's policy regarding accommodating customers with disabilities?

MR. HARRIS: Objection, assumes facts not in evidence.

Q BY MR. SHERMAN: You can answer.

A Sir, the policy that we have as it relates to maintaining our workforce or our work environment has to do with respecting individuals, whether they're customers or associates or vendors or, you know, anyone that visits our workplace.

You know, there's not a specific policy per se that talks about customers with a disability. We treat anyone

that comes onto our premises with respect, and that's a requirement within the organization.

Q Is there a written version of this policy?

A Of our respect policy, sir? Yes, sir.

Q No, of the policy with regard to accommodating customers with disabilities.

A No, sir.

Q Have you reviewed any e-mails or memos regarding any policy regarding accommodating customers with disabilities?

A No, sir, not that I recall.

Q Has this lawsuit, to your knowledge, resulted in any change or implementation of any policy for Home Depot for the accommodation of customers with disabilities?

A No, sir, not that I'm aware of.

Q Are there any written policies regarding accommodating customers with disabilities on a local level in Hawaii?

A Not that I'm aware of, sir. I think it's the same policy in Hawaii as it is throughout the organization.

Q So would it be fair to say that Hawaii doesn't have a written policy specifically as to the accommodation of customers with disabilities?

A The only policy that Hawaii should be operating under is the same policy that we have throughout the

organization, and that's primarily found in our respect policy on how we treat customers and associates and our vendors when they come into our workplace.

Q Is anyone responsible for applying your respect policy specifically in order to ensure that customers with disabilities are accommodated?

MR. HARRIS: Objection, vague and confusing.

THE WITNESS: Sir, I'm not sure I understand your question. Could you repeat it?

MR. SHERMAN: Certainly. If we could have the court reporter read the question back.

(Record is read.)

MR. HARRIS: Objection, vague and confusing. Assumes facts not in evidence.

THE WITNESS: Sir, in ensuring that our respect policy is being carried out within the organization, every manager within a Home Depot organization or a Home Depot store, any assistant manager, human resource manager, as well as all associates, are charged with the responsibility of maintaining respect in our workplace as it relates to associates, vendors, customers, and anyone that comes onto our premises.

Q BY MR. SHERMAN: Is there anyone who's responsible for national corporate policy, to implement a policy regarding accommodating customers with disabilities

THE WITNESS: Yes.

Q BY MR. SHERMAN: Do you understand that in using the term "involuntary," that also would mean that the person exhibiting that symptom does not intentionally say offensive words?

MR. HARRIS: Objection, outside the scope of the notice. Speculative. Assumes facts.

THE WITNESS: Could you repeat the question?

MR. SHERMAN: If I could ask the court reporter to kindly repeat the question.

(Record is read.)

MR. HARRIS: Same objection. Plus speculative.

THE WITNESS: Yes.

Q BY MR. SHERMAN: What is the corporate policy relating to use of sexually, racially, or otherwise offensive language, by or in the presence of customers or associates, while on store premises, nationally?

THE WITNESS: Could you repeat the question?

MR. SHERMAN: If I could ask the court reporter to repeat the question, please.

(Record is read.)

THE WITNESS: Sir, it is absolutely unacceptable for any of our associates to use or to make comments that are sexual or racial or offensive, and we also tell our associates that they don't have to work in an environment

where that is being used. That falls under our respect policy.

Q BY MR. SHERMAN: And is this contained specifically in a manual or other publication by Home Depot?

A Sir, I believe it is in the detailed provisions of the respect policy, but I would have to verify that. I believe it is.

Q Is it the company policy -- does the company policy distinguish between intentional or unintentional use of sexual language?

MR. HARRIS: Objection, speculation.

THE WITNESS: Not that I'm aware of.

Q BY MR. SHERMAN: So if someone unintentionally used a phrase, they could be terminated?

MR. HARRIS: Objection.

Q BY MR. SHERMAN: An associate?

MR. HARRIS: Speculation.

THE WITNESS: Sir, I don't know of any distinction that's ever been made between intentional or unintentional. If the statements are made, of course, we look into every situation and make a determination from there.

Q BY MR. SHERMAN: Let me give you an example. And I want first to prepare you.

We may use some language in the rest of the deposition that some people, you know, might consider

REPORTER'S CERTIFICATION OF CERTIFIED COPY

I, Lisa O'Sullivan, CSR No. 7822, a Certified Shorthand Reporter in the State of California, certify that the foregoing pages 1 through 130 constitute a true and correct copy of the original deposition transcript of Home Depot USA, Inc., through its representative Emory L. Cooper, taken on June 6, 2006.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated this day, June 8, 2006.

Lisa O'Sullivan

LISA O'SULLIVAN, CSR No. 7822