IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JON MUSE, ) | CIVIL NO. 04-00154 BMK/DAE |
| ) | (Civil Rights Violation) |
| Plaintiff, ) | |
| ) | MEMORANDUM IN SUPPORT OF |
| vs. ) | MOTION |
| ) | |
| HOME DEPOT USA, INC. ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM IN SUPPORT OF MOTION

The agreement set forth in the attached, sealed exhibits represent a compromise of disputed claims and defenses which disposes of all issues regarding the claims by and between the parties named in Plaintiff's First Amended Complaint for Damages. Plaintiff previously has settled with Defendant Bank of Hawaii. The material terms were put on the record and are quite simple: Plaintiff promised to dismiss his lawsuit for damages and attorneys' fees in exchange for a sum certain and the ability to access Home Depot upon certain conditions related to Home Depot's ability to monitor and supervise Plaintiff while he was in the store. In addition, the parties agreed that the settlement terms would remain confidential. The parties have agreed on the wording of all of these terms, even though Plaintiff conceded on the confidentiality provision only being applied to himself, and not to Home Depot. Nevertheless, Home Depot refuses to sign the

settlement documents, copies of which are attached hereto as Exhibit A, sealed in order to maintain confidentiality.[1].

The agreements [Exhibit A, filed under seal] was reached with the assistance of Magistrate Judge Barry M. Kurren, and finally as between counsel for the parties on the eve of trial, 16 January 2007. There were numerous settlement discussions involving Judge Kurren and between the parties. During the course of those several court-facilitated mediations and direct negotiations, the parties had more than ample opportunity to raise any and all issues they felt were relevant to an amicable resolution, **and never once was a liquidated damages clause or non-disparagement clause raised.** The settlement documents submitted under seal are the result of those settlement discussions. Attorney Harris presented for the Court the terms of the settlement [Exhibit B – Transcript of Settlement on the Record, 17 January 2007]:

> MR. HARRIS: . . . First of all, the parties agreed to a confidential settlement, no statements to anyone except that the matter has been settled.
> Second of all, the parties are very close and have agreed I principle . . . on how and when and under what conditions he will shop in the store.
> Third of all, the parties have agreed a condition on submission to the court that the court will conclude as a matter o flaw that the behavior b plaintiff is not actionable by anyone in the store, and that the company has taken all appropriate corrective and preventative actions to avoid liability for that behavior.

---

[1] Plaintiff's counsel sought to obtain Defendant's counsel's agreement to stipulate to sealing the documents, but Defendant's counsel refused to respond. See e-mail dated February 15, 2007 from Bruce Sherman to Jeffrey Harris, submitted as part of Exhibit B. Instead, Plaintiff's counsel was compelled to file a separate Motion to Seal Exhibits, submitted herewith.

2

> . . .
> And – and I would also say, I should say that for my part I agree that the case is essentially settled. An that – but there's some detail, there's some minor details to work out. And those details do not have the most – most important issues that have bee involved in the negotiations of the case.

The parties have agreed on language as to these three material elements, as set forth in Exhibit A. There was only one misunderstanding as between the parties, with respect to the continuing jurisdiction of the Court, but the Court clarified that aspect of the agreement for the parties. See Exhibit B.

After putting the agreement on the record, see Exhibit B - Transcript, the parties left the Court with the understanding that Defendant's counsel would abide by the Court 20-day deadline to resolve any minor language issues and execute the documents.

> [THE COURT]: So, I'm going to give you no more than 20 days. I want this thing completely wrapped up in 20 days. No ifs, ands, or buts about it.
> MR. FEENEY:  Your Honor, if you can even shorten that to ten days that would be even better for the plaintiffs.
> THE COURT:  Well, he's got people on the mainland, so . . .
> MR. HARRIS:  . .. . I'm good with an outside of 20 days, but I'll do everything in my power to get it settled much quicker than that.

Within 2 days after putting the settlement on the record, Plaintiffs' counsel revised Defendant's draft of the initial agreement and forwarded the agreement to Defendant's counsel for review and signature. Defendant's counsel was silent, despite numerous telephone calls and electronic mail messages right up until the deadline imposed by the Court. No explanation, no telephone calls seeking more

3

time, nothing, just silence. Only when Plaintiff's counsel called for a Status Conference, did Home Depot's counsel respond. It was at this status conference that Home Depot's counsel voiced implied objections to differences in wording. Nevertheless, the response provided by Home Depot's attorney at the settlement conference highlighted immaterial differences between the drafts of the agreement and proposed order. Oddly, the comparison spreadsheet provided by Home Depot at the status conference included a section with provisions never discussed before by the parties.

Not until after the settlement conference (on 7 February 2007), did Plaintiff's counsel receive a substantially revised version of the settlement documents, ones which contained two new clauses never discussed in negotiations – a non-disparagement clause (clearly taken from an employment context settlement agreement) and a liquidated damages clause seeking to impose a $15,000 penalty on Plaintiff for an breach of the agreement (but no reciprocal penalty on Home Depot for its breach). Not only were both new to negotiations, but both were outrageously overbroad and one-sided in favor of Home Depot only. See Exhibit C, for e-mails between parties related to the two new clauses and Plaintiff's efforts to resolve other aspects of the settlement agreements. Apparently, based upon the e-mail submissions, Defendant's counsel's only complaint is that the non-disparagement clause and liquidated damages clause are not included.. See Exhibit C.

The insertion of these two clauses, combined with the delay caused by Home Depot in this matter is hugely prejudicial to Plaintiff. Plaintiff's complaint sought to gain him access, access guaranteed by Title III of the ADA, to a Home Depot retail location in order to purchase materials for his business. A trial had been set for Wednesday, 17 January 2007, experts had flown in form the mainland for the trial. The only question for the court was if Plaintiff was "disabled" under the Act. Home Depot had identified no expert witnesses on this issue, and even moved in limine to disqualify its own expert, Dr. Robert Marvit. Plaintiff settled, in large part, to avoid further delay from any appeal that Home Depot would file to further delay Plaintiff's access to the store and his receipt of damages. Home Depot, in extreme bad faith, seeks to interpose such delay to the best of its ability, despite the settlement reached between the parties, and put on the record.

The delay interposed by Home Depot's counsel in this matter is inexcusable. Plaintiff's counsel tried every way possible to try to get Home Depot's counsel merely to communicate, but to no avail. Plaintiff's counsel's telephone calls were unreturned and, electronic mail messages were ignored. <u>See</u> Declaration of Thomas F. Feeney, attached hereto. Finally, on Thursday, 15 February 2007, attorneys Harris and Fears attempted to call attorney Feeney and engage in a conference call, and left a voice message to that effect. Attorney Feeney called back twice on that Thursday, once on Friday, and once more on this Monday **and received no return telephone calls from the detail messages sent, warning**

5

**attorneys Harris and Fears that Plaintiff was left with no choice but to file a Motion to Enforce and seek appropriate sanctions.** See Declaration of Thomas F. Feeney.

## LEGAL STANDARD

In the case of a settlement agreement put on the record in open court, the burden falls on Home Depot, the party refusing to sign the agreement, to demonstrate "that the written agreement prepared . . . was inconsistent with the terms of the agreement stated on the record, in open court." Doi v. Halekulani, 276 F.3d. 1131, 1141 (9th Cir. 2002).  As in Doi, where the parties agreed on the material terms of the settlement, and put those terms on the record, the Court can, without further evidentiary hearings, enforce the settlement:

> there was no need for an evidentiary hearing on whether an agreement existed, or what its terms were: the parties dispelled any such questions in open court. Cf. Vari-O-Matic Machine Corp. v. New York Sewing Machine Attachment Corp., 629 F.Supp. 257, 259 (S.D.N.Y.1986) ("[I]n this case since both parties made representations to the court that agreement had been reached, there can be no factual dispute that a settlement had been consummated, and the court is empowered summarily to require the parties to comply with their representations without holding a hearing."). Doi, 276 F.3d at 1139.

Such is the case even where one party asserts that there are terms in the proposed agreement that were not "fully spelled out at the settlement hearing." Id. (e.g., arguing that scope of confidentiality provision was overbroad). In the case at bar, the issue is not the scope of the terms set forth in the settlement agreement, or that

certain terms were not spelled out fully, but rather that Home Depot now seeks to insert two new terms, never before discussed, negotiated, or agreed upon by the parties.

> As set forth in <u>Doe v. Washoe</u>, 2006 WL 4013779 (D.Nev. 2006)
>
> Courts have inherent authority to enforce settlement agreements between parties in pending cases. *See <u>Metronet Services Corp. V. U.S. West Communications, 329 F.3d 986,1013-1014 (9th Cir.2003)</u> (cert. granted and judgment vacated on other grounds by <u>Quest Corp. V. Metronet Services Corp.</u>, 540 U.S. 1147 (2004)*; *<u>Doi v. Halekulani Corporation,</u> 276 F.3d 1131,1136- 1138 (9th Cir.2002)*; *<u>In re City Equities Anaheim, Ltd.,</u> 22 F.3d 954, 957 (9th Cir.1994)*. An oral agreement made in open court on the record as to the material terms is a binding agreement. *See <u>Doi v. Halekulani Corp .,</u> 276 F.3d 1131,1136 (9th Cir.2002)*. In *Doi,* the court stated, "An agreement announced on the record becomes binding even if a party has a change of heart after he agreed to its terms but before the terms are reduced to writing." *Id.* at 1138 (citations omitted).
>
> To enforce a settlement agreement, two elements must be satisfied. *Marks-Foreman v. Reporter Pub Co.,* 12 F.Supp 1089, 1092 (S.D.Cal.1998). First, the settlement agreement must be complete. *Id., citing <u>Maynard v. City of San Jose,</u> 37 F.3d 1396, 1401 (9th Cir.1994)*; *<u>Doi,</u> 276 F.3d at 1137*. Second, the settlement agreement must be the result of an agreement of the parties or their authorized representatives concerning the terms of the settlement. *Marks-Foreman,* 12 F.Supp at 1092, *citing <u>Harrop v. Western Airlines, Inc.,</u> 550 F.2d 1143, 1144-1145 (9th Cir.1977)*, *<u>Doi,</u> 276 F.3d at 1137-1138*. Where parties raise objections after the parties agree to a settlement, the court may rightfully deny such objections. *<u>Harrop,</u> 550 F.2d at 1144*.
>
> In *<u>Steffen v. United Airlines, Inc.,</u> 928 F.2d 1137 (9th Cir.1991)*, the court considered whether an attorney has authority to settle a client's claim and stated, "The Nevada Supreme Court has held, and this court has recognized that 'under Nevada law an attorney is presumed to have authority to settle his client's claim.' *<u>Waits v. Weller,</u> 653 F.2d*

1288, 1290 n. 2 (9th Cir.1981) (citing *State of Nevada v. California Mining Co.,* 15 Nev. 234, 243-44 (1880)."

It is well settled in this jurisdiction that "the law favors the resolution of controversies through compromise or settlement rather than by litigation." Sylvester v. Animal Emergency Clinic of Oahu, 72 Haw. 560, 566 (1992) citing Dowsett v. Cashman, 2 Haw. App. 77, 82-83 (1981). The purpose of settlement through alternative dispute resolution is to "bring[] finality to the uncertainties of the parties" and to "foster amicable, efficient, and inexpensive resolutions of disputes." Sylvester, 72 Haw. at 566.

> Such agreements are binding without regard to which party gets the best of the bargain or whether all the gain is in fact on one side and all the sacrifice on the other.

Sylvester, 72 Haw. At 566, quoting Ragland v. Davis, 301 Ark. 102, 106-07, 782 S.W.2d 560 (1990). A trial court's determination that a settlement agreement is enforceable is a conclusion of law. Sylvester, 72 Haw. at 565 (client's change of mind subsequent to oral agreement between attorneys to settle case was insufficient to set aside agreement where agreement was supported by mutual consideration).

The instant settlement agreement clearly sets forth the mutual consideration and compromise to resolve and conclude any and all litigation among the parties to the instant dispute. The agreement needs to be enforced because the Defendant

merely had a change of mind and now wants to expose the parties to the uncertainties and expenses inherent in further litigation.

> At a time where the resources of the federal judiciary, and this Circuit especially, are strained to the breaking point, we cannot countenance a plaintiff's agreeing to settle a case in open court, then subsequently disavowing the settlement when it suits her. The courts spend enough time on the merits of litigation; we need not (and therefore ought not) open the flood gates to this kind of needless satellite litigation. Doi, supra at 1141.

Accordingly, Plaintiff requests an order from the Court enforcing the terms of the settlement agreement entered into between the parties, and requests an award of interest and attorneys' fees in the amount commensurate with the time required to enforce the agreement. The interest on the settlement for the approximately one month delay is approximately $1,000.00, and such should be imposed upon Defendant for its dilatory tactics in addition to the attorneys' fees in this matter.

**CONCLUSION**

The attempt by Home Depot to insert two clauses never before discussed, and its delay and refusal in responding on the other provisions is prejudicial to Plaintiff, and in direct violation of Judge Ezra's order. Home Depot's argument that these provisions are somehow "standard Home Depot clauses" is ineffectual in as much as such clauses have prejudicial legal effect, and would not be agreed to absent discussions. Home Depot needs to be bound by its attorney's representations, and omissions, on the record. In light of Plaintiff's good faith efforts to resolve this matter, and Home Depot's inexcusable and prejudicial delay,

9

sanctions should be imposed to cover the delay and Plaintiff's counsel's effort in bringing this matter to a close.

DATED: Honolulu, Hawai'i, February 27, 2007.

/S/ STANLEY E. LEVIN
_____
STANLEY E. LEVIN
BRUCE F. SHERMAN
THOMAS F. FEENEY

Attorneys for Plaintiff